**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| DAVID KNELLINGER and ROBERT STOREY, individually and on behalf of all persons similarly situated, | ) ) ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| DAVID YOUNG, in his individual and official capacities as COLORADO STATE TREASURER, COLORADO OFFICE OF TREASURY, and BIANCA GARDELLI, in her individual and official capacities as DIRECTOR of COLORADO DEPARTMENT OF TREASURY, UNCLAIMED PROPERTY DIVISION, | ) ) ) ) ) ) ) ) ) |
| | ) |
| *Defendants.* | ) |

Civil Action No.:

---

**COMPLAINT – CLASS ACTION**

---

Plaintiffs David Knellinger and Robert Storey, individually and on behalf of all persons similarly situated, for their Complaint against defendants David Young, in his individual and official capacities as Colorado State Treasurer, Colorado Office of Treasury, and Bianca Gardelli, in her individual and official capacities as Director of Colorado Department of Treasury, Unclaimed Property Division, allege:

**PRELIMINARY STATEMENT**

1.  This action is brought under 42 U.S.C. § 1983 for declaratory relief, injunctive relief, an accounting and other relief based on Defendants' unconstitutional and unlawful conduct acting *ultra vires* in their individual and official capacities under color of state law. Plaintiffs and putative class members have had their property seized without notice, sometimes sold, and generally mishandled by the custodial Defendants.

2.  Defendants have misused a set of laws designed to reunite people with their property (Colorado Revised Statutes Title 38, Article 13), known as the Revised Uniform Unclaimed Property Act ("RUUPA"), to instead take private property from people and businesses without meeting the basic threshold requirements for escheatment because they have not "abandoned" or "unclaimed" their property and because the owners are not "unknown." Moreover, Defendants have perpetrated their misuse of the RUUPA without the requisite notice and due process of law. This property includes, but is not limited to cash, money, uncashed checks, drafts, state warrants, uncashed payroll checks, interest, dividends or income, savings and checking accounts, safe deposit box contents, credit balances, customer overpayments, unidentified remittances, securities, other tangible, and real property.

3.  Defendants' actions in taking possession of Plaintiffs' private property without adequate notice to Plaintiffs and putative class members, and then selling property without notice to the property owners, or without their consent, violates the express provisions of the RUUPA, the Colorado Constitution, Article II, Section 25, and the United States Constitution, including the Contract Clause of Article I, Section 10, and the Fourth, Fifth, and Fourteenth Amendments, the latter of which states that no state shall "deprive any person of life, liberty, or property without due process of law." These policy decisions and actions directly caused the injury described herein that was inflicted on the Plaintiffs and putative class members.

4.  Defendants acted intentionally to generate revenue for the State but these funds were neither authorized tax levies nor funds rightfully belonging to the State. Instead, Defendants abdicated their duty to return this property to its rightful owners.

**JURISDICTION AND VENUE**

5.   This Court has subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. This action arises under the right to be free from unreasonable seizures in the Fourth Amendment, the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, section 10, of the United States Constitution arising from Defendants' actions as custodians of the Colorado State General Revenue Fund, which contains private property known as "unclaimed property funds."

6.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, each of the Plaintiffs reside in this district, and had their property seized in this district.

**PARTIES**

**A.    Plaintiffs**

7.   Plaintiff David Knellinger currently resides in Fremont County, Colorado and is a Colorado citizen. Mr. Knellinger has lived at the same residence in Fremont County in Canon City, Colorado from December 2013 to the present. In 2022, Mr. Knellinger learned (through his own efforts), that COT had seized his private property without notice, his knowledge, or his consent. Mr. Knellinger never received any notice from the COT, the Holder, or anyone else, before they took custody and control of his personal property.

8.   Defendants have failed to identify both the type and amount of Mr. Knellinger's property, as reflected in the screenshot below of the website hosted by the COT:

| CLAIM | DAVID KNELLINGER | COLORADO SPRINGS | 80906 | VERIZON COMMUNICATIONS INC | 19425880 | $50-$249 |

9.  Plaintiff Robert Storey resides in El Paso County, Peyton, Colorado and is a Colorado citizen. Mr. Storey has lived in El Paso County, Colorado from 2002 to the present. Recently, in 2022, Mr. Storey learned (through his own efforts) that COT had seized his private property without notice, his knowledge, or his consent. Mr. Storey never received any notice from the COT, the Holder, or anyone else, that they would take custody and control of his personal property.

10. Defendants have failed to identify both the property type and amount of Mr. Storey's property, as reflected in the screenshot of COT's website, below:

| CLAIM | STOREY ROBERT E | COLORADO SPRINGS | 80925 | LAWYERS TITLE INSURANCE CORPORATION | 6379021 | UNDER $50 |
|-------|-----------------|------------------|-------|-------------------------------------|---------|-----------|

## B.    Defendants

11. Defendant Dave Young was appointed in January 2019 as Director of COT and currently holds that position. (*See* Colorado Constitution, Article 4). He is sued in his individual and official capacities. Before January 2019, since 2011, defendant Young served in the Colorado legislature from House District 50.

12. Defendant Young is the "State's Cash Management Officer" responsible for oversight of the state treasury, including custodial responsibilities for assets with the treasury. (*See* C.R.S. § 24-22-107; Office of the State Auditor's July 2019 Performance Audit of the Department of the Treasury's Division of Unclaimed Property ("2019 Performance Audit"), p.3). The Department of the Treasury is comprised of four divisions; one of which is the Unclaimed Property Division. (2019 Performance Audit, p.3). Mr. Young is custodian and administrator of over $1 billion in unclaimed property funds, currently held in trust by COT, which belongs to citizens who reside, or have resided, in the State of Colorado. Defendant Young's "[c]ore responsibility is to reunite citizens with

lost or forgotten property." (*See* C.R.S. § 38-13-803; 2019 Performance Audit, p.4). Defendant Young is responsible for securing intangible and tangible property maintained in the State of Colorado and for properly enforcing the RUUPA. (*See* C.R.S. §§ 38-13-101, 38-13-102, 38-13-307, 38-13-604, 38-13-801, 38-13-803, 38-13-1201). Intangible property includes, but is not limited to, cash, money, checks, interest, dividends, and income to tangible property. (*See* C.R.S. § 38-13-102). Defendant Young, since his appointment in 2019, has failed to ensure that COT, and the Director of Unclaimed Property, has complied with the notice requirements of the RUUPA, and the Colorado and United States Constitutions before taking citizens' personal and real property. (*See* C.R.S. §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201). Defendant Young, absent Court order, will not stop his wrongful and unconstitutional acts described herein. Defendant Young may be served with process at: Office of the Treasurer, 200 East Colfax Avenue, State Capitol, Suite 140, Denver, Colorado 80203.

13. Bianca Gardelli is currently the Director of Colorado Department of Treasury, Unclaimed Property Division and is sued in her individual and official capacities. Defendant Gardelli reports to defendant Young and is responsible for carrying out many of the actions set forth in this Complaint, including ensuring that proper notice is provided to "abandoned" or "unclaimed" property "Owners" regarding the seizure and sale of "abandoned" or "unclaimed" property. (*See* C.R.S. §§ 38-13-101, 38-13-102, 38-13-307, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201). Despite her obligations, defendant Gardelli disregarded the law and failed to provide reasonably adequate notice as required by the RUUPA, the Colorado State Constitution, and the United States

Constitution before taking citizen's personal and real property. Defendant Gardelli may be served with process at: Office of the Treasurer, 200 East Colfax Avenue, State Capitol, Suite 140, Denver, Colorado 80203.

## FACTUAL BACKGROUND

### A.    Defendants Used the Unclaimed Property Fund to Satisfy Budget Shortfalls

14. As Director of the COT, defendant Young is Colorado's chief revenue officer. In addition to state budgetary functions, defendant Young is responsible for collecting state taxes, tracking all of Colorado's revenue and spending funds, and ensuring that state agencies stay within their budgets. Defendant Young is a member of the Colorado Governor's Cabinet and reports directly to the Governor.

15. Since 2004, in the face of falling revenues, Colorado has invaded unclaimed property revenue and used it as a "general revenue source" to address budget shortfalls:

> From fiscal years 2001 to 2003, general fund revenues in Colorado fell some 17 percent, compared with a national average decline of about 4 percent. By January 2003, the Denver-based National Conference of State Legislatures reported that Colorado's budget shortfall had risen to $802 million or 13.2 percent of the state's general fund, the second-highest proportion in the nation.
> The result of the fiscal crisis has been a range of spending cuts, fee increases, and suspension of tax rebates and tax credits.... Even these spending cuts and revenue increases are proving insufficient to maintain balanced budgets. As a result, Colorado has resorted to a variety of gimmicks to balance its budget, such as shifting pay dates from one year to another**, borrowing heavily from trust funds**, and (under the governor's latest budget proposal) securitizing tobacco-settlement payments — in effect, using a future stream of payments to pay for current appropriations.

(Center on Budget and Policy Priorities, "*COLORADO'S FISCAL PROBLEMS HAVE BEEN SEVERE AND ARE LIKELY TO CONTINUE Colorado's Stringent 'TABOR' Limit Has Worsened the Problems,*" *Mar. 17, 2004,* pp. 3-4) (emphasis added).

16. During a performance audit of the Colorado Unclaimed Property Division, the

Colorado State Auditor discovered that the Colorado Department of Treasury had not sent out its required statutory notices to property owners since March of 2005. (2019 Performance Audit, p.26).

**B.    Colorado's Amendments to the RUUPA**

17. With this backdrop of patently ultra vires and constitutionally-deficient practices by its Unclaimed Property Division, Colorado legislators amended the RUUPA, effective July 1, 2020 ("the 2020 Amendment"). Among other changes, the 2020 Amendment changed the notice requirements to allow notice by email when Defendants have an email address for the apparent owner, so long as Defendants are unaware that the email address on file is invalid. (C.R.S. § 38-13-503).

18. The 2020 Amendment shortened the period for the presumption of abandonment from five years to three years for most property types. (*See* C.R.S. § 38-13-201).

19. The 2020 Amendment included a "Transitional Provision" that required 2020 holder reports to retroactively include all items of property that would not have been reportable under the five-year presumptive abandonment period but were now reportable under the three-year presumptive abandonment period. (*See* C.R.S. § 38-13-1503.)

20. The 2020 Amendment added new types of property eligible for escheat including Health Savings Accounts, UMGA and UTMA accounts. (*See* C.R.S. §§ 38-13-203 & 38-13-204).

21. In 2021, RUUPA was again amended, effective April 15, 2021 ("the 2021 Amendment").

22. The 2021 Amendment changed the owner activities that would rebut the presumption of abandonment for demand, savings, or time deposit with a financial

organization. (*See* C.R.S. § 38-13-207.5).

    a.  The 2020 version of the statute stated that demand, savings, or time deposits, including a deposit that was automatically renewable, was deemed abandoned five years after the maturity date of the deposit; except that a deposit that was automatically renewable was deemed matured on its initial date of maturity unless the apparent owner consented in a record on file with the holder to renewal on or about the time of renewal. (*See* C.R.S. 38-13-201).

    b.  The 2021 Amendment provides that deposits that are automatically renewable are "matured for purposes of subsection (1) of this section upon expiration of its initial time period, but, in the case of any renewal to which the owner consents at or about the time of renewal by communication in writing with the financial organization or otherwise indicating consent as evidenced by memorandum or other record ... the property is deemed matured upon the expiration of the last time period for which consent was given." (C.R.S. § 38-13-207.5)(2)).

    c.  The 2021 Amendment allows the five-year presumption of abandonment to attach unless the owner has:

        i.  "(a) In the case of a deposit, increased or decreased its amount or presented the passbook or other similar evidence of the deposit for the crediting of interest; (b) communicated in writing with the bank or financial organization concerning the property; (c) otherwise indicated an interest in the property as evidenced by a memorandum or other record on file prepared by an employee of the financial organization; (d)

Owned other property to which subsection 1(a), 1(b), or 1(c) of this section applies and unless the financial organization communicates in writing with the owner with regard to the property that would otherwise be presumed abandoned under this subsection (1) at the address to which communications regarding the other property regularly are sent; (e) had another relationship with the financial organization concerning which the owner has (I) communicated in writing with the financial organization; or (II) otherwise indicated an interest as evidenced by a memorandum or other record ... and unless the bank communicates in writing with the owner with regard to property that would otherwise be abandoned under this subsection (1) at the address to which communications regarding the other relationship regularly are sent." (C.R.S. § 38-13-207.5(1)).

    d.  The 2021 Amendment delayed the time for a financial organization to deliver property to the administrator if a penalty or forfeiture in the payment of interest would result from the delivery of the property. (C.R.S. § 38-13-207.5).

23. The 2021 Amendment repealed the requirement that the administrator's records of persons, which includes the apparent owner's name and last-known addresses, be available for inspection. (C.R.S. § 38-13-801).

24. The 2021 Amendment repealed the administrator's authority to identify the physical address of an apparent owner in published notices and on its website. (*See* C.R.S § 38-13-1403.)

25. Unfortunately, none of these legislative changes cure Defendants' ultra vires and

unconstitutional conduct; in fact, some of the changes exacerbate Defendants' conduct. And Defendants continue to act ultra vires and in violation of Plaintiffs' Constitutional rights, as alleged herein.

**C.     Defendants' Misuse of Colorado's RUUPA**

26. Defendants are disregarding the requirements of the RUUPA so they can seize private property from citizens, use it to generate interest income for the State, and then convert it for use as revenue for the State. (*See* C.R.S. §§ 38-13-801 & 801.5; 2019 Performance Audit, pp. 11, 36, 49, 50). First, COT uses the enforcement provisions of the RUUPA (*see* C.R.S. §§ 38-13-1001-1011 & 38-13-1201-1206) to unlawfully permit and even coerce financial institutions, businesses, and nonprofits to surrender Plaintiffs' and putative class members' private property to COT. With respect to the property that is the subject of this action, Defendants failed to provide constitutionally-adequate notice before transfer of the private property by the Holders to COT.

27. Defendants violated the notice requirements of the Colorado Constitution, Article II, Section 25, and the Contract Clause of Article I, Section 10, and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution by failing to provide property owners reasonable notice that COT intends to take custody of their property prior to escheat. Specifically, the RUUPA does not require COT to provide any notice to property owners before property transfers from the Holders to COT but requires only that COT: (1) "[s]end the notice to the apparent owner's electronic-mail address if the administrator has an electronic-mail address that the administrator does not know to be invalid;" and (2) "[m]aintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom

property is being held by the administrator," after the property has already transferred to the COT. (*See* Colorado Revised Statute § 38-13-503). Moreover, the RUUPA does not require either COT or Holders to provide any form of notice to a property owner for any property valued at under $25. (*See* Colorado Revised Statute § 38-13-501 & 502). The RUUPA does not require the Administrator to take additional steps to notify apparent owners if the Administrator does not have a valid email address, but instead provides the Administrator "**may** use first-class mail, electronic mail, other printed publication, telecommunication, the internet, other media, or public events **to inform the public** of the existence of unclaimed property held by the administrator." (Emphasis added). (Colorado Revised Statute 38-13-503(5)).

28. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[1] This may include an obligation, upon learning that an attempt at notice has failed, to take "reasonable follow-up measures."[2] Additionally, notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest.[3] Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it

---

[1] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Richards v. Jefferson County*, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer was not informed of prior case and where taxpayer interests were not adequately protected).

[2] *Jones v. Flowers*, 547 U.S. 220, 235 (2006) (state's certified letter to property owner that his property would be sold unless he satisfied a tax delinquency was returned "unclaimed"; state should have taken additional reasonable steps to give notice to property owner).

[3] *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970).

is directed receives it.[4] Thus when Defendants liquidate and transfer private property into the general revenue stream without Constitutionally-adequate notice, Defendants effect a government taking and deprivation of due process.

29. Defendants in many instances unlawfully sell Plaintiffs' property (*See* C.R.S. §§ 38-13-701, 702, 801 & 801.5) and deposit the proceeds into the General Revenue Fund, again in violation of the procedural requirements of the RUUPA (*see* C.R.S. §§ 38-13-801 & 801.5, 2019 Performance Audit, pp. 11, 36, 49), Colorado Constitution, Article II, Section 25, and the United States Constitution, including the Contract Clause of Article I, Section 10, and the Fourth, Fifth, and Fourteenth Amendments.

30. Defendants breached their fiduciary duties to the property owners as custodians of their property by failing to render an accounting and otherwise mishandling the private property. (*See* C.R.S. §§ 38-13-604, 38-13-803; 24-22-101; 24-36-101; 2019 Performance Audit, pp. 1, 50-51).

31. Defendants wrongfully commingle Plaintiffs' and Class Members' private property with the General Revenue Fund to supplement the State's budget, and to pay general State debts despite telling the public that, "[t]he Division's core responsibility, under this Unclaimed Property Act, is to reunite citizens with lost or forgotten property." (*See 2019 Performance Audit,* pp. 1, 4, 31*).* The RUUPA specifically states, "On payment or delivery of property to the administrator under this article 13, the administrator as agent for the state assumes custody and responsibility for the safekeeping of the property." "Property received by the administrator under this article 13 is held in custody for the benefit of the owner and is not owned by the state." (*See* C.R.S. §§ 38-13-604, *38-13-803; 2019*

---

[4] *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Robinson v. Hanrahan*, 409 U.S. 38 (1974); *Greene v. Lindsey*, 456 U.S. 444 (1982).

*Performance Audit,* p.36). Yet, Defendants are wrongfully commingling the Unclaimed Property Funds and secondary interest with the State's General Revenue Fund (*see* C.R.S. §§ 38-13-801 & 801.5; 2019 Performance Audit, pp. 11, 36, 49, 50) without reasonable notice (1) prior to taking citizens' property, and (2) after taking possession of citizen's property, which places the private property beyond the reach of its rightful owners. (*See* C.R.S. §§ 38-13-501, 38-13-502, 38-13-503(2)*; 2019 Performance Audit,* pp. 1, 25). These commingled funds, under the RUUPA, are appropriated by the State for various spending initiatives, including Colorado State Fair Cash. (*See* C.R.S. §§ 38-13-801 & 801.5). The COT reserves only a statistical estimate to pay out claims for unclaimed property. (*See* 2019 Performance Audit, p.10*).* Therefore, the COT is not keeping custody of the abandoned property in trust for the life of the property owner as promised: "Money or property turned over to the State Treasury for safekeeping always belongs to the owner or heir of the account and there are no time limits for filing your claim. The Colorado State Treasurer currently maintains a list of over 1.7 million names of individuals as well as businesses for whom property is available." (*See COT's webpage: https://treasury.colorado.gov/treasury-divisions-and-programs).* Instead, once seized by the State, the COT unlawfully converts the property owner to the State. Again, this seizure effects a taking and deprivation of due process.

32. COT has no authority, whatsoever, either under the RUUPA or any other legitimate delegation of power, to undertake any part of the scheme alleged in this Complaint.

**D.     Defendants' Actions Were Ultra Vires and Violated the Constitution**

33. Defendants acted *ultra vires* and failed to uphold the law in the following manner:

     a.  Defendants failed to provide notice and due process of law as required by

Colorado Revised Statutes §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201 (*see* 2019 Performance Audit, pp. 1, 25-27) and the Colorado and United States Constitutions, which resulted in the unconstitutional taking of property by the Defendants and a deprivation of Plaintiffs' clearly-established due process rights. Defendants acted willfully and explicitly violated Colorado Revised Statutes §§ 38-13-201, 38-13-401, 38-13-501, 38-13-502, 38-13-503, 38-13-701, 38-13-702. (*See* 2019 Performance Audit, pp. 1, 25-27). Defendants were responsible for ensuring reasonable notice to the public in the form of direct email and publication notices to known property owners. (*See* C.R.S. §§ 38-13-501, 38-13-502, 38-13-503, 38-13-701, 38-13-702; 2019 Performance Audit, pp. 1, 25-27, 30, 38, 40). Defendants knowingly disregarded these duties, causing Plaintiffs injuries.

b. Defendants commingled private funds held in the Unclaimed Property Fund with public funds in the non-dedicated portion of the Colorado State General Revenue Fund, which serves as the State's primary operating fund. The State, by and through Defendants, made expenditures from the General Revenue Fund without waiting the lifetime of the property owner. (See COT's webpage:https://treasury.colorado.gov/treasury-divisions-and-programs).

c. COT's records reveal that Defendants accept unclaimed property from Holders with an "unknown" or "unidentified" name – even if the property would be expected to have an owner name – for property such as payroll checks, savings accounts, and safe deposit boxes. Defendants also did not sell tangible

unclaimed property within three years as required by state statutes. Defendants have also not taken physical custody of approximately 1,085 tangible unclaimed property items reported to Defendants by property holders even though state law requires Defendants to take custody of the property when it is reported by the holder. Treasury accounting staff recorded interest distributions incorrectly and have not determined the amount of the error or made any necessary adjustments. (2019 Performance Audit, p.1). Plaintiffs assert that, on information and belief, Defendants collude with certain companies and financial institutions that, respectively, retain property, funds, and gain interest that rightfully belong to the citizens of Colorado, pursuant to the RUUPA (*see* C.R.S. §§ 38-13-604, 38-13-703, 38-13-803; 2019 Performance Audit, pp. 1, 25-28, 30, 36, 38, 40, 49, 50) and other laws, and Defendants provided active assistance to, and engaged in collusion with, the regulated entities in violation of the law. Financial institution Holders who list themselves as property "Owners" for escheated property, and/or their own corporate address, then file a claim with the COT, after a period of time, to have the respective funds/property returned to the financial institutions themselves.

Wells Fargo

| CLAIM | FARGO WELLS | DENVER | 80206 | WELLS FARGO & COMPANY | 14846165 | $4.56 |
|-------|-------------|--------|-------|------------------------|----------|-------|
| CLAIM | FARGO WELLS | DENVER | 80206 | WELLS FARGO & COMPANY | 14846254 | $1.90 |
| CLAIM | FARGO WELLS | ASPEN | 81611 | WELLS FARGO BANK NA | 10887900 | $6.05 |
| CLAIM | FARGO WELLS NA | PARKER | 80134 | WELLS FARGO INTRINSIC VALUE FND ADM | 16564566 | SHARES INCLUDED |
| CLAIM | FARGO WELLS | DENVER | 80206 | WELLS FARGO & COMPANY | 14846165 | $4.56 |

Morgan Stanley

| CLAIM | MORGAN STANLEY | BROOMFIELD | 80023 | MORGAN STANLEY | 21133209 | UNDER $50 |
|-------|----------------|------------|-------|----------------|----------|-----------|

| CLAIM | MORGAN STANLEY | BROOMFIELD | 80023 | MORGAN STANLEY | 19683818 | $50-$249 |
|---|---|---|---|---|---|---|
| CLAIM | STANLEY MORGAN | THORNTON | 80229 | MORGAN STANLEY | 7929227 | $4.57 |
| CLAIM | STANLEY MORGAN | THORNTON | 80229 | MORGAN STANLEY | 7929228 | UNDER $50 |
| CLAIM | MORGAN STANLEY SMITH BARNEY IRA | LITTLETON | 80127 | MORGAN STANLEY | 16767227 | $1.75 |

### PayPal

| CLAIM | PAL PAY | DENVER | 80222 | PAYPAL INC | 10533824 | $1.95 |
|---|---|---|---|---|---|---|

### UBS

| CLAIM | SERVICES UBS F | FORT COLLINS | 80528 | UBS AG | 9258526 | $1.19 |
|---|---|---|---|---|---|---|
| CLAIM | UBS TRADE ALLOCATION PROCESSING OMNIBUS | EVERGREEN | 80439 | U B S FINANCIAL SERVICES INC | 14804162 | $0.07 |

Until the financial institutions' claims are processed, and the property is transferred back to the Owners or Holders, the State of Colorado collects interest that accrues from these funds, initially, deposited into the Unclaimed Property Trust Fund, and ultimately into the State's General Revenue Fund. (*See* C.R.S. §§ 38-13-801 & 801.5; 2019 Performance Audit, pp. 1, 25-28, 30, 36, 38, 40, 49, 50*).* This failure to allow rightful property owners to reclaim these "unclaimed" funds, with interest, directly caused and continues to cause the injury alleged by Plaintiffs and putative class members.

d. Defendants failed, and continue to fail, to provide the Constitutional and statutorily required notices before taking personal property from Plaintiffs and putative class members. The practical effect of Defendants' failure to provide adequate notice and obfuscating the property's and property owner's identification and location, description, and amount, means that—for all practical purposes—ownership of Plaintiffs' and putative class members' property will likely permanently and wrongfully vest to the State or Holder.

e. Defendants continue to seize, sell, and destroy the contents of private bank safety deposit boxes and securities/investment vehicles without notice to the owners in violation of the Colorado Constitution, Article II, Section 25, and United States Constitution, Fourth and Fourteenth Amendments, which contains various private property. (*See* C.R.S. § 38-13-401; 2019 Performance Audit, pp. 1, 25-27, 30, 38, 40*).*

34. In summary, the Colorado and Federal Constitutions, and Colorado's RUUPA, do not permit the seizure or sale of private property for public use without adequate notice and due process of law. The fact that Defendants subsequently sell the unlawfully seized property, commingle the funds with other accounts in the State General Revenue Fund, and then use those funds to generate interest and revenue for the State does not sanitize the process. (*See* 2019 Performance Audit, pp. 1, 25-28, 30, 36, 38, 40, 49, 50).

35. Likewise, the fact that some of the unconstitutional conduct described above may have originated in an earlier administration does not relieve Defendants of their obligation to enforce the law nor does it relieve Defendants of liability for their own wrongdoing.

**E.       Defendants Knowingly Violated Their Constitutional Duties.**

36. Defendants swore binding oaths of office to uphold the Colorado and United States Constitutions and to "faithfully discharge their respective duties and trusts and that the state treasurer shall be held responsible against all risks and losses whatsoever for all state moneys coming into his hands or received by the treasury department." (*See* C.R.S. § 24-22-01). Defendant Young, as Colorado Treasurer, "[i]s the chief executive officer of the department of the treasury. He has all of the powers, duties, and obligations conferred upon him by the state constitution and is the official custodian of all state moneys and

securities, unless otherwise expressly provided by law." (*See* C.R.S. § 24-36-101). Instead of exercising fidelity, Defendants violated, and continue to violate, these oaths by taking and selling private property without notice and due process of law and by allowing Holders to retain Plaintiffs' and putative class members' funds. (*See* C.R.S. § 38-13-503; 2019 Performance Audit, pp. 1, 25-27, 30, 38, 40*).* Defendants' actions create personal liability on the part of Defendants. Specifically, Defendants' conduct violated the Colorado Constitution, Article II, Section 25, and the United States Constitution, Article I, Fourth, Fifth and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law," and the Contract Clause of Article I, Section 10. This conduct directly caused the injury alleged by the Plaintiffs and putative class members in this action.

**F.     The RUUPA**

37. Defendants have violated and continue to violate the RUUPA by confiscating the private property of *known* owners without adequate notice and selling their private property without their knowledge.

> **1.   Defendants Failed to Determine Whether Plaintiffs met the Threshold Requirements of the RUUPA.**

38. The Colorado State Auditor's Office notes, "The Division's core responsibility, under this Unclaimed Property Act, is to reunite citizens with lost or forgotten property." (*See* 2019 Performance Audit, pp. 1, 4, 31). The RUUPA also specifically states, "On payment or delivery of property to the administrator under this article 13, the administrator as agent for the state assumes custody and responsibility for the safekeeping of the property." "Property received by the administrator under this article 13 is held in custody for the benefit of the owner and is not owned by the state." (*See* C.R.S. §§ 38-13-604 &

38-13-803; 2019 Performance Audit, pp. 31, 36).

39. Defendants are charged with the responsibility to uphold the RUUPA and protect the public from its misapplication. At all times Plaintiffs' identities and locations were known, or should have been known, by Defendants through reasonable due diligence. Defendants failed to carry out their statutory obligations to police the Holders (*see* C.R.S. §§ 38-13-401; 38-13-501; 38-13-502; 38-13-601; 38-13-603) and require them to notify Plaintiffs before seizure as required by the RUUPA (*see* C.R.S. §§ 38-13-501 & 38-13-502), in addition to carrying out COT's own notice obligations under the State and Federal Constitutions and Colorado Revised Statutes §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, and 38-13-1201.

40. As evidence of this fact, all three named Plaintiffs have never received mail notice, at their current addresses, from the COT or the Holders, before the unlawful taking of their private property, though their identities were known to the Holders at the time their property was taken.

41. The RUUPA, in effect, became a tool for some Holders (companies and financial institutions) to divorce themselves from unwanted account holders, which resulted in reduced administrative costs, increased retained earnings, and increased control, and even unlawful conversion of citizens property, among other advantages for the Holders and COT.

**2. Defendants Failed to Provide Statutory Notice.**

42. Defendants, under Colorado Revised Statutes §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801,

and 38-13-1201, were expressly required to provide adequate notice to the Plaintiffs through a mailed letter, email, and newspaper publication to property owners, which is consistent with hornbook Constitutional principles. However, it is apparent that adequate notice was never employed by Defendants at any time. In fact, notice was never provided by Defendants to Plaintiffs and putative Class Members even after the property was taken. (2019 Performance Audit, pp. 1, 26-27).

43. COT's website did not comport with or satisfy RUUPA's § 38-13-111(4-5) previous[5] notice requirements, which required:

> The Division to mail a notice to each owner of unclaimed property with a value of $50 or more to the owners' last-known address as reported on the holders' submitted property report. This notification must include a statement that the owner may have unclaimed property that is currently being held by the State and inform the owner that they may file a claim with the State Treasurer in order to get their property returned to them.

44. RUUPA §§ 38-13-501 & 38-13-502 (Required Notice by Holder) provides that the Holder of a person's property shall provide written notice to the owner, no more than 180 days and no less than 60 days, before filing a report with the COT, to the owner's last known address, stating the Holder has the property and that the property is subject to escheat to the COT if not claimed.

45. RUUPA - *Colorado Revised Statute §§ 38-13-503* – requires that notice to property owners be provided by the State as follows:

> (1) The administrator shall give notice to an apparent owner that property that is presumed abandoned and appears to be owned by the apparent owner is held by the administrator under this article 13.
>
> (2) In providing notice under subsection (1) of this section, the administrator shall send the notice to the apparent owner's electronic-mail address if the administrator has an electronic-mail address that the administrator does not know to be invalid.

---

[5] § 38-13-111 was repealed effective July 1, 2020

(3) In addition to the notice under subsection (2) of this section, the administrator shall maintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator.

(4) The website or database maintained under subsection (3) of this section must include instructions for filing with the administrator a claim to property and a printable claim form with instructions for its use.

(5) In addition to giving notice under subsection (2) of this section and maintaining the website or database under subsection (3) of this section, the administrator may use first-class mail, electronic mail, other printed publication, telecommunication, the internet, other media, or public events to inform the public of the existence of unclaimed property held by the administrator.

46. Despite the categorical mandate in § 38-13-503(1) and (2) to provide notice to apparent owners, Plaintiffs never received (based on a reasonable search of their email inboxes) email notice from the Administrator regarding their unclaimed property.

47. On information and belief, Defendants have apparently failed to send email notice to previous apparent owners, as required by the plain language of C.R.S. § 38-13-503(1) and (2), whose property was wrongfully seized and presumed "abandoned" before the notice provisions of RUUPA were amended effective July 1, 2020. This misconduct is ultra vires and violates C.R.S. § 38-13-503(1) and (2).

48. Defendants' previous and ongoing failure to send email notice to apparent owners before July 1, 2020, also is constitutionally deficient and violates Plaintiffs' due process rights to adequate notice.

49. And regardless, at all relevant times, Defendants violated Plaintiffs' due process rights to receive notice from the state before property was seized.

50. At all relevant times, RUUPA - Colorado Revised Statutes § 38-13-701 ("Public

Sale of Property") – does not even require notice to the property owner. The statute only provides that COT:

> Before selling property under subsection (1) of this section, the administrator shall give notice to the public of: (a) The date of sale; and (b) A reasonable description of the property.

51. At all relevant times, RUUPA - Colorado Revised Statutes § 38-13-702 (Notice of Securities Sale by COT) – provides as follows:

> The administrator shall not sell or otherwise liquidate a security until three years after the administrator receives the security and gives the apparent owner notice under section *38-13-503* that the administrator holds the security.

52. Defendants failed to provide the constitutional forms of notice by publication and/or direct mail as required by RUUPA Title 38. COT's website and direct notice efforts, for example, are constitutionally deficient for adequate notice as a matter of law and do not satisfy the RUUPA or the due process requirements of the United States and Colorado Constitutions. Defendants were fully aware of these facts at the time they failed to provide adequate constitutional notice.

53. Defendant Young (in his official capacity as Colorado State Treasurer), and Bianca Gardelli (in her official capacity as Director of the Colorado Department of Treasury, Unclaimed Property Division) are the custodians of property that was seized and sometimes sold ultra vires of their statutory authority and without notice, and placed into Colorado's General State Revenue Fund, et al., maintained, and managed (as authorized by Colorado statute) by the Colorado Department of Treasury. (*See* C.R.S. §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201).

54. Defendants failed to exercise due care, acted intentionally and with reckless

disregard, acted arbitrarily and capriciously, and *ultra vires* of their statutory authority, and in doing so violated various statutes and laws, as well as fundamental federal and state constitutional rights, including Plaintiffs' rights.

CLASS ALLEGATIONS

55. Plaintiffs bring this case on behalf of themselves and all other individuals similarly-situated under Federal Rule of Civil Procedure 23(b)(1)(A), (b)(2), and (b)(3).

56. The proposed Class is defined as:

> All persons or entities who did not receive actual notice before their property was taken by the State of Colorado between May 27, 2016 and the present.

57. The number, identity, and location of persons in the proposed Class is unknown at this time but based on Defendants' own records for the period of 2005 to present, including COT's website, the number of persons in the proposed class is estimated to be over 1.6 million people. (2019 Performance Audit, p.1). These people are dispersed throughout Colorado and the world. Those persons in the Class are therefore so numerous that joinder of the entire proposed Class is impractical. The disposition of their claims as a class action will provide substantial benefits to the parties and the Court.

58. There are questions of law and fact common to all putative class members, to-wit, whether Defendants violated, and continue to violate, the constitutional due process of law notice requirement of the Fourteenth Amendment, perform unlawful seizures of private property under the Fourth Amendment, perform unlawful Takings under the Fifth Amendment, and unlawfully deprive putative class members of private property without due process of law under Article II, Section 25 of the Colorado Constitution when Defendants take and/or sell putative Class Member's private property on behalf of COT.

59. Plaintiffs' claims are typical of those of the putative class members, who are

subject to the same deprivations of their rights and misapplication of the law by Defendants. There is a well-defined community of interest in the questions of law and facts involved in this case.

60. Plaintiffs will adequately represent the putative class members' interests. Plaintiffs have no interests relevant to the lawsuit's subject matter that are antagonistic to the putative class members. Their attorneys are highly experienced in complex, class action litigation.

61. Because Defendants' duties to comply with the Constitution apply equally to all in the putative Class, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

62. Defendants' actions and threatened actions are depriving and will continually deprive Plaintiffs and putative class members of their Constitutional rights on grounds generally applicable to all, thereby making appropriate declaratory, injunctive, and other equitable relief regarding the proposed Class as a whole.

63. The issues and questions of fact and law are common to the putative class members and predominate over questions that may affect individual members.

64. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### VII. CLAIMS FOR RELIEF

### COUNT I: DECLARATORY RELIEF

65. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

66. A real and actual controversy exists between Plaintiffs and Defendants concerning

Defendants' duties under the various statutes and laws that define their duties. Specifically, Plaintiffs seek a declaration that Defendants:

a. Failed to provide notice and satisfy due process requirements under the provisions of Colorado Revised Statutes §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201, and the Colorado and United States Constitutions, which resulted in the unconstitutional taking of personal property by the Defendants;

b. Allowed certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of Colorado under the RUUPA and other laws and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

c. Seized, sold, and destroyed, without notice to the owners - in violation of the U.S. Constitution, Fourth Amendment (Right to Privacy), Fifth Amendment (Private Property) and Fourteenth Amendment (Due Process) and Colorado Constitution, Article II, Section 25 (Due Process) - the contents of private bank safety deposit boxes;

d. Failed to fulfill obligations to enforce the holders' obligations under Colorado Revised Statutes §§ 38-13-401, 38-13-501, 38-13-502, 38-13-601, 38-13-603, and in all other ways, to ensure that Holders have complied with the RUUPA;

e. Acted ultra vires by failing to provide notice and satisfy due process requirements under the provisions of Colorado Revised Statutes §§ §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-

13-701, 38-13-702, 38-13-801, 38-13-1201, and the Colorado and United States Constitutions, which resulted in the unconstitutional taking of private property by the Defendants.

67. The dispute between Plaintiffs and Defendants is actual and concrete, and involves a significant financial burden unilaterally imposed on Plaintiffs based on the loss of their property. A determination of the rights and duties of the parties is necessary and proper at this time in order that Plaintiffs may ascertain their rights and establish, as a matter of law, that Defendants have violated their obligations and duties under the above laws such that Plaintiffs and Class Members are entitled to the disgorgement and return of either their property or the return of the reasonable value thereof.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983 (PROCEDURAL DUE PROCESS)

68. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

69. The Due Process Clause of the United States Constitution, and the Due Process Clause of the Colorado Constitution, prohibit Defendants from depriving citizens of protected property interests without due process of law.

70. Plaintiffs and putative class members have constitutionally-protected property interests in their private property that they own but, nevertheless, it was transferred to the State of Colorado between May 27, 2016 to present.

71. Defendants deprived Plaintiffs and putative Class Members of their constitutionally protected property interests by seizing, and sometimes selling, property of Plaintiffs and putative class members without the adequate notice required by statute and federal and state Constitutional due process of law, ultra vires of their statutory authority.

72. Defendants' failure to comply with the requirements of the Due Process Clause of

the United States Constitution and of the Colorado Constitution, as applied, in the manners alleged above, has resulted in substantial monetary losses to Plaintiffs and Class Members.

73. Based on the foregoing, Plaintiffs and all similarly situated persons are entitled to the return of the value of their property, with interest, from the Colorado State General Revenue Fund, which was denied to them as a result of Defendants' violation of the due process of law rights guaranteed by Colorado and the United States Constitutions, as applied to Colorado's RUUPA.

74. Plaintiffs are entitled to an injunction barring the Defendants' violations of their due process rights and providing for restitution as incidental and ancillary relief.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983 (TAKINGS CLAUSE)

75. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

76. The Takings Clause of the United States Constitution prohibits the State of Colorado from taking private property for public use without just compensation.

77. As set forth more fully above, Defendants have unlawfully taken control of and liquidated the property of Plaintiffs and putative class members without the notice required by statute and federal and state Constitutional due process, ultra vires of their statutory authority.

78. To the extent that Plaintiffs' property remained held in the Colorado State General Revenue Fund, Plaintiffs seek restitution of the proper value of their property. To the extent that said Plaintiffs' property was converted to public use, Plaintiffs are entitled to just compensation for their property. Specifically, Plaintiffs' property should be valued according to the applicable principles of law for reimbursement purposes.

79. Based on the foregoing, Plaintiffs are entitled to and hereby seek restitution and just compensation for the property seized for public use as a result of Defendants' violations of the Takings Clause of the United States Constitution. In the alternative, Plaintiffs seek damages from all Defendants, jointly and severally, in their individual capacities.

80. Plaintiffs are also entitled to an injunction barring the Defendants' violations of their rights to be free from unconstitutional takings and providing for restitution as incidental and ancillary relief under that injunction.

### COUNT IV: ACCOUNTING

81. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

82. Defendants never provided Plaintiffs or putative class members notice of the true state of affairs and that COT had taken possession of their property. Defendants do not enforce the RUUPA and have acted arbitrarily and capriciously, *ultra vires* of their statutory authority.

83. The total amount of the Plaintiffs' injury, which includes not only improperly seized property that may or may not have been sold, also includes other investments and property rights, such as dividends and improperly paid interest, the proper calculation of principal and interest, and the unnecessary fees, costs, and taxes, cannot be ascertained without an accounting for such property, which Plaintiffs seek.

84. Plaintiffs are also entitled to an injunction providing for restitution as incidental and ancillary relief as determined by the accounting requested in this claim.

### COUNT V: BREACH OF FIDUCIARY DUTY

85. Defendants are legally required to safeguard Plaintiffs and the putative class's

property. (*See* C.R.S. §§ 24-22-101, 604, 38-13-803).

86. Defendants are legally required to hold Plaintiffs' property on behalf of Plaintiffs and the class and not commingle Plaintiffs' property with Defendants' operating accounts.

87. By accepting their positions and promising to follow the Colorado and United States Constitutions, Defendants agreed to act for the benefit of Plaintiffs and the class. Instead, Defendants acted for their own benefit and the benefit of other third parties.

88. Defendants may only take and escheat Plaintiffs' property under certain express conditions. Defendants, however, have taken Plaintiffs' property without meeting these conditions, in direct violation of their fiduciary duty to safeguard Plaintiffs' property.

89. Defendants' failure to properly safeguard Plaintiffs' property violated their fiduciary duty: to not engage in self-dealing, to deal fairly and honestly, of good faith and loyalty, to act with strict integrity, of full disclosure, to act with candor.

90. These breaches of duty both harmed Plaintiff and benefitted Defendants, in the amount of property improperly taken, plus interest.

### RELIEF SOUGHT

WHEREFORE, Plaintiffs seek judgment in their favor against Defendants as follows:

(1) For restitution of the value of Plaintiffs' property from the Colorado State General Revenue Fund in a sum according to proof at the time of trial;

(2) For declarations that Defendants:

    (a) Failed to provide notice and due process pursuant to the provisions of Colorado Revised Statute §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201, and the Colorado and United States Constitutions, which resulted in the

unconstitutional taking of private property by the Defendant state officials;

(b)  Commingled unclaimed property funds with public funds held in the Colorado State General Revenue Fund;

(c)  Allowed certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of Colorado pursuant to the RUUPA and other laws and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

(d)  Seized, sold, and destroyed without notice to the owners in violation of the Fourth Amendment (Right to Privacy), Fifth Amendment (Private Property) and Fourteenth Amendment (Due Process), the contents of private bank safe deposit boxes which contained such items as original testamentary instruments (e.g., wills and trusts), insurance policies, jewelry, cash, collectibles, other intangibles, etc.

(e)  Failed to fulfill obligations to verify that the corporations fulfilled their obligations under Colorado Revised Statute §§ 38-13-402, 38 -13-501, 38-13-502, 38-13-601, 38-13-603, and in all other ways complied with the RUUPA.

(3)  To the extent that private funds have been converted to public use, restitution of such funds, or damages equal to the value of the private property taken for public use, in any case in a sum according to proof at the time of trial;

(4)  General and special damages from the Defendants, and each of them, in their individual capacities, in a sum according to proof at the time of trial;

(5)  For punitive and exemplary damages in an amount appropriate to punish and set an example of Defendants in their individual capacities;

(6) For equitable and injunctive relief as determined by this Court, including but not limited to, imposition of a constructive trust over an accounting of any and all transactions unlawfully entered into by Defendants without the appropriate notification of the public;

(7) In the alternative, Plaintiffs seek damages from all Defendants, jointly and severally, in their individual capacities;

(8) A permanent injunction restraining Defendants from engaging in the following:

    (a) Failing to provide notice and due process pursuant to, and in the form required by, the provisions of Colorado Revised Statute §§ 38-13-101, 38-13-102, 38-13-307, 38-13-501, 38-13-502, 38-13-503, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201, of the RUUPA;

    (b) Failing to pay interest in accordance with the RUUPA and applicable law;

    (c) Improperly commingling unclaimed property funds with public funds held in the Colorado State General Revenue Fund;

    (d) Allowing any known company or financial institution to retain property and funds that are subject to transfer pursuant to the RUUPA;

    (e) Shredding, altering, or destroying any documents necessary to determine the identity of any owner of property held by COT pursuant to the RUUPA;

    (f) Destroying or altering original testamentary instruments (e.g., wills and trusts), insurance policies, and personal correspondence escheated or transferred to COT's custody;

    (g) Accepting any property from any holder without verification that the holders properly fulfilled their obligations under Colorado Revised Statutes §§ 38-13-

401, 38-13-501, 38-13-502, 38-13-601, 38-13-603, and in all other ways complied with the RUUPA.

(h) Prohibiting future unlawful and/or improper transactions, as alleged in this Complaint and to promulgate public rule-making;

(i) Plaintiffs and putative class members have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm unless the Court issues preliminary and permanent injunctive relief ordering Defendants to comply with the law, as set forth above, and to return Plaintiffs' property and the Property belonging to the potential Class Members.

(j) Plaintiffs accordingly seek an injunction (1) compelling the Defendants to immediately cease all unlawful conduct as described herein and to properly administer the RUUPA (2) providing all ancillary and incidental monetary relief required pursuant to the injunction.

(9) Restitution and disgorgement of all ill-gotten gains, including principal and related interest, to the public and/or claimants in the form of an order requiring Defendants to refund the property taken from Plaintiffs and other injured Class Members that Defendants obtained by engaging in the conduct that violates the RUUPA, Colorado and Federal Constitutions;

(10) For an accounting;

(11) For creation of a common fund;

(12) For a reasonable sum of attorneys' fees pursuant to Colorado "common fund doctrine," "private attorney general doctrine," 42 U.S.C. § 1988, and other laws, as incurred by Plaintiffs to date and to be incurred by Plaintiffs hereinafter in

connection with this action;

(13)   For appointment of undersigned counsel as class counsel;

(14)   For an order certifying the proposed class under Federal Rule of Civil Procedure 23(b)(1)(A), (b)(2), or (b)(3);

(15)   For all costs incurred by Plaintiffs to date, and to be incurred by Plaintiffs - hereafter, in connection with this action; and

(16)   For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: May 27, 2022                              Respectfully submitted,

Jonathan Greiner, Esq.                           /s/ *Sean R. Cooper*
*Pro hac vice forthcoming*                       Richard M. Paul III
State Bar Number 24101830                        *Admitted in District of Colorado*
*Pro hac vice forthcoming*                       Sean R. Cooper
Christopher Ross, Esq.                            *Admitted in District of Colorado*
*Pro hac vice forthcoming*                       **PAUL LLP**
State Bar Number 24103331                        601 Walnut Street, Suite 300
*Pro hac vice forthcoming*                       Kansas City, Missouri 64106
**GREINER & ASSOCIATES, PLLC**                   T: (816) 984-8100
401 Austin Highway, Suite 200                    F: (816) 984-8101
San Antonio, TX 78209                            Rick@PaulLLP.com
T: (210) 824 – 6529                              Sean@PaulLLP.com
F: (210) 829 – 5528
service@greinerattorneys.com

**ATTORNEYS FOR PLAINTIFFS**