**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-01379-CNS-STV

DAVID KNELLINGER and ROBERT STOREY, individually and on behalf of all persons similarly situated,
      Plaintiffs,
v.
DAVID YOUNG, in his individual and official capacities as COLORADO STATE TREASURER, COLORADO OFFICE OF TREASURY, and BIANCA GARDELLI, in her individual and official capacities as DIRECTOR OF COLORADO DEPARTMENT OF TREASURY, UNCLAIMED PROPERTY DIVISION,
      Defendants.

---

**MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

---

Plaintiffs are two individuals who believe that each is the rightful owner of a small sum of money held in custody by Defendants pursuant to the Revised Uniform Unclaimed Property Act, § 38-13-101, *et. seq.*, C.R.S. (2022) ("RUUPA"). Instead of attempting to recover those monies by submitting administrative claims under RUUPA, they filed a class action Complaint [Doc. 1] alleging that their rights secured by federal and state law have been violated by Colorado's former and current statutes governing unclaimed property, as well as Defendants' administration of those statutes. The gravamen of Plaintiffs' prolix claims is that Defendants' acceptance of unclaimed property that was deemed abandoned by operation of law and required to be turned-over to them by third-parties constituted takings of private property without just compensation, violated their procedural due process right to adequate notice, and breached statutory and fiduciary duties allegedly owed to them. They seek unprecedented and sweeping relief. Namely, they urge this Court to cast aside the General Assembly's policy choice to adopt RUUPA as the comprehensive and complex regulatory scheme for Colorado's administration of unclaimed property and instead impose a constructive trust over *all* property in the trust funds

that would require this Court to serve as the super-administrator of more than 1.5 million separate and distinct claims to collect that property. But such relief is unwarranted because Plaintiffs' claims are riddled with jurisdictional and legal defects that render them unviable. Accordingly, Defendants respectfully request dismissal under Fed.R.Civ.P. ("Rule") 12(b)(1) and 12(b)(6).[1]

## BACKGROUND

*RUUPA's predecessor*. The Unclaimed Property Division was created within the Department of the Treasury ("Department") on July 1, 1987 when the General Assembly enacted the Unclaimed Property Act, §§ 38-13-101 through -134, C.R.S. (1987) ("UPA"). *See* 1987 Colo. Sess. Laws, ch. 274, p. 1317-32 & ch. 275, p. 1333-35. Although certain provisions were amended over time, UPA remained in effect through June 30, 2020.

*RUUPA*. Effective July 1, 2020, the General Assembly repealed UPA in its entirety and enacted RUUPA through the passage of Senate Bill 19-088, which was over ninety pages long. *See* Doc. 1, ¶ 17; *see also* 2019 Colo. Sess. Laws, ch. 110, p. 407, § 1. The General Assembly amended several provisions of RUUPA in 2021, but otherwise RUUPA as originally enacted remains intact. *See id.*, ¶¶ 21-24; *see also* 2021 Colo. Sess. Laws, ch. 32, p. 131-34, §§ 1-5 & ch. 86, p. 360, § 3. The Department colloquially refers to RUUPA as the "Great Colorado Payback." *See* https://colorado.findyourunclaimedproperty.com (last visited August 28, 2022).[2]

---

[1] *Certificate of Compliance*: Pursuant to the Court's Civil Practice Standard III.D., undersigned counsel certifies that on August 3, 2022, they conferred with Plaintiffs' counsel by telephone about many of the specific legal deficiencies raised by this motion and whether any could be corrected by amending the Complaint [Doc. 1]. Plaintiffs' counsel preliminarily expressed their disagreement and disinclination to amend the Complaint [Doc. 1] and, after follow-up written conferrals on August 22, 2022, indicated that Plaintiffs oppose this motion.

[2] *See Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir.2014) (when documents are referenced in a complaint that are central to plaintiff's claims and indisputably authentic, court may consider

Colorado State Treasurer Dave Young is the "administrator" of RUUPA, § 38-13-102(1),[3] and

the day-to-day implementation and administration of RUUPA is carried out by the Division

under the supervision of Director Bianca Gardelli. *See* Doc. 1, ¶¶ 11-13.

RUUPA is subdivided into fifteen parts, as follows:

- Part 1 establishes general provisions, including definitions for terms and granting rulemaking authority to the administrator, *see* §§ 38-13-101 to -104;

- Part 2 establishes that property is presumed abandoned if it is unclaimed by its apparent owner after a specified period of time known as the dormancy period, which varies by type of property, and also exempts certain property from RUUPA, *see* §§ 38-13-201 to -220;

- Part 3 establishes priority rules for determining when the State may take custody of property that is presumed abandoned, *see* §§ 38-13-301 to -307;

- Part 4 requires a holder of property presumed to be abandoned to provide a report to the administrator and retain certain records related to the property, *see* §§ 38-13-401 to -405;

- Part 5 establishes the respective notices that the holder must provide to the apparent owner *before* property that is presumed abandoned is transferred to the administrator, and the administrator must provide to the apparent owner *after* such property is received into custody, *see* §§ 38-13-501 to -504;

- Part 6 establishes how the administrator takes custody of property after it has been abandoned, including providing that for property other than money the owner is entitled to receive from the administrator any income or gain realized or accrued on the property before it is sold, *see* §§ 38-13-601 to -609;

- Part 7 permits the administrator to sell certain property at a public sale after public notice, and creates special requirements for the sale of securities by the administrator and recovery of the actual security or its value by the apparent owner, plus dividends, interest, and other increments on the security, *see* §§ 38-13-701 to -705;

- Part 8 governs the administration of money that is received as or derived from unclaimed property, including creating two trust funds to hold the principal of such monies, plus any interest derived from the deposit and investment of such monies, providing that monies in the trust fund does not revert to Colorado's general fund at the end of any fiscal year, and

---

such documents when resolving a motion to dismiss without converting the motion to summary judgment). The Department's website is referenced throughout and partially screenshotted in the Complaint [Doc. 1, ¶¶ 8, 10, 24, 27, 43, 45, 52, 57], and therefore it is both central to Plaintiffs' claims and indisputably authentic.

[3] Unless otherwise specified, all state statutory citations are to C.R.S. (2022).

providing that property received by the administrator under RUUPA is held in custody for the benefit of the owner and is not owned by the State, *see* §§ 38-13-801 to -803;

- Part 9 addresses claims to recover property from the administrator, including authorizing a claimant to file a civil action in Colorado state court if their claim has been denied or deemed denied, and allowing offsets against certain claims to such property (such as for child support, judicial restitution, fines, delinquent taxes, etc.), *see* §§ 38-13-901 to -906;

- Part 10 permits the administrator to request a report from a person and to examine records to determine compliance with RUUPA, *see* §§ 38-13-1001 to -1011;

- Part 11 authorizes a holder to appeal the administrator's determination concerning the holder's liability to deliver property or payment to the state, *see* §§ 38-13-1101 to -1104;

- Part 12 establishes penalties for a holder's failure to comply with RUUPA, *see* §§ 38-13-1201 to -1206;

- Part 13 governs agreements between an apparent owner and a person commonly known as a "finder" who locates and recovers abandoned property on behalf of the owner, *see* §§ 38-13-1301 to -1304;

- Part 14 addresses the confidentiality and security of information related to unclaimed property, *see* §§ 38-13-1401 to -1408; and

- Part 15 includes miscellaneous provisions relating to the uniformity of construction, electronic signatures, a local government opt-out, and transitional interpretation, *see* §§ 38-13-1501 to -1504.

    In short, RUUPA is a comprehensive and complex regulatory scheme that: (1) requires holders to report and transfer unclaimed property deemed abandoned by operation of law to the administrator; (2) authorizes the administrator to sell the property (only if necessary); (3) requires the administrator to hold the property or its cash value (plus for securities any dividends, interest, and other increments) in the Trust Fund in perpetuity for the benefit of rightful owners; (4) process claims to collect such property; (5) determine whether claimants are actual owners; (6) and for approved claims, reunite rightful owners with their property, which never escheats[4] to

---

[4] "Escheat" means "[r]eversion of property (esp. real property) to the state upon the death of an owner who has neither a will nor any legal heirs." *Black's Law Dictionary* 623 (9th ed. 2009).

the State. *See* §§ 38-13-101 to -1504. Treasurer Young promulgated administrative rules to

implement and administer RUUPA that took effect on November 30, 2021. *See* 8 C.C.R. 1508-1.

> ***This Lawsuit***. Plaintiff David Knellinger is a Colorado resident who believes he owns

property valued between "$50 and $249" that was reported and transferred to the administrator

by holder, "Verizon Communications Inc," as being owned by a person named "David

Knellinger" who at one-time resided in the part of the city of "Colorado Springs" with zip code

"80906." Doc. 1, ¶¶ 7-8. He alleges that he "never received any notice" from anyone before the

Department took custody of the property he believes he owns. *Id.*, ¶ 7. He claims that Defendants

"failed to identify both the type and amount" of the property he believes he owns, and that he

located certain information about it by searching the Department's website. *Id.*, ¶¶ 7-8.

> Plaintiff Robert Storey is a Colorado resident who believe he owns property valued

"under $50" that was reported and transferred to the administrator by holder, "Lawyers Title

Insurance Corporation," as being owned by a person named "Robert E. Storey" who at one-time

resided in the part of the city of "Colorado Springs" with zip code "80925." Doc. 1, ¶¶ 9-10. He

alleges that he "never received any notice" from anyone before the Department took custody of

the property he believes he owns. *Id.*, ¶ 9. He claims that Defendants "failed to identify both the

type and amount" of the property he believes he owns, and that he located certain information

about it by searching the Department's website. *Id.*, ¶¶ 9-10.

> Plaintiffs maintain their federal question claims under 42 U.S.C. § 1983 ("Section 1983")

and assert that Colorado's unclaimed property laws, and/or Defendants' administration of the

same, violate the Contract Clause of Article I, § 10 of the U.S. Constitution, their rights to

privacy under the Fourth Amendment and due process under the Fourteenth Amendment, and

constitute a taking of private property without just compensation in violation of the Fifth

Amendment. *See* Doc. 1, ¶¶ 3, 5, 27, 29, 36, 66(c). Plaintiffs also assert several state law claims alleging that Colorado's unclaimed property laws, and/or Defendants' administration of those laws, violate RUUPA (*i.e.*, constitute *ultra vires* acts) and the due process clause of Article II, § 25 of the Colorado Constitution, and constitute breaches of fiduciary duty. *See id.*, ¶¶ 1, 3, 13, 27, 29, 30, 33(e), 36, 52-54, 66(e), 71, 77, 82, 85, 88-89. As relief, they seek: an accounting of monies in the trust funds; restitution; interest; disgorgement; declarations that Colorado's unclaimed property laws, and/or the Defendants administration of the same, violate the U.S. and Colorado Constitutions and RUUPA; general, special, punitive, and exemplary damages; imposition of a constructive trust over an accounting of monies in the trust funds; permanent injunctive relief prohibiting Defendants from violating the U.S. and Colorado Constitutions and RUUPA in the future; creation of a common fund; and an award of their reasonable attorneys' fees and costs. *See id.*, ¶¶ 83-84, 90, p. 29-33.

Besides bringing the above-described claims on behalf of themselves, Plaintiffs also seek to bring them on behalf of all other similarly situated individuals and propose to define the class as: "All person or entities who did not receive actual notice before their property was taken by the State of Colorado between May 27, 2016 and the present." Doc. 1, ¶¶ 55-56. They estimate that the proposed class will consist of "over 1.6 million people" who "are dispersed throughout Colorado and the world*." Id.*, ¶ 57. Plaintiffs further appear to assert the rights of others not before this Court where they allege that the Department uses RUUPA's "enforcement provisions . . . to unlawfully . . . coerce financial institutions, businesses, and nonprofits to surrender Plaintiffs' and putative class members' private property to [the Department]." *Id.*, ¶ 26. Finally, Plaintiffs accuse Defendants of "collu[ding]" with other parties who are not before this Court—

namely, certain holders—to violate their rights under state and federal law. *See id.*, ¶¶ 33(c), 66(b).

## ARGUMENT

### I.    Standards of review.

*Rule 12(b)(1).* Dismissal under Rule 12(b)(1) is not a judgment on the merits, but instead is a determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). If a court lacks jurisdiction, it "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). The former are "determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). In the latter, a court need not presume the truthfulness of the allegations but rather may consider affidavits, hearing testimony, and other materials, *see Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001), and doing so does not convert a motion to dismiss to one for summary judgment. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). A plaintiff bears the burden of establishing subject matter jurisdiction. *Basso*, 495 F.2d at 909.

A motion to dismiss for lack of standing challenges the court's subject matter jurisdiction under Rule 12(b)(1), *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225 (10th Cir. 2012), as does a motion to dismiss based on qualified or Eleventh Amendment sovereign

immunity. *See Meyers v. Colo. Dep't of Human Servs.*, 62 F. App'x 831, 832 (10th Cir. 2003) (unpublished). And a "part[y] may raise abstention arguments under Rule 12(b)(1)." *Konopasek v. Ozark Kenworth, Inc.*, No. CV 17-2681-KHV, 2018 WL 1744520, at *3 (D. Kan. Apr. 11, 2018) (citing *Hill v. Whetsel*, No. Civ.-07-69-C, 2007 WL 963216, at *1 n.1, (W.D. Okla. Mar. 28, 2007); *Beres v. Huntley, Illinois*, 824 F. Supp. 763, 766 (N.D. Ill. 1992) (Rule 12(b)(1) is the "appropriate method" for raising issue of abstention); Charles Alan Wright & Arthur R. Miller, 5B Federal Practice And Procedure § 1350 (3d ed. 2017) ("Rule 12(b)(1) is flexible")).

***Rule 12(b)(6).*** Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "The question is whether, if the allegations are true, it is plausible and not merely possible that plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "While courts must accept well-pleaded factual allegations as true, purely conclusory statements are not entitled to this presumption." *WildEarth Guardians v. Extraction Oil & Gas, Inc.*, 457 F. Supp. 3d 936, 945 (D. Colo. 2020); *see also Martin v. Henderson*, No. 09-CV-02574-MSK-CBS, 2011 WL 864293, at *3 (D. Colo. Mar. 10, 2011), *aff'd sub nom. Martin v. Hilkey*, 460 F. App'x 760 (10th Cir. 2012) (*Iqbal* and *Twombly* "make clear that it is facts, not conclusions, that must be pled; 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including 'legal conclusion[s] couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)).

II.     **The Court lacks or should decline to exercise subject matter jurisdiction over Plaintiffs' claims under Rule 12(b)(1).**

A.     **Plaintiffs lack standing to maintain any of their claims.**

To have standing, a plaintiff must allege (1) an injury in fact to his legally protected interest, (2) causation between the injury and the defendant's conduct, and (3) a likelihood that a favorable decision will redress the injury. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The alleged injury must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.*, at 560 (quotations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). To establish causation, the "injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.'" *Id.*, at 560-61 (omissions and alterations in original) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). And to be redressable, "it must be 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Id.*, at 561 (quoting *id.*, at 38).

Furthermore, "a plaintiff must demonstrate standing separately for each form of relief," *Friends of the Earth, Inc. v. Laidlaw Environmental Serv's, Inc.* 528 U.S. 167, 185 (2000) (citations omitted), because "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358, n.6 (1996). A plaintiff's "standing for retrospective relief may be based on past injuries, whereas … claims for prospective relief require a continuing injury." *PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002); *see also Lyons*, 461 U.S. at 109–10 (recognizing a plaintiff's standing to seek damages but not injunctive relief). To obtain prospective relief, a plaintiff must show a credible threat of future harm. *See Ward v. Utah*, 321 F.3d 1263, 1267–69 (10th Cir. 2003). "[W]hile a plaintiff who has been

constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).

It is well-established that the named plaintiffs of a class must each have individual standing and cannot rely on potential class members' injuries to satisfy their burden. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Bellweather Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) ("[T]he named plaintiffs must allege an actual injury, not an 'injury that has been suffered by other unidentified members of the class.'") (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016)). A federal court "plaintiff cannot 'proceed as a private attorney general seeking to enforce … statutes on behalf of the general public.'" *Buscema v. Wal-Mart Stores E. LP*, 485 F. Supp. 3d 1319, 1329, 1331 (D.N.M. 2020) (quoting *Nike, Inc. v. Kasky*, 539 U.S. 654, 661 (2003) (Stevens, J., concurring)).

Here, Plaintiffs lack standing to maintain their Section 1983 claims for five reasons. *First*, their claims of injuries stemming from Defendants' past seizure of their property without notice or just compensation are purely conjectural because neither alleged that he has submitted an administrative claim to recover the property identified in the Complaint [Doc. 1, ¶¶ 8, 10], much less that such a claim has been approved by Defendants thereby establishing that he is, in fact, the actual owner. Nor could Plaintiffs make such allegations because, in fact, no administrative claims have been submitted to date for the properties identified in the Complaint. *See* Exhibit 1 – Declaration of Director Gardelli, ¶¶ 14, 17. Plaintiffs simply cannot allege as a

matter of fact, as opposed to conjecture or hypothesis, that they are the rightful owners of the property identified in the Complaint and therefore their alleged injuries were not "actual" on or any time after the date on which they filed the Complaint. *Lujan*, 504 U.S. at 560.

*Second*, for the same reasons that Plaintiffs have failed to allege an actual injury in fact, they also failed to allege that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38). Assuming for the sake of argument that the Court were to sustain the merits of their Section 1983 claims for monetary relief, its ability to order Defendants to pay them just compensation or damages would necessarily be dependent on the Court finding that each of them is the rightful owner of the property identified in the Complaint [Doc. 1, ¶¶ 8, 10]. But in the absence of approved administrative claims having established their actual ownership of the property at the outset of this litigation, the Court's ability to redress their alleged injuries in the later damages phase is wholly "speculative" at best. *Id.*

*Third*, Plaintiffs have not alleged injuries to *their* legally protected interests stemming from Defendants' allegedly improper seizure, sale, or destruction of the contents of safe-deposit box contents and securities/investment vehicles, failure to pay dividends or interest on seized property, and sale of certain seized property. *See* Doc. 1, ¶¶ 33(e), 66(c), 71, 83. Indeed, the Complaint failed to allege that either, much less both, of the properties identified in Paragraphs 8 and 10 was stored in a safe-deposit box, was dividend-paying or interest-bearing, or was the type of property that Defendants had to sell to obtain a cash value. *See id.*, ¶¶ 7-10. Nor could Plaintiffs make such allegations because, in fact, the properties identified in the Complaint are not any of those types of property. *See* Exhibit 1 – Declaration of Director Gardelli, ¶¶ 13, 16. In the absence of such allegations on behalf of each of them, individually, Plaintiffs have failed to

allege an injury to *their* legally protected interests. *Lujan*, 504 U.S. at 560. And it is well-settled Plaintiffs cannot rely on potential class members' alleged injuries to satisfy their burden to establish standing, nor can they maintain their claims as "'private attorney[s] general'" despite their assertion otherwise in the Complaint [Doc. 1, p. 32, ¶ 12]. *See Warth*, 422 U.S. at 502, *Buscema*, 485 F. Supp. 3d at 1329, 1331 (quoting *Kasky*, 539 U.S. at 661). Finally, "[a] well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others," *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009), so Plaintiffs cannot maintain a claim that Defendants "coerce financial institutions, businesses, and nonprofits to surrender Plaintiffs' and putative class members' private property to [the Department]" because such entities are not before this Court. [Doc. 1, ¶ 26].

*Fourth*, Plaintiffs lack standing to maintain their claims for damages to the extent that they are premised on alleged injuries caused by "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (quoting *Simon*, 426 U.S. at 41-42). For instance, under Plaintiffs' theories of what constitutes a taking without just compensation or a procedural due process violation, the holders who allegedly reported and transferred the property identified in the Complaint to the Department without first providing "any notice" to them directly, caused their alleged injuries [Doc. 1, ¶¶ 7, 9], yet neither holder is named as a defendant in the Complaint. Similarly, Plaintiffs accuse Defendants of "collud[ing]" with certain holders to allow them to improperly "retain property, funds, and gain interest that rightfully belong to the citizens of Colorado" [Doc. 1, ¶¶ 33(c), 66(b)], yet no holders are before the Court in this action. As a result, Plaintiffs' standing to maintain these aspects of their claims fails for lack of causation.

And *fifth*, Plaintiffs further lack standing to maintain their Section 1983 claims for injunctive relief because they failed to allege a "continuing injury," *PeTA*, 298 F.3d at 1202, or

"credible threat of future harm," *Ward*, 321 F.3d at 1267–69, that requires relief beyond an award of just compensation or damages. To "demonstrate a good chance of being likewise injured in the future," Plaintiffs each were required to allege that they are likely to have additional unclaimed property that will be seized by Defendants in the future without just compensation or adequate notice. *Facio*, 929 F.2d at 544; *see also Lyons*, 461 U.S. at 109–10. The Complaint [Doc. 1] failed to do so and, in the absence of such allegations, Plaintiffs are trying to obtain prospective relief based solely on allegations that Defendants' past conduct harmed them, which is insufficient to establish standing. Similarly, Plaintiffs cannot obtain any equitable relief related to either UPA's provisions or Defendants' past administration of them because their repeal effective July 1, 2020 means there is no longer a "live controversy" for this Court to decide. *See Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc*., 404 U.S. 412, 414-15 (1972) (refusing to award declaratory relief concerning repealed statute); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (same for an expired statute).

**B.    The Court should decline to exercise jurisdiction over Plaintiffs' § 1983 claims for equitable relief under the *Burford* abstention doctrine.**

If this Court determines that Plaintiffs have standing to maintain their § 1983 claims, Plaintiffs' claims for declaratory and injunctive relief should be dismissed under the *Burford* abstention doctrine. Abstention under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), is appropriate when a federal district court faces issues that involve complicated state regulatory schemes. *See Wildgrass Oil and Gas Committee v. Colorado*, 843 Fed.Appx. 120, 121-23 (10th Cir. 2021) (unpublished) (affirming trial court's decision to abstain from considering plaintiff's challenge to a state commission's proceeding granting a third-party's application to pool mineral interests owned by plaintiff's members for the purpose of extraction). In *Burford*, the Supreme Court considered a federal challenge to the Texas Railroad Commission's decision to permit the

drilling of oil wells. 319 U.S. at 316-17. Ultimately, the Supreme Court found that the district court should have declined to exercise jurisdiction as "sound respect for the independence of state action requires the federal equity court to stay its hand" where "the state provides for a unified method for the … determination of cases" by a state agency and by state courts, and where judicial review of the agency's actions by state courts was "expeditious and adequate." *Burford*, 319 U.S. at 333-34.

Like the regulatory scheme in *Burford*, RUUPA is a comprehensive and complex regulatory scheme that creates uniform procedures under which Defendants administer unclaimed property that is deemed abandoned by operation of law and transferred to their custody, including the determination of any administrative claims to collect such property that, if denied or deemed denied, may be challenged by filing a civil action in Colorado courts, whose decisions in turn are reviewable by the U.S. Supreme Court. *See* §§ 38-13-903, 904, 906; *see also* 28 U.S.C. § 1257(a). And while the Complaint is replete with conclusory statements that Plaintiffs' alleged injuries stem from Defendants' wrongdoing in the exercise of their discretion about how best to interpret and implement RUUPA[5], Plaintiffs' Section 1983 claims for equitable relief are aimed at facially invalidating many self-executing RUUPA provisions that Defendants have no discretion to deviate from or modify.[6]

---

[5] *See*, *e.g.*, Doc. 1, ¶ 27 (complaining that "Defendants failed to exercise due care, acted intentionally and with reckless disregard, acted arbitrarily and capriciously, and *ultra vires* of their statutory authority").

[6] *See*, *e.g.*, Doc. 1, ¶ 18 (complaining that RUUPA shortened the period for the presumption of abandonment from five years to three years for most property types" (citing § 38-13-201)), ¶ 23 (complaining that a "2021 Amendment [to RUUPA] repealed the requirement that the administrator's records of persons, which includes the apparent owner's name and last known addresses, be available for inspection" (citing § 38-13-801)), ¶ 24 (complaining that a "2021 Amendment [to RUUPA] repealed the administrator's authority to identify the physical address of an apparent owner in published notices and on its website" (citing § 38-13-1403)), ¶ 27

But such self-executing provisions constitute the General Assembly's independent policy choices about how unclaimed property should be regulated in Colorado that are entitled to "respect" under *Burford*. 319 U.S. at 333-34. In the absence of a claim here that one or more of these choices is preempted by federal law, *see Am. Petrofina Co. of Texas v. Nance*, 859 F.2d 840, 841-42 (10th Cir. 1988) (affirming trial court's refusal to abstain in Supremacy Clause challenge to certain provisions of Oklahoma's unclaimed property law on the grounds that they were preempted by federal common law), abstention is warranted because "'[c]ourts of equity should 'avoid needless obstruction of the domestic policy of the states.'" *Id.*, at 842 (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 219 U.S. 293, 298 (1943)). This Court should therefore abstain from exercising jurisdiction over Plaintiffs' Section 1983 claims for equitable relief.

### C.     Qualified immunity shields Defendants from Plaintiffs' Section 1983 claims for money damages.

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.* To defeat a claim of qualified immunity, a plaintiff must demonstrate: (1) that the facts alleged establish the violation of a constitutional right; and (2) that the right at issue was "clearly established" at the time of the

---

(complaining that "RUUPA does not require COT to provide any notice to property owners before property transfers from the Holders to COT" and instead only requires the Department to "'[s]end notice to the apparent owner's electronic-mail address if the administrator has an electronic-mail address that the administrator does not know to be valid'" and "'[m]aintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator,' after the property has already transferred to the COT" (quoting § 38-13-502)); ¶ 31 (complaining that unclaimed property is "wrongfully commingle[d] … with the State's General Revenue Fund" and "appropriated by the State for various spending initiatives" (citing §§ 38-13-801 & -801.5).

defendant's alleged misconduct. *White v. Pauly*, 137 S. Ct. 548, 552 (2017); *see also Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). A court may review either prong first and need only find one prong unsubstantiated to hold that qualified immunity bars a plaintiff's claims. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Pearson v. Callahan,* 555 U.S. 223 (2009). Because Plaintiffs here cannot demonstrate either prong, Defendants are  immune from their individual capacity damages claims.

> **1.      Plaintiffs failed to allege plausible claims that Defendants violated their federal constitutional rights.**

Plaintiffs claim that Colorado's unclaimed property laws, and/or Defendants' administration of those laws, constitute a taking of private property without just compensation in violation of the Fifth Amendment and violate their procedural due process rights under the Fourteenth Amendment, their rights under the Contract Clause of Article I, § 10 of the U.S. Constitution, and their privacy rights under the Fourth Amendment. *See* Doc. 1, ¶¶ 3, 5, 27, 29, 36, 66(c). Defendants address each claim in that same order and respectfully ask the Court to keep in mind two well-established principles when deciding whether they fail as a matter of law: *First*, federal courts "must presume that a state statute is constitutional." *Eaton v. Jarvis Prods. Corp.*, 965 F.2d 922, 929 (10th Cir. 1992). *Second*, "States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly (though somewhat erroneously) called escheat." *Delaware v. New York*, 507 U.S. 490, 497 (1993) (footnote omitted); *see also Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 241 (1944) (noting that "it is within the constitutional power of the state to protect the interests of depositors from the risks which attend long neglected accounts, by taking them into custody when they have been inactive so long as to be presumptively abandoned" (citation omitted)); *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012) (noting that "[a]ll fifty

states, and the District of Columbia, have a set of unclaimed property laws (often called escheat laws)").

Under RUUPA, certain unclaimed property is deemed abandoned by operation of law after a specified dormancy period and must be reported and transferred to the Department by the holder. *See* §§ 38-13-201 to -220; §§ 38-13-401 to -405. The same was true under UPA, which was in effect through June 30, 2020. *See* §§ 38-13-103 & -110 (attached as Exhibits 2 and 3). Under RUUPA and UPA, holders are and were required to give advance notice to owners *before* reporting and transferring their property to the Department. *See* § 38-13-501 (between 60 and 180 days beforehand under RUUPA); § 38-13-110(5) (within 120 days beforehand under UPA; *see* Exhibit 3). The administrator also is and was required to give certain types of notice to owners *after* receiving property from holders under RUUPA and UPA. *See* § 38-13-503 (RUUPA); § 38-13-111 (UPA, attached as Exhibit 4). And under RUUPA and UPA, the administrator is and was required to "maintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator." § 38-13-503(3) (RUUPA); § 38-13-111(1) (UPA; *see* Exhibit 4).

Upon receipt and assuming that the unclaimed property is cash, Defendants credit the value of the property to the unclaimed property trust fund created by § 38-13-801 under the name of the apparent owner if reported by the holder. *See* § 38-13-801(4) (RUUPA); *see also* §§ 38-13-116.5(1)(a) & (3) (same under UPA, attached as Exhibit 5). Once credited to the trust fund, such property "does not revert to the general fund at the end of any fiscal year," §§ 38-13-801(1)(d) (RUUPA) & § 38-13-116.5(1)(d) (same under UPA, *see* Exhibit 5), and "is held in custody for the benefit of the owner and is not owned by the state." § 38-13-803 (RUUPA); § 38-

13-113(1)(a) (similar under UPA, attached as Exhibit 6). "A person claiming to be the owner of property held by the administrator under [RUUPA] may file a claim for the property on a form prescribed by the administrator," §§ 38-13-903(1) (RUUPA) & § 38-13-117(1) (same under UPA, attached as Exhibit 7), which must be "allow[ed] or den[ied]" by the administrator within 90 days after submission, and—if denied or deemed denied due to inaction by the administrator after 90 days—"the claimant may commence an action against the administrator in the district court for the city and county of Denver to establish a claim[.]" §§ 38-13-904 & -906 (RUUPA); *see also* §§ 38-13-117(2) (similar under UPA; *see* Exhibit 7) & -119 (similar under UPA, attached as Exhibit 8).

*Takings.* Plaintiffs claim that these provisions of RUUPA and its predecessor UPA constitute a taking without just compensation in violation of the Fifth Amendment and seek retrospective and prospective relief from this Court under Section 1983. *See* Doc. 1, ¶¶ 66(c) & (e), 75-80. At the outset, the latter aspect of their takings claim fails as a matter of law because it is beyond well-settled that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984). Indeed, the U.S. Supreme Court just recently reiterated that a takings claim cannot support a request for injunctive relief. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019) ("As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."). This is because the Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 315 (1987). Accordingly, Plaintiffs fail to state a cognizable takings claim for equitable relief against

Defendants in their official capacities.

With respect to their takings claim for monetary relief against Defendants in their individual capacities, it is foreclosed by the U.S. Supreme Court's decision in a highly analogous case. Forty years ago, in *Texaco, Inc. v. Short*, 454 U.S. 516, 518, n.1, 522, n.11 (1982), the Supreme Court considered whether the Indiana Dormant Mineral Interests Act, "more commonly known as the Mineral Lapse Act," constituted a taking without just compensation in violation of the Fifth Amendment because it "provid[ed] that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office." In doing so, the Court first reviewed a lengthy list of precedents "[f]rom an early time" in which it had "recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time," and ultimately "upheld the power of the State to condition the retention of a property right upon the performance of an act within a limited period of time" even where, "as a result of the failure of the property owner to perform the statutory condition, an interest in fee was deemed as a matter of law to be abandoned and to lapse." *Id.*, at 526-29. It next turned to the takings claim and flatly rejected it as a matter of law, stating:

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking."

*Id.*, at 530; *cf. Luckett*, 321 U.S. at 251-52 (rejecting procedural due process challenge to Kentucky statute that allowed the state to take custody of abandoned bank deposits because there was no deprivation of property).

The Supreme Court's holding in *Texaco* is all the more notable because the Mineral Lapse Act forever extinguished the mineral rights owner's property interest, yet the Court still held that Indiana's statute did not effectuate a "taking." *Id.* In contrast, RUUPA and UPA are custodial acts, meaning that unclaimed property never escheats to the State of Colorado and the rightful owner may submit an administrative claim to recover the property at any time. *See* §§ 38-13-801(1)(d) (RUUPA) & 38-13-116.5(1)(a) & (3) (UPA, *see* Exhibit 5); *see also* §§ 38-13-803 (RUUPA) & 38-13-113(1)(a) (UPA, *see* Exhibit 6). As in *Texaco*, Plaintiffs here fail to state a takings claim for retrospective relief against Defendants in their individual capacities.

***Due Process.*** Plaintiffs also claim that the above-described provisions of RUUPA and its predecessor UPA, as well as Defendants' alleged omissions in administering the same, deprived them of their unclaimed property without adequate notice in violation of their procedural due process rights under the Fourteenth Amendment. *See* Doc. 1, ¶¶ 66(c), 68-74. But under Tenth Circuit precedent, they are foreclosed from maintaining a procedural due process claim separate and apart from their Takings claim. *See Rocky Mountain Materials & Asphalt, Inc. v. Bd. of Cnty. Comm'rs of El Paso Cnty.*, 972 F.2d 309, 311 (10th Cir. 1992) ("When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim."); *Miller v. Campbell Cty.*, 945 F.2d 348, 352 (10th Cir. 1991) (holding that the more generalized Fourteenth Amendment due process protections should be subsumed "within the more particularized protections of the [Takings]

Clause." (footnote omitted)). Under these precedents, Plaintiffs' procedural due process claim is not cognizable as a matter of law because it is coextensive with their Takings claim.

But even if the Court concludes that Plaintiffs' due process claim is cognizable, it still fails as a matter of law because RUUPA and UPA are published statutes applicable to unclaimed property across the entire State and thus are legislative in nature, not adjudicatory. As a result, they "do not give rise to constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994); *accord United States v. Florida East Coast Ry.*, 410 U.S. 224, 246 (1973) (determining that no due process right to hearing was triggered by agency action where it was applicable "across the board to all common carriers" and "no effort was made to single out any particular railroad for special consideration").

Indeed, U.S. Supreme Court precedent establishes that published legislative enactments constitute adequate notice for purposes of the procedural due process clause of the Fourteenth Amendment. *See Texaco*, 454 U.S. at 531-32 ("Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply. … It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." (footnote omitted)); *Luckett*, 321 U.S. at 243 (holding that "[the statute itself is notice" and "[a]ll persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes." (citations omitted)). The Court's precedents further establish that a statute providing for notice to unclaimed property owners via publicly available postings, coupled with the state's action in taking custody of unclaimed

property, constitute adequate notice for purposes of due process. *See Luckett*, 321 U.S. at 243 (holding that existence of Kentucky unclaimed property statute, plus its requirement that "the sheriff post on the court house door or bulletin board a copy of the bank's report of deposits presumed abandoned," and "the taking of possession of the bank balances by the state," constitute "sufficient notice to the depositors to satisfy all requirements of due process").

Here, the existence of RUUPA and UPA put Plaintiffs on notice that, if they failed to claim the property they allegedly own from the holder over a specified dormancy period, then it would be presumed abandoned by operation of law and transferred to the administrator to hold in custody for their benefit. *See* §§ 38-13-201 to -220 (RUUPA); §§ 38-13-401 to -405 (RUUPA); §§ 38-13-103 & -110 (UPA, *see* Exhibits 2 and 3). Both RUUPA and UPA provide further notice to unclaimed property owners by requiring the administrator to post certain information about such property on a publicly available website, which is the modern-day equivalent of tacking a public notice on a courthouse door or bulletin board. *See* § 38-13-503(3) (RUUPA); § 38-13-111(1) (UPA, *see* Exhibit 4). Indeed, the Complaint admits that Plaintiffs were able to look up information about the unclaimed property that each believes he owns on the Department's publicly available website, and does not allege that the administrator at any time failed to maintain such a website as required by RUUPA and UPA. *See* Doc. 1, ¶¶ 7-10. Simply put, Plaintiffs are presumed to know the law affecting the property they allegedly own and the General Assembly's enactment and publication of RUUPA and UPA, coupled with the actual notice provided through the Department's publicly available website, therefore satisfied the due process clause's notice requirement.

***Contracts Clause.*** The Complaint contains several conclusory statements that Defendants violated Plaintiffs' rights under the Contracts Clause of Article I, § 10 of the U.S. Constitution,

*see* Doc. 1, ¶¶ 3, 5, 27, 29, 36, but otherwise failed to either plead any plausible facts in support of those statements or even assert a separate claim for relief based on the Contracts Clause. Although Rule 8(a) does not require detailed factual allegations, it does require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly,* 550 U.S. at 554). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *id.*, at 557). Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*, at 678-79. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*, at 679 (quoting Fed.R.Civ.P. 8(a)(2). Plaintiffs have therefore failed to adequately plead a plausible Contracts Clause claim, especially given that they are represented by counsel who claim to be "highly experienced in complex, class action litigation." Doc. 1, ¶ 60.

But if this Court concludes otherwise, Plaintiffs' Contracts Clause claim still fails as a matter of law because the U.S. Supreme Court has held that abandoned or unclaimed property laws similar to RUUPA and UPA do not violate the Contracts Clause. *See*, *e.g.*, *Conn. Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 546-47 (1948) (rejecting Contracts Clause and due process challenges to New York statute that allowed the state to "seize abandoned life insurance moneys" because "[t]he state is acting as a conservator, not as a party to a contract." (citation omitted)); *Texaco*, 454 U.S. at 531 (rejecting claim that Mineral Lapse Act violated the Contracts Clause). Indeed, in *Moore*, the Court stated: "There is no possible injury to any beneficiary [of the "seized abandoned life insurance moneys"]. The right of appropriation by the state of

23

abandoned property has existed for centuries in the common law. We find no reason for invalidating the statutory plan under the Contracts Clause." 333 U.S. at 547-48 (internal citation omitted). RUUPA and UPA therefore do not violate the Contracts Clause.

>    ***Privacy.*** The Complaint also contains several conclusory statements that Defendants violated Plaintiffs' rights to privacy under the Fourth Amendment, *see* Doc. 1, ¶¶ 3, 5, 27, 29, 33(e), 36, 58, 66(c), but otherwise failed to either plead any plausible facts in support of those statements or even assert a separate claim for relief based on the Fourth Amendment. Also, as explained above in Section II.A., Plaintiffs' Fourth Amendment claim is centered on the alleged seizure of tangible property stored in safe-deposit boxes, but the Complaint failed to allege that either or both Plaintiffs own such property, much less that it was seized by Defendants under RUUPA or UPA. Accordingly, for the same reasons set forth above in support of why Plaintiffs have failed to adequately plead a plausible Contracts Clause claim under Rule 8(a), *Iqbal*, and *Twombly*, they likewise have failed to adequately plead a plausible Fourth Amendment claim.

>    But if this Court concludes otherwise, Plaintiffs' Fourth Amendment claim still fails as a matter of law because while "[t]he Fourth Amendment 'protects people from unreasonable government intrusions into their legitimate expectations of privacy,'" *United States v. Place*, 462 U.S. 696, 706-07 (1983) (quoting *United States v. Chadwick*, 433 U.S. 1, 7 (1977)), it is well-settled that "[a] warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment." *United States v. Hernandez*, 7 F.3d 944, 947 (10th Cir. 1993); *see also United States v. Sanchez*, 13 F.4th 1063, 1073 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 842 (2022) ("The Fourth Amendment permits warrantless searches and seizures of abandoned property." (citation omitted)). "An abandonment must be voluntary," and "'the test for abandonment is whether an individual has retained any reasonable expectation of privacy in the

object.'" *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) (quoting *United States v. Jones*, 704 F.2d 1169, 1172 (10th Cir. 1983), *cert. denied*, 464 U.S. 859 (1983)). Here, unclaimed property is deemed abandoned by operation of Colorado law and transferred to the administrator to hold in custody for the benefit of the rightful owner, *see* §§ 38-13-201 to -220 (RUUPA); §§ 38-13-401 to -405 (RUUPA); §§ 38-13-103 & -110 (UPA, *see* Exhibits 2 and 3). And such abandonment is voluntary because "[i]t is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Texaco*, 454 U.S. at 532 (footnote omitted)). As a result, neither RUUPA or UPA, nor Defendants' administration of the same, violate Plaintiffs' privacy rights under the Fourth Amendment.

> **2.    Plaintiffs cannot point to any clearly established law in support of their constitutional claims.**

The existence of a general constitutional right is not enough to demonstrate a law is clearly established. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999). "In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Gutierrez v. Cobos*, 841 F.3d 895, 890 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted).

Here, neither the U.S. Supreme Court, the Tenth Circuit, nor any other circuit court has held that a state official or employee violates a federally secured right by continuing to enforce

self-executing provisions of valid state statutes, like RUUPA and UPA[7], that must be presumed constitutional and have never been declared unconstitutional. *See Eaton*, 965 F.2d at 929. Absent such binding precedent, Treasurer Young and Director Gardelli are entitled to qualified immunity from Plaintiffs' federal question claims for damages. There likewise is no Supreme Court, Tenth Circuit, or clearly established weight of authority from other circuits holding that a state official or employee exercising his or her discretionary authority violates the constitutional rights of an individual unclaimed property owner by allegedly commingling unclaimed property monies with a state's general fund monies, mismanaging unclaimed property, requiring proof of ownership from administrative claimants, or limiting notice of the existence of the unclaimed property to a listing on a state agency's publicly available website. Therefore, Defendants are entitled to qualified immunity on Plaintiffs' federal constitutional claims.

### D.      Eleventh Amendment sovereign immunity bars Plaintiffs' state law claims.

Plaintiffs also seek to maintain several state law claims, including that Defendants allegedly committed *ultra vires* acts and breaches of fiduciary duty in violation of their duties under RUUPA and UPA, and violated the due process clause of COLO. CONST. art. II, § 25. *See* Doc. 1, ¶¶ 25, 33(c – e), 37, 58, 67. They seek declaratory relief, an injunction prohibiting Defendants from continuing to commit such violations, an accounting, and an award of restitution, disgorgement, interest, and/or damages for Defendants' past violations of state law. *See id.*, p. 29-32, ¶¶ 2(a – c, e), (3), 8(a – d, g – h), 9. The Complaint is silent as to the basis for this Court's jurisdiction over these state law claims, but it is likely Plaintiffs will ask this Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). In a nutshell, Plaintiffs ask this Court to declare that Defendants have violated and are continuing to violate state law, order

---

[7] *See* footnote 6 above.

Defendants to follow state law going forward, order Defendants to provide an accounting, pay restitution, disgorge property or its reasonable value, and award them damages for Defendants' alleged past violations of state law.

However, it is well-settled that "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law" and is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also* U.S. CONST. Amend. XI. And "[b]ecause the State's assertion of Eleventh Amendment immunity challenges the subject matter of the district court, the issue must be resolved before a court may address the merits of the underlying claim." *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002). Accordingly, all of Plaintiffs' state law claims for any type of relief should be dismissed at the outset of this litigation.

### E.    Plaintiffs' state law claims for damages are barred under Colorado law.

#### 1.    The Colorado Governmental Immunity Act bars Plaintiffs' state law claim for monetary relief.

If the Court determines that Eleventh Amendment immunity does not apply and exercises supplemental jurisdiction over the state law claims for damages, it must first determine whether those claims are permitted under the Colorado Governmental Immunity Act ("CGIA"). § 24-10-118(2)(a). The CGIA defines Colorado's sovereign immunity and preserves the State's and State officials' and employees' immunity for claims sounding in tort unless they: (1) fall within one of the areas in which immunity is specifically waived; or (2) arise out of willful and wanton conduct by an individual State official or employee. § 24-10-106(1), C.R.S.; *Martinez v. Estate of Bleck*, 379 P.3d 315, 322 (Colo. 2016).

Whether a government official or employee is immune from suit under the CGIA presents a jurisdictional question properly resolved under C.R.C.P. 12(b)(1). § 24-10-118(2)(a); *Martinez*, 379 P.3d at 322; *see also City & Cty. of Denver v. Dennis*, 418 P.3d 489, 494 (Colo. 2018). A plaintiff who asserts a tort claim against a state employee under the CGIA must prove adequate threshold facts to establish subject matter jurisdiction. *Cikraji v. Snowberger*, 410 P.3d 573, 577 (Colo. App. 2015). If a plaintiff's complaint fails to allege sufficient facts to show jurisdiction, or there is no evidentiary dispute about the facts relevant to governmental immunity, the trial court may rule on the pleadings alone without a hearing. *Finnie v. Jefferson Cty. Sch. Dist. R-1,* 79 P.3d 1253, 1260 (Colo. 2003).

The CGIA applies to all claims that sound in tort or could sound in tort, regardless of the form of the complaint. State officials and employees are immune from tort suits except under limited circumstances—namely, when the State has explicitly waived sovereign immunity. § 24-10-106(1). The Department is a state agency created by Article IV, Sections 1 and 3 of the Colorado Constitution, and Section 24-1-112. Treasurer Young and Director Gardelli are public employees within the meaning of the CGIA. *See* § 24-10-103(4)(a).

Plaintiffs' claim for breach of fiduciary duty lies in tort. *Accident and Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658 (Colo. 2012) ("The breach of fiduciary duty cause of action is a tort to remedy economic harm suffered by one party due to a breach of duties owed in a fiduciary relationship."); *Casey v. Colorado Higher Education Insurance Benefits Alliance Trust*, 310 P.3d 196, 20 (Colo. App. 2012) (CGIA barred claim for breach of fiduciary duty where the only source of the duty would be under the common law). And although Colorado law does not appear to recognize the intentional tort of *ultra vires* acts in violation of a state official's or employee's duties under state statutes, such an action could lie in tort based on the law of

other states that have considered and rejected such claims against municipalities. *See* 63 C.J.S. Municipal Corporations § 881 ("*Ultra vires* acts are those performed with no legal authority and are characterized as void on the basis that no power to act existed even where proper procedural requirements are followed. It has been even held that, where a municipality, in attempting to carry out one of its authorized functions, exceeds its statutory authority, it is not liable for resulting injuries. Furthermore, the omission of an act is generally not sufficient to elevate even intentional omissions of a duty, that is, negligence, to the level of an *ultra vires* intentional tort for which there is no governmental immunity." (footnotes omitted)). Therefore, these claims are subject to the CGIA, are ones for which immunity has not been waived, and therefore are barred by the CGIA.

Finally, even if immunity had been waived for Plaintiffs' state law claims, the CGIA requires any person who claims to have suffered an injury caused by a public entity or its employee to provide written notice to the Colorado Attorney General of his claims within 182 days of discovering the alleged injury. §§ 24-10-109(1), (3)(a), (6). Compliance with the notice requirement is a jurisdictional prerequisite to filing suit, and failure to timely provide the notice before filing suit deprives the court of subject matter jurisdiction and forever bars any claim based on that alleged injury. *Id.*; *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 393 (Colo. 2002).

The Complaint does not allege that Plaintiffs ever provided the notice required by §§ 24-10-109(1), (3)(a), (6) before filing their state law claims in this Court. Nor could it have because, in fact, they did not. *See* Exhibit 9 – Declaration of the Attorney General's Administrator for Notices of Claim. As detailed in Exhibit 9, the Attorney General has never received the notice required by § 24-10-109 from either Plaintiff. Their failure to comply with the CGIA's express

notice requirement deprives this Court of subject matter jurisdiction and mandates dismissal of their state law claims that lie or could lie in tort. *See East Lakewood Sanitation Dist. v. Dist. Court*, 842 P.2d 233, 236 (Colo. 1992) ("[W]hen a party fails to strictly comply with the 180-day notice requirement, the party's action must be dismissed.")

### 2. Plaintiffs' state law claims are barred by their failure to exhaust administrative remedies.

Plaintiffs' claims are based on the assumption that they own certain property being held by Defendants under RUUPA. *See* Doc. 1, ¶¶ 7-10. But, but as discussed above, Plaintiffs do not allege that they ever asked Defendants to determine that they are the owners of the unclaimed property identified in the Complaint and indeed could not make such an allegation. The absence of any allegation or evidence that either Plaintiff ever sought to recover their alleged unclaimed property and were denied renders their state law claims unripe for review by this Court.

Exhaustion of administrative remedies "serves as a threshold to judicial review that requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court." *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998). Requiring exhaustion conserves judicial resources, allows the agency "to make initial determinations on matters within its expertise and to compile a record that is adequate for judicial review," and further provides the agency with the opportunity to correct any errors, "thus minimizing the risk of judicial intervention in the administrative process and preserving the agency's autonomy." *Id*. The failure to exhaust administrative remedies before filing suit deprives the district court of jurisdiction. *Id*.

As explained in section II.C.1 above, RUUPA provides a comprehensive scheme for regulating unclaimed property in Colorado, including an administrative claims process. Plaintiffs made no attempt to claim the property identified in the Complaint under RUUPA's

administrative claims process, which would have determined whether Plaintiffs are, in fact, the owners as alleged. *See* Doc. 1, ¶¶ 7-10. Plaintiffs' claims depend on a determination that Plaintiffs are, in fact, the owners of the unclaimed property being held by Defendants. If not, they have no basis to allege any injury. And the administrator is statutorily responsible for making such determinations in the first instance following the parameters articulated in RUUPA. While no Colorado court has had occasion to rule on the exclusivity of the RUUPA process for claimants to unclaimed property, courts in other jurisdictions with versions of the uniform act have held that the statutory process is exclusive. *See, e.g., In re Estate of McElveny*, 399 P.3d 919, 923-925 (N.M. 2017) (holding that New Mexico's version of RUUPA provides the exclusive and mandatory process for an estate's claim to unclaimed property absent the applicability of exceptions); *Olsen v. Utah*, 382 P.3d 679, 681 (holding that Utah's unclaimed property act's claims procedure is a creditor's exclusive remedy to obtain a debtor's unclaimed property); *Yergin v. Georgopolis*, 217 SO.3d 155, 157-58 (Fla. App. 2017) (holding that a claimant cannot seek relief in the circuit courts until exhaustion of the statutory procedures).

### III.   Counts II, III, and IV should be dismissed under Rule 12(b)(6) for failure to state a plausible claim as a matter of law.

#### A.  Plaintiffs' section 1983 claims fail as a matter of law.

For the same reasons and based on the same authorities set forth above in Section II.C.1., Plaintiffs fail to state any plausible claims for violation of their rights under the Contract Clause of Article I, § 10 of the U.S. Constitution, or its Fourth, Fifth, and Fourteenth Amendments. These claims therefore fail as a matter of law and should be dismissed under Rule 12(b)(6).

Plaintiffs' claims against Treasurer Young and Director Gardelli in their individual capacities also fail for lack of allegations of personal involvement by either Defendant. Personal participation is an essential allegation in a Section 1983 claim for damages. *See Bennett v.*

31

*Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). To establish such participation, a plaintiff must allege specific facts showing that the defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's personal conduct. *See Butler v. Cty. of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

But the Complaint here failed to allege that either Treasurer Young or Director Gardelli personally took any of the following actions that Plaintiffs claim actually caused their alleged injuries: (1) shortened the period for the presumption of abandonment from five years to three years for most property types, after which holders must report and transfer such property to the administrator's custody, *see* Doc. 1, ¶ 18 (citing § 38-13-201); (2) repealed the requirement that the administrator's records of persons, which includes the apparent owner's name and last known addresses, be available for inspection, *see id.*, ¶ 23 (citing § 38-13-801); (3) repealed the administrator's authority to identify the physical address of an apparent owner in published notices and on its website, *see id.*, ¶ 24 (citing § 38-13-1403); (4) decided that RUUPA should not require the Department to provide any notice to property owners before unclaimed property is transferred to it from holders, and instead decided that RUUPA should only require the Department to "'[s]end notice to the apparent owner's electronic-mail address if the administrator has an electronic-mail address that the administrator does not know to be valid'" and "'[m]aintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator,' after the property has already transferred to the [Department]," *see id.*, ¶ 27 (quoting § 38-13-502); and (5) decided to "wrongfully commingle" unclaimed property received from holders "with the State's General Revenue Fund" and allowed it to be

"appropriated by the State for various spending initiatives," *see id.*, ¶ 31 (citing §§ 38-13-801 & -801.5). Rather, the Complaint concedes, as it must, that the foregoing allegations concern self-executing provisions of RUUPA that were imposed by the General Assembly and that Defendants have no discretion to deviate from or modify.

Moreover, the fact that Treasurer Young is the elected Colorado State Treasurer and Director Gardelli was appointed by him to oversee the day-to-day implementation and administration of RUUPA, is not enough to assume personal participation by either in the alleged deprivation of Plaintiffs' property interests. *See* Doc. 1, ¶¶ 12-13. State officials or employees who are not personally involved in the alleged constitutional violation may not be held liable under a *respondeat superior* theory merely because they hold positions of authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Therefore, absent specific allegations of misconduct by either Treasurer Young or Director Gardelli, Plaintiffs' Section 1983 claims for damages against them in their individual capacities should be dismissed.

### B. Plaintiffs' section 1983 claims are barred by the statute of limitations.

Colorado applies a two-year statute of limitations to all actions brought against government employees. *See* § 13-80-102(1)(h). The same two-year limitation applies to claims brought under Section 1983. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Lyons v. Kyner*, 367 F.App'x 878, 881 (10th Cir. 2007) (unpublished); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *Arnold v. Duchesne Cty*, 26 F.3d 982, 985 (10th Cir. 1994). Thus, Plaintiffs' claims are time barred if they accrued before June 1, 2020.

Under state law, claims generally accrue "when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence." § 13-80-108(8). Specifically, fiduciary duty claims accrue "on the date

both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13-80-108(1). And claims based on wrongful possession of personal property similarly accrue when the plaintiff "knew or should have known of the at the time the wrongful possession is discovered or should have been discovered by the exercise of reasonable diligence." § 13-80-108(7). Federal law determines when a statute of limitations begins to run for purposes of civil rights claims. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998). The "proper focus is on the time of the . . . act" allegedly committed by Defendants, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original).

The foundational basis of Plaintiffs' claims is that Defendants allegedly improperly seized and are wrongfully possessing their unclaimed property. But as discussed above in Section II.C,1., the Complaint does not allege that Defendants failed to list their alleged property on the Department's website as required by both UPA (in effect until July 1, 2020) and RUUPA. Rather, Plaintiffs admit that they ultimately obtained actual notice through the website hosted by the Defendants, which clearly lists that unclaimed property is being held under their same names. *See* Doc. 1, ¶¶ 7-10. And as a matter of law, Plaintiffs are presumed to know the law affecting the property they allegedly own upon the General Assembly's enactment and publication of RUUPA and UPA, which means that they are presumed to have known that they could have checked the Department's website at any time and periodically thereafter to discover whether Defendants have custody of any unclaimed property that they may own. *See Texaco*, 454 U.S. at 531-32; *Luckett*, 321 U.S. at 243. Plaintiffs therefore cannot establish as a matter of fact or law

that they had no reason to know that Defendants were holding property that could belong to them long before June 1, 2020. Accordingly, their Section 1983 claims are barred by the two-year statute of limitations.

### C. Plaintiffs cannot state a claim for an accounting.

In Count IV of the Complaint, Plaintiffs seek an accounting of the total amount of property allegedly held by Defendants. *See* Doc. 1, ¶¶ 81-84. The Complaint does not cite to or reference any federal or state statute or other legal basis for this claim. *See id.* Under Colorado law, accounting is "an extraordinary equitable remedy that may be ordered if the plaintiff is unable to determine how much, if any, money is due him or her from another." *Estate of Bogue v. Adams*, 405 F.Supp.3d 929, 943 (D. Colo. 2019) (citing *Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435, 440 (Colo. App. 1983). Plaintiffs must plead and prove that they made a demand for accounting in connection with one of their state law claims and that Defendants refused to comply. *Estate of Bogue*, 405 S.Supp.3d at 943 (citing *Postal Instant Press v. Jackson*, 658 F.Supp. 739, 743 (D. Colo. 1987)).

Plaintiffs have not pled that they made a demand to Defendants for any accounting or that they submitted administrative claims to recover the unclaimed property that each believes he owns under the procedures provided by RUUPA or UPA. *See* Doc. 1. Nor do they allege that Defendants refused to provide an accounting or denied any administrative claim under §§ 38-13-903 & -904 (RUUPA) or § 38-13-119 (UPA, *see* Exhibit 8). *See id.* Therefore, Plaintiffs cannot maintain a claim for an accounting under Colorado law.

### CONCLUSION

For the reasons stated above, Plaintiffs' complaint should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under 12(b)(6).

DATED: August 29, 2022.

PHILIP J. WEISER
Attorney General

*s/ LeeAnn Morrill*

LEEANN MORRILL, Reg. No. 38742*
First Assistant Attorney General
Public Officials Unit / State Services Section
AMY C. COLONY, Reg. No. 36124
JENNIFER H. HUNT, Reg No. 29964
Senior Assistant Attorneys General
Tort Litigation Unit / Civil Litigation Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: leeann.morrill@coag.gov
        amy.colony@coag.gov
        jennifer.hunt@coag.gov
*Attorneys for Defendants David Young*
*and Bianca Gardelli*
*Counsel of Record

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with Sections I.D and III.A. of the Honorable Judge Charlotte N. Sweeney's Practice Standards for Civil Cases.

*s/ LeeAnn Morrill*
LeeAnn Morrill

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of this **MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)** to be served upon all counsel of record for the parties to Civil Action No. 1:22-cv-01379-CNS-STV by e-filing with the CM/ECF system maintained by the Court on August 29, 2022.

*s/ LeeAnn Morrill*
LeeAnn Morrill