**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 22-cv-01379-CNS-STV

DAVID KNELLINGER,
ROBERT STOREY,
*Individually And On Behalf Of All Persons Similarly Situated,*

      Plaintiff(s),

v.

DAVID YOUNG,
BIANCA GARDELLI,

      Defendant(s).

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

#### INTRODUCTION

States must "return property when its owners can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires." *See Taylor v. Yee*, 136 S. Ct. 929, 930 (2016) (J. Alito concurring in certiorari denial). This case is about Colorado's failure to employ constitutionally adequate pre-escheat notification procedures. While Defendants confidently proclaim that the Court must dismiss this case, the two federal Courts to most recently weigh in disagree. *See James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. (W.D. Tex. Sept. 6, 2022);[1] *Salvato v. Harris*, No. 21-12706-FLW, 2020 WL 1224962, (D.N.J. Apr. 26).

Defendants do not deny that they took Plaintiffs' private property without providing

---

[1] Attached as exhibit 1.

advanced notice and do not deny that they take the private property of Colorado citizens without notifying the property owners pre-seizure. This private property is then placed into a purportedly separate "trust" fund. Colo. Rev. Stat. § 38-13-301(1). However, the unclaimed property "trust" fund is a trust in name only: the fund is subject to siphoning into the State's General Revenue Fund in multiple ways, including to pay contract auditors to identify more private property as abandoned, transfers of interest to State funds that are subject to appropriation, and multiple multi-million dollar transfers of principal directly into the General Revenue Fund.[2]

Despite these patently unconstitutional practices, Defendants claim that there is no redress for Plaintiffs' Constitutional injuries because Defendants maintain a website where Plaintiffs and the putative class may hypothetically reclaim their property, and because the holders (largely third-party financial institutions) of private property are supposed to notify the rightful owners pre-seizure. But the Constitution requires more. This case is brought to vindicate Plaintiffs' and the putative class's private property rights, and to prevent the State from continuing to unlawfully take and convert private property

---

[2] *See* Colo. Rev. Stat. §§ 38-13-301(2)(b) (providing for continuous appropriations "for the payment of contract auditor services…" ); 38-13-301(2)(b) (2.5) (transferring $1,139,402 from trust fund to the general fund); 38-13-801(3) (transferring principal and interest from the trust fund to the State's adult dental fund); 38-13-801(3.5) (permitting the transfer of $30,000,000 to the State's housing development grant fund if state revenues are less than the transfer cutoff amount); 38-13-801(5) (transferring $43,000,000 from trust fund to the general fund); 38-13-801.5(1) (creating separate unclaimed property tourism trust fund consisting of the proceeds from the sale of securities); 38-13-801.5(3)(a)(I) (transferring twenty-five percent of the interest earned by the unclaimed property tourism trust fund to the Colorado state fair authority cash fund, which is subject to appropriation by the State's general assembly); 38-13-801.5(3)(a)(II) (transferring six percent of the interest earned by the unclaimed property tourism trust fund to the agriculture management fund, which is subject to appropriation by the State's general assembly); 38-13-801.5(3)(a)(III) (transferring ten percent of the interest earned by the unclaimed property tourism trust fund to the Colorado travel and tourism promotion fund, which is subject to appropriation by the State's general assembly).

2

without adequate notice.

**STATEMENT OF FACTS**

**I.     The Comptroller Unlawfully Takes Private Property and Converts the Property for Public Use.**

The Colorado State Auditor conducted a performance audit of Colorado Unclaimed Property Division from January 2018 through July 2019, and reviewed data for the period of July 2014 through March 2019. (Doc. 1, at ¶ 16) The Colorado State Auditor documented their findings in a publicly available report in July 2019. (*Id.*). This report revealed that the Colorado Department of Treasury had not sent the required statutory notices to property owners since March 2005. (*Id.*). The Colorado State Auditor also discovered that Treasury accounting staff were incorrectly recording and maintaining records of the property seized. (*See id.* at ¶ 33(c)). These failures and unlawful practices have continued. (*See* Doc. 1, at ¶¶ 7-10). Colorado knows or should know the identities and addresses of most of the proposed class of Plaintiffs, yet the Colorado Unclaimed Property division repeatedly takes private property, fails to provide notice, and converts that property for public use—either under the exercise and control of Defendants or by their failure to supervise. (*See id.* at ¶¶ 7-10). Despite the statutory requirements in Colo. Rev Stat. § 38-13-503 to provide email notice to Plaintiffs, Plaintiffs have never received email notice from the Administrator regarding their unclaimed property. (*Id.* ¶ 46).

**II.     Plaintiffs' Allegations Arise from Fundamental Due Process.**

Plaintiffs allege systemic and ongoing violations of their fundamental Due Process rights. (*See* Doc. 1). Plaintiffs have Constitutionally-protected property interests in their private property. (Doc. 1, at ¶ 70).

Plaintiffs are all Colorado citizens and residents. One of the Plaintiffs, David

3

Knellinger, has lived in the same residence in Fremont County, Canon City, Colorado for the past nine years. (*Id.* at ¶ 7). Despite this, Mr. Knellinger's private property was seized by Defendants without notice, his knowledge, or consent. (*Id.*). To date, Defendants have provided Mr. Knellinger with no notice – other than a legally inadequate posting on a website – that they have taken custody and control of his personal property. (*Id.*, at ¶¶ 7-8). In further violation of Mr. Knellinger's fundamental due process rights, Defendants have failed to identify the type and value of the property they seized. (*Id.*, at ¶ 8).

Plaintiff Robert Storey has resided in El Paso County, Peyton, Colorado for the past twenty years. *(Id.*, at ¶ 9). Despite this, Mr. Storey's private property was seized by Defendants without notice, his knowledge, or consent. (*Id.*). To date, Defendants have provided Mr. Story with no notice – other than a legally inadequate posting on a website – that they have taken custody and control of his personal property. (*Id.*, at ¶¶ 9-10). In further violation of Mr. Storey's fundamental due process rights, Defendants have failed to identify the  type and value of the property they seized. (*Id.*, at ¶ 10).

ARGUMENT

## I.  The Court has Jurisdiction to Hear Plaintiffs' Constitutional Claims

### A.  Plaintiffs Have Article III Standing to Bring a Claim

Standing exists under Article III of the Constitution when a plaintiff shows: "(1) he or she personally suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be

redressed by a favorable decision." *Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450 (10th Cir. 1994).[3]

### 1.  Plaintiffs Sufficiently Alleged Ownership.

Plaintiffs' complaint sufficiently alleges ownership of their respective property in dispute, and therefore Plaintiffs' claims of injuries are neither purely conjectural nor merely speculative. At this stage in the litigation, Plaintiffs are not required to establish that they are, in fact, the actual owners of the property; instead, allegations of ownership are sufficient. *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1206 (10th Cir. 2001) ("Requiring evidence of ownership, as opposed to allegations of ownership, is antithetical to the standards for reviewing 12(b)(1) motions to dismiss for lack of facial standing.").

Plaintiff David Knellinger alleges that Defendants "seized **his** private property." (Doc. 1, at ¶ 7) (emphasis added). A screenshot, taken from the COT's website, is also alleged as evidence that Plaintiff David Knellinger owns the property in question. (*Id.* at ¶ 8). Similarly, Plaintiff Robert Storey alleged that Defendants "seized **his** private property." (Doc. 1, at ¶ 9) (emphasis added). A screenshot, taken from the COT's website, is also alleged as evidence that Plaintiff Robert Storey owns the property in question. (*Id.* at ¶ 9). These allegations, taken in the light most favorable to Plaintiffs, alone satisfy the necessary burden of *alleging* ownership. It is neither required nor necessary for Plaintiffs to allege submission of an administrative claim to allege ownership, and Defendants cite no authority in support of such a proposition. Plaintiffs are not required to establish ownership with certainty at this stage in the proceedings. Because the allegations in the

---

[3] Unless otherwise noted, internal citations and quotations have been omitted.

complaint sufficiently allege ownership, Plaintiffs injuries are not conjectural and redress by a favorable decision is likely.

### 2. Plaintiffs Sufficiently Alleged Injuries that Give Rise to Each of the Claims Set Forth in Their Complaint.

Plaintiffs sufficiently allege injuries to their legally protected interests that give rise to the claims asserted, irrespective of whether Plaintiffs' properties were dividend-paying, interest bearing, or the type of property Defendants sold to obtain a cash value.

Plaintiffs' alleged injuries give rise to each of the claims in the complaint, regardless of whether their property falls into the specific categories identified by Defendant. Defendants seem to suggest that alleged harm to putative class members can somehow deprive the named Plaintiffs of standing. But no claim in the complaint necessitates an injury to property that is dividend-paying, interest bearing, or sold to obtain cash value. Plaintiff Knellinger alleges Defendants seized his personal property – the type and exact value of which have not been identified by Defendants – without advance notice, and that private property is catalogued by Defendants on their website. (Doc. 1, at ¶¶ 7-8). Plaintiff Storey alleges Defendants seized his personal property – the type and exact value of which have not been identified by Defendants – without advance notice, and that private property is catalogued by Defendants on their website. (*Id.*, at ¶¶ 9-10). Defendants' failure to provide advance notice and due process to Plaintiffs before seizing their private property and divesting their constitutionally protected interests, when taken as true, is a violation of 42 U.S.C. § 1983 (procedural due process) irrespective of the category Plaintiffs' property falls under (Doc. 1, at ¶¶ 68-74). Further, Defendants' practice of seizing Plaintiffs' property without providing just compensation in return, when taken as

true, is a violation of 42 U.S.C. § 1983 (takings clause), irrespective of the category Plaintiffs' property falls under. (*Id.*, at ¶¶ 75-80). To be sure, neither the Due Process Clause nor the Takings Clause delineate or require that a violation only occurs when the property is dividend-paying, interest bearing, or sold to obtain cash value. *See* U.S. Const. amend. XIV, § 1; U.S. Const. amend. V. Therefore, Plaintiffs have standing because they have alleged injuries to their legally protected interests, and those injuries gives rise to each of the claims set forth in their Complaint.

### B.  Holders Do Not Need to be Joined to Satisfy Article III Standing.

Defendants contend that Plaintiffs do not have Article III standing because the holders are not parties to this lawsuit. But Defendants cite no authority that reliance on, or the failure of, third parties to provide notice satisfies their Due Process obligations. *See Jones v. Flowers*, 126 S. Ct. 1708, 1712-14 (2006) (before taking property, the Due Process Clause requires "*the government* to provide the owner notice and opportunity for hearing appropriate to the nature of the case.") (Citation omitted) (emphasis added). Moreover, when the property is turned over to Defendants, they are aware (or should be aware) that notice may not have been successful. This knowledge of insufficient notice requires action by the State. *See M.A.K. Inv. Grp., LLC v. Glendale*, 889 F.3d 1173, 1192 (10th Cir. 2018) (even if others should have been more diligent, that fact "does not excuse the government from complying with its constitutional obligation of notice"). Therefore, Plaintiffs have Article III standing because they have sufficiently alleged the Defendants failed to provide notice, and Defendants' failure to meet their obligation to provide notice caused the injury to Plaintiffs.

7

### C. Plaintiffs Sufficiently Allege Continuing Injury or Credible Threat of Future Harm.

Defendants contend that Plaintiffs do not have Article III standing because Plaintiffs have failed to allege a continuing injury or credible threat of future harm. Two federal courts have recently rejected this argument, and this court should too. These courts found similar allegations were sufficient to assert a continuing injury or credible threat of future harm as is necessary for a claim for injunctive or declaratory relief. *James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *28-29 (W.D. Tex. Sept. 6, 2022); *Salvato v. Harris*, No. 21-12706-FLW, 2020 WL 1224962, at *18 fn. 5 (D.N.J. Apr. 26). Defendants continue to wrongfully seize property that is neither dormant nor belongs to those who are unknown. Plaintiffs currently reside in Colorado and thus could be subject to future, wrongful seizure of their property. (*See generally* Doc. 1 at ¶¶ 7-10); *Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).

Further, Defendant Gardelli's testimony, (Doc. 31-1), evidences an ongoing injury. Defendant Gardelli, as the custodian of records, (*Id.*, at ¶ 4)), has readily available access to internal records on every piece of property seized. (*See Id.*, at  ¶¶ 13, 16). Because these internal records include the property owner's name and whether a notice of claim has been received on the property, (*See Id.*, at ¶¶ 12-14, 15-17), it is reasonably inferable that these records include the property owner's information, including address, email address, and other contact information, as well as other personally identifiable information necessary to confirm ownership of the property. Indeed, even before considering the myriad ways the state has the best information on where its citizens are such as drivers' licenses, property taxes, etc., the holders must provide a report to Defendants that includes the property owner's name, address, and social security number or taxpayer

identification numbers. Colo. Rev. Stat. § 38-13-401. Furthermore, even if the holders do not have this information, Plaintiffs are long-time residents of Colorado whose contact information could be easily ascertained by Defendants. (*See* Doc. 1, at ¶¶ 7, 9). In other words, the Defendants continuously fail to notify Plaintiffs that their property will be, or has been, seized by the State, despite instant access to information that would allow them to do so.

### D. The Burford Abstention Doctrine Does Not Apply to the Claims and Issues Involved in this Litigation

Applying *Burford* abstention in the fashion Defendants urge would turn federal court review of state action on its head. This Court should not abstain from considering the federal constitutional questions presented here.

Dismissal under the Burford Abstention Doctrine is inappropriate because the doctrine is not implicated in this case. The *Burford* abstention doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). Abstention under the doctrine is only appropriate in a specific set of circumstances:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; or (2) where the exercise of federal review of the questions in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 493 U.S. 350, 361 (1989) [hereinafter *NOPSI*].

Defendants' abstention argument stumbles out of the gate. There are no "proceedings

or orders of state administrative agencies" challenged here by Plaintiffs. *Burford* abstention is only available when a federal court is asked to review a state agency's discretionary decision, requiring a federal court to review that agency's power or reasonableness in applying a set of factors. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 326-27, 329, 333-34 (1943); *Quackenbush v. Allstate Ins. Co*, 517 U.S. 706, 723 (1996) ("The principal issue presented in *Burford* was the 'reasonableness' of an order issued by the Texas Railroad Commission, which granted a permit to drill four oil wells on a small plot of land in the East Texas oil field."). In other words, "[i]f adequate state court review of an administrative order based upon predominantly local factors is available, intervention of a federal court is not necessary for the protection of federal rights." *Robert-Gay Energy Enters., Inc. v. State Corp. Com.*, 753 F.2d 857 (10th Cir. 1985). The primary reasoning for abstaining is the "detrimental impact of ongoing federal court review of the Commission's orders," which leads to "contradictory adjudications by the state and federal courts." *Quackenbush*, 517 U.S. at 725. Thus, abstention was appropriate because it would require the federal court to "consider whether the [State agency] correctly applied the statute in this particular instance," and also "whether the [State agency] has previously approved and can continue to approve forced pooling for non-migratory mineral extraction, a question of state statutory interpretation that is difficult and controversial." *Wildgrass Oil & Gas Comm. V. Colorado*, 447 F. Supp. 3d 1051, 1064 (D. Colo. 2020).

These issues are simply not before the Court. A Colorado state agency is not determining whether, in its discretion, property is presumed abandoned pursuant to some factor analysis. Further, a Colorado state agency is not determining whether, in its discretion, notice should be provided pursuant to some factor analysis. There is simply

no administrative order, proceeding, or decision based on predominantly local or statutory factors that Plaintiffs are requesting this Court to review.

In fact, there is no administrative decision at issue in this case, period. To the extent Defendants suggest otherwise, the Colorado General Assembly's bicameral enactment of legislation is not an administrative agency's proceeding or order that falls under the purview of the *Burford* abstention doctrine. And this Court's determination of the issues presented does not create risk of contradictory state court adjudications, given that the only adjudications occurring in relation to Colorado's unclaimed property laws are requests for the return of property. Indeed, this Court's determination that Defendants violated Plaintiffs' rights under the Due Process and Takings Clauses of the Constitution will have no bearing on the State's ability to adjudicate unclaimed property claims. Notably, the two most recent federal courts to consider the constitutionality of unclaimed property laws did not abstain. *Salvato v. Harris*, No. 21-12706-FLW, 2020 WL 1224962, at *19-20 (D.N.J. Apr. 26); *see James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. (W.D. Tex. Sept. 6, 2022).[4] Therefore, *Burford* abstention is wholly inapplicable and Defendants' request for dismissal under this doctrine should be denied.

Abstention is similarly inappropriate when federal issues predominate or may be controlling, such as where a state official's actions are challenged as violations of the federal Constitution. *See NOPSI*, 493 U.S. at 362. Plaintiffs are challenging the

---

[4] The Western District of Texas did not specifically address the *Burford* abstention doctrine and it was not raised by Defendants in that case, however, the Fifth Circuit has long held that *Burford* abstention may be raised *sua sponte* by the Court. *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 588 (5th Cir. 1998); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249, 255 (5th Cir. 1990); *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 n.16 (5th Cir. 1977).

constitutionality of Defendants' actions in connection with the RUUPA. (Doc. 1, at ¶¶ 71, 77). Additionally, because RUUPA itself is alleged to be deficient constitutionally, federal issues control here: Plaintiffs are challenging both Defendants' conduct under the Takings Clause and Due Process Clause of the U.S. Constitution and the permissibility of the states' seizure of property without advance notice. (*Id.* at 26-27 (Count I & II)).

Further, even assuming for the sake of argument that the Burford Abstention Doctrine was somehow implicated here, abstention would still be inappropriate because the Colorado state law involved is neither complex nor difficult to interpret. "While *Burford* is concerned with protecting complex state administrative processes form undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (internal quotations omitted). Further, the specific provisions in question control the determination of complexity. *See WildEarth Guardians v. Extraction Oil & Gas, Inc.*, 457 F. Supp. 3d 936, 949 (D. Colo. 2020). For example, in *WildEarth Guardians*, abstention was not appropriate because the state law at issue only required interpretation of a 90-day exemption, which was not a particularly difficult policy issue. *Id.*

Despite Defendants' assertion otherwise, the state law provisions at issue are far from complex and are not particularly difficult. RUUPA, and its predecessor UPA, require notice be provided to the property owners by Defendants. Colo. Rev. Stat. §§ 38-13-503; 38-13-111(4)-(5) (2018). The notice requirements do not differ based on the property involved. *Id.* The primary issues here are whether the Defendants' conduct—listing property on a website—is by itself notice that satisfies the requirements of the Due Process Clause; and whether Defendants' taking custody and control of the Plaintiffs'

property amounts to a taking which requires just compensation. The determination of these issues is patently not complex, the state law in issue is settled, and the Court's interpretation of these issues will not impair Colorado's ability to implement their state policy (i.e., adjudicate its unclaimed property administrative claims). Therefore, the Burford Abstention Doctrine does not require dismissal.

### E. Defendants' Erroneously Argue that Qualified Immunity Entitles Them to Dismissal under Rule 12(b)(1).

Defendants' argument for dismissal under Rule 12(b)(1) based on qualified immunity fails. As a threshold matter, "[q]ualified immunity is a defense on the merits, not a jurisdictional bar." *Neal v. Davis*, 475 Fed. App'x 690, 692 (10th Cir. 2012). Qualified immunity "does not divest the court of jurisdiction." *Laurienti v. Bicha*, No. 14-CV-02592-NYW, 2016 WL 496047, at *4 n.4 (D. Colo. Feb 9). Accordingly, the court should deny Defendants' motion to dismiss Plaintiffs' claims for lack of jurisdiction based on qualified immunity. For ease of reference, Plaintiffs address Defendants arguments here, but address these arguments properly under Rule 12(b)(6), not Rule 12(b)(1).

Generally, qualified immunity should not be resolved on a motion to dismiss. *Aurelio v. South*, No. 15-cv-1540-WJM-CBS, 2016 WL 8542534, at *6 (D. Colo. 2016). Qualified immunity does not impose a heightened pleading standard. *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008). To survive a motion to dismiss asserting based on qualified immunity, a plaintiff only need allege "facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Id.* Further, the complaint does not need to include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.*

13

Qualified immunity does not shield Defendants because the constitutional rights asserted here have been clearly established since the founding as fundamental and inalienable:

> [T]he right of acquiring and possessing property, and having it protected, is one of the natural, inherent, and unalienable rights of man. Men have a sense of property: Property is necessary to their subsistence, and correspondent to their natural wants and desires; its security was one of the objects, that induced them to unite in society. No man would become a member of a community, in which he could not enjoy the fruits of his honest labour and industry. The preservation of property then is a primary object of the social compact, and, by the late Constitution of Pennsylvania, was made a fundamental law. Every person ought to contribute his proportion for public purposes and public exigencies; but no one can be called upon to surrender or sacrifice his whole property, real and personal, for the good of the community, without receiving a recompence in value. This would be laying a burden upon an individual, which ought to be sustained by the society at large. The English history does not furnish an instance of the kind; the Parliament, with all their boasted omnipotence, never committed such an outrage on private property; and if they had, it would have served only to display the dangerous nature of unlimited authority; it would have been an exercise of power and not of right. Such an act would be a monster in legislation, and shock all mankind. The legislature, therefore, had no authority to make an act devesting one citizen of his freehold, and vesting it in another, without a just compensation. It is inconsistent with the principles of reason, justice, and moral rectitude; it is incompatible with the comfort, peace, and happiness of mankind; it is contrary to the principles of social alliance in every free government; and lastly, it is contrary both to the letter and spirit of the Constitution. In short, it is what every one would think unreasonable and unjust in his own case.

*Vanhorne's Lessee v. Dorrance*, 2 U.S. 304, 310 (1795).

Similarly, Due Process has long required the State to provide notice "reasonably calculated to reach the intended recipient." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citing *Dusenbery v. U.S.*, 534 U.S. 161, 168 (2002); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Knick v. Twp. of Scott, Pennsylvania*, 204 L. Ed. 2d 558, 139 S. Ct. 2162, 2170 (2019) (recognizing that the Framers envisioned takings claims as entitled to "full-fledged constitutional status … among the other

14

protections in the Bill of Rights."). Because Plaintiffs' complaint plausibly alleges violations of their constitutional rights under the Fourteenth and Fifth Amendments[5] – rights that have been clearly established well before the alleged violations occurred – dismissal under the doctrine of qualified immunity is improper.

Further, qualified immunity does not protect against claims for prospective injunctive relief, including both declaratory and injunctive relief. *Lemmons v. Law Firm of Morris & Morris*, 39 F.3d 264, 267 (10th Cir. 1994). Indeed, in a recent case addressing substantially similar allegations, the Western District of Texas held that Plaintiffs plausibly alleged "constitutional violations for notice and due process violations of the United States Constitution against Defendants in their official capacities, which allows for prospective injunctive relief." *James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *28-29 (W.D. Tex. Sept. 6, 2022). Accordingly, the *James* court denied Defendants' motion to dismiss Plaintiffs' injunctive relief for Plaintiffs' Takings and Due Process claims. *See id.*

### 1. Defendants' Seizure of Plaintiffs' Property Violates the Takings Clause.

Plaintiffs have plausibly alleged a taking without just compensation in violation of their clearly established rights under the Fifth Amendment. "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019). This principle has been clearly established since the founding. *Id.*; *Vanhornes's Lesee v. Dorrance*, 2 U.S. 304, 310-12 (1795). The United States Supreme Court was explicit

---

[5] Plaintiffs are dropping their claims for violations of the Contracts Clause of Article I, § 10 of the U.S. Constitution and the right to privacy under the Fourth Amendment.

when explaining a State cannot evade a Takings Claim just by implementing a procedure to return the property taken:

> The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force. The fact that the State has provided a property owner with a procedure that may subsequently result in compensation cannot deprive the owner of his Fifth Amendment right to compensation under the constitution, leaving only the state law right. And that is key because it is the existence of the Fifth Amendment right that allows the owner to proceed directly to federal court under § 1983.

*Knick*, 139 S. Ct. at 2170.

Plaintiffs have alleged, and Defendants have not denied, that Defendants seized their property for public use and have not provided Plaintiffs with just compensation in return for that property. (Doc. 1, at ¶¶ 6-9, 76-78). Thus, Plaintiffs have plausibly alleged a violation of their clearly-established Fifth Amendment rights.

Defendants reach past *Knick* to instead rely on *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), a decision well pre-dating *Knick.* That reliance is misplaced: while the Supreme Court discussed the Takings Clause in *Texaco*, *Texaco* concerned the extinguishment of leases in land made for the purpose of obtaining minerals, such as coal, oil, and gas. *Texaco, Inc. v. Short*, 454 U.S. 516, 519 (1982). If the interest holder did not attempt to obtain minerals, make rent or royalty payments, or pay taxes on the interest *for 20 years*, then the interest was found abandoned as a matter of law and the interest would revert to the surface owner, i.e., "to the then owner of the interest out of which [the Plaintiffs' interest] was carved." Unlike *Texaco*, where Plaintiffs were challenging the transfer of intangible property rights to another closely-intertwined *private* property owner, Plaintiffs are here challenging a *state* seizure of their property, a paradigmatic takings claim. (Doc.

1, at ¶ 2). *Texaco* is thus readily distinguishable and inapposite.

Fellow District Courts have accordingly found similar allegations plausibly allege a takings claim. *Salvato v. Harris*, 2020 WL 1224962, at *27-30 (D.N.J. Apr. 26); *see James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. (W.D. Tex. Sept. 6, 2022). The Court should follow these courts and find dismissal is improper.

### 2.  Plaintiffs State a Due Process Claim

Plaintiffs have plausibly alleged a violation of their clearly-established right to procedural due process. *See James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *28-29 (W.D. Tex. Sept. 6, 2022). The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. The Supreme Court has long been clear that where the state seizes private property, it must provide notice that is "reasonably calculated" to reach the proper owners. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950). Notification must not be an "empty ritual" because a "process which is a mere gesture is not due process." *Taylor v. Yee*, 577 U.S. 1178, 1178 (J. Alito concurring in denial of cert.) (quoting *Mullane*, 339 U.S. at 315). A plaintiff properly pleads a due process violation if the allegations, taken as true, show that (1) the plaintiff was deprived of a Constitutionally-protected liberty or property interest, and (2) the procedures attendant to that deprivation were constitutionally insufficient. *Edmond v. Clements*, No. 11-CV-00248-RBJ-KLM, 2012 WL 2523077, at *22 (D. Colo. Jan. 19).

Plaintiffs sufficiently alleged a constitutionally protected property interest. (Doc. 1, at ¶¶ 7-10). Additionally, Plaintiffs have alleged no notice was provided before their property was seized and that they have not been provided legally-adequate notice since their

property was seized. (*Id.*).

Defendants' assertion that Tenth Circuit precedent forecloses Plaintiffs from maintaining both a due process and takings claim arises from a misapplication of the authorities they rely on, and Defendants urge a framework that would divest federal courts of their authority to review due process violations arising from lack of pre-seizure notice. *Rocky Mountain Materials & Asphalt, Inc. v. Bd of Cnty. Comm'rs*, 972 F.2d 309 (10th Cir. 1992), and *Miller v. Campbell Cty.*, 945 F.2d 348 (10th Cir. 1991) concerned due process claims being brought in conjunction with regulatory takings where the Plaintiffs could avail themselves of state inverse condemnation proceedings. *Rocky Mountain Materials & Asphalt, Inc. v. Bd of Cnty. Comm'rs*, 972 F.2d 309, 310 (10th Cir. 1992); *Miller v. Campbell Cty.*, 945 F.2d 348, 351 (10th Cir. 1991). This analysis is not applicable here, where there has been a taking of a completely different type of property without notice, where Plaintiffs are directly challenging the lack of pre-seizure notice, and where inverse condemnation proceedings are not available to Plaintiffs. The Tenth Circuit in *Rocky Mountain* readily recognized this distinction: ("There are many intangible property rights that merit the protection of procedural due process although their infringement falls short of an exercise of the power of eminent domain for which just compensation is required under the Fifth and Fourteenth Amendments. Because inverse condemnation proceedings do not apply to such property interest, a plaintiff need not resort to those proceedings before bringing an action for denial of due process.") *Rocky Mountain Materials & Asphalt, Inc.*, 972 F.2d at 311.

Accordingly, in *Rocky Mountain*, the due process claims were dismissed for being unripe, not simply because both a Due Process and Takings claim were brought

simultaneously. *Rocky Mountain Materials & Asphalt, Inc.*, 972 F.2d at 311 ("Accordingly, until a plaintiff has resorted to the condemnation procedures to recover compensation for the alleged taking, the procedural due process claim is likewise not ripe because it is in essence based on the same deprivation."); *Miller*, 945 F.2d at 352.

Here, Plaintiffs allege that Defendants improperly seized their property without providing notice beforehand, and subsequently did not provide legally-sufficient notice. (Doc. 1, at ¶¶ 7-10). *Miller* and *Rocky Mountain* are inapposite and distinguishable.

Defendants' reliance on *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233 (1944) in support of their contention that the currently provided "notice" is sufficient is also misplaced. While it is true that the Court held that the statute was notice, and that the statute in conjunction with the sheriff posting a notice on the courthouse door was sufficient notice, *Luckett*, 321 U.S. at 244, Defendants omit a key distinction: the notice on the courthouse door was posted **six weeks before** the property was presumed abandoned and seized by the state. *Id.* at 237. Indeed, the Court's determination that the notice provided satisfied the requirements of Due Process was based heavily on the fact that notice preceded the State's taking of the property. *Id.* at 244-45. Further, the Court placed great weight on the fact that posting notices on the courthouse door was a customary and well-known practice in the relevant community that had been used for purposes of escheatment notices for nearly a century, and it had been used for well-over a century for notifying citizens of other matters. *Id.* at 244. Indeed, Constitutionally-sufficient notice requires reasonably meeting the "practicalities and peculiarities of the case . . . ." *Mullane*, 339 U.S. 306, 314 (1950).

Defendants provide Plaintiffs no prior notice before seizing their private property.

Instead, the website publishes notice after the Plaintiffs' property has been taken, and by then it is already too late. Further, notices being published on websites is a relatively new practice compared to the nearly century-old practice being discussed in *Texaco*.

Defendants' own data belie their contention that statutory and website notice are actually providing Constitutionally-sufficient notice to Colorado property owners. In fact, the insufficiency of Defendants' after-the-fact notice by website publication is evidenced by Defendants' available on Defendants' website referenced in Defendant Gardelli's affidavit, (Doc. 31-1, at ¶ 5). That website provides that there are at least 7,616,858 current property owners who have at least $960,492,013 of unclaimed cash property; at least $417,812,053.9 of unclaimed property shares; and at least 6823 unclaimed property tangibles.[6] Given this volume, the only plausible inference is that numerous people are not receiving sufficient notice, and the only reasonable inference is that the Defendants' notice by website publication in conjunction with the enactment of the statute does not satisfy the requisite Due Process clause standard. (*See* Doc. 1, at ¶ 52). Put differently, Defendants do not employ means "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950); *id.* at 318 (rejecting notice via publication "[w]here the names and post office addresses of those affected by a proceeding are at hand, [because] the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."). Contrary to the longstanding mandate in *Mullane*, Defendants have established a system where they hope absentees do **not** notice that their property has

---

[6] *Map of Available Property*, Colo. Unclaimed Prop. Website, https://colorado.findyourunclaimedproperty.com/app/map-of-available-property (last visited Sept. 19, 2022).

been seized and provide notice that is no "more than a feint." *Id.* at 315.

Indeed, Defendants do not deny that they failed to provide email notice to Plaintiffs or otherwise address how this failure is not actionable. (*See* Doc. 1 at ¶ 46). Defendants point to no such email notice in either their brief or supporting affidavit from Defendant Gardelli. Nor do Defendants argue or attest that the issues identified by the Colorado State Auditor have been rectified. (*See* Doc. 31-1). As alleged, Defendants' failure in this regard is both *ultra vires* of their statutory mandate to provide email notice, and a due process violation. As also alleged by Plaintiffs, the plain language of RUPA § 38-13-503(1) and (2) required email notice to the named Plaintiffs. (Doc. 1 at ¶ 45 – 48):

> (1) The administrator shall give notice to an apparent owner that property that is presumed abandoned and appears to be owned by the apparent owner is held by the administrator under this article 13.
>
> (2) In providing notice under subsection (1) of this section, the administrator shall send the notice to the apparent owner's electronic-mail address if the administrator has an electronic-mail address that the administrator does not know to be invalid.

Plaintiffs have plausibly alleged a due process violation based on this failure and Defendants simply avoid this allegation. While Defendant Gardelli submitted an affidavit with respect to a number of issues,[7] she does not attest that the Unclaimed Property

---

[7] Defendants may argue that Plaintiffs have not alleged that Defendants possess a valid email address for the Plaintiffs and have only alleged Plaintiffs' longstanding residence. First, the most plausible inference arising from Plaintiffs' longstanding residence in Colorado is that Defendants do have valid email addresses. Second, and more fundamentally, Defendants' selective presentation of data and information available only to Defendants raises patent sword-and-shield problems at this early stage, problems which underline why such additional evidence is disfavored on a Rule 12 motion. *VDARE Found v. Colo. Springs*, 11 F.4th 1151, 1158 (10th Cir. 2021); *Brown v. Zavaras*, 63 F.3d 967, 969 (10th Cir. 1995). Defendant Gardelli's affidavit repeatedly references the Department's "confidential internal records" and cites to data and information unavailable to Plaintiffs via the public-facing database. The Court should accordingly convert Defendants' motion into a motion for summary judgment and allow Plaintiffs to take discovery and respond to Defendants on an equal footing. Fed. R. Civ. P. 12(d).

Division ever sent email notice to the Plaintiffs, nor does she attest that the Unclaimed Property Division even attempted to email the apparent owners of the relevant property ID's. (*See* Doc. 31-1, at ¶¶ 12, 14.)

### F.  Sovereign Immunity Does Not Bar Plaintiffs' Claim for an Accounting

Sovereign immunity does not bar Plaintiffs' accounting claim because the claim is ancillary to the relief sought pursuant to Plaintiffs' federal claims, and because the funds sought are held in a separate trust. Federal courts have the power to enjoin state officials in their official capacities. *Hutto v. Finney*, 437 U.S. 678, 690 (1978) (citing *Ex parte Young*, 209 U.S. 123). And this includes the power to provide for ancillary or incidental relief necessitated by an injunction: "the line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief." *Hutto v. Finney*, 437 U.S. 678, 690 (1978); *see also Edelman v. Jordan*, 415 U.S. 651, 667 (1974) ("the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex Parte Young will not in many instances be that between day and night."). The *Young* exception applies where a plaintiff is "(1) suing state official rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief." *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (internal quotations and citations omitted).

Plaintiffs meet the *Young* exception: they sued Defendants in their official capacities, they alleged an ongoing violation of federal law, and they are seeking prospective relief. (Doc. 1, at ¶¶ 11-13); *see* also *James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *16-17 (W.D. Tex. Sept. 6, 2022).

Further, other courts have found that the "Eleventh Amendment does not bar a request

for the return of a plaintiff's property if the complaint alleges that state officials acted *ultra vires* or unconstitutionally," *Suever v. Connell*, 439 F.3d 1142, 1143 (9th Cir. 2006) (citing *Taylor v. Westly*, 402 F.3d 924, 932-35 (9th Cir. 2005), at least when such funds are held by the state in trust. *Compare James et al v. Hegar Jr. et al*, No. 5:22-CV-51-DAE, slip op. at *17-19 (W.D. Tex. Sept. 6, 2022) (finding that restitution and return of property is barred by sovereign immunity because Texas places unclaimed property in the state's general revenue fund instead of holding it separately in trust). The reasoning being that the funds sought are not in the state's general revenue fund, but instead are held separately by the state in trust. *Suever*, 439 F.3d at 1143.

Much like the California unclaimed property laws at issue in *Suever*, which held the unclaimed property in trust, Colorado provides that unclaimed property will be held separately in trust and not placed into the general revenue fund. Colo. Rev. Stat. § 38-13-301. As detailed below in section II.D, Plaintiffs' accounting claim is brought ancillary to their claims for restitution and return of their own property – a federal claim – and the claim is necessary due to Defendants' improper record keeping. (*See, e.g.*, Doc. 1, at ¶ 33(c)). On its own, Plaintiffs' claim for accounting does not provide compensatory monetary damages, it is simply a means to accurately calculate the appropriate value and proper return of Plaintiffs' property. Therefore, Plaintiffs' claim for an accounting is not barred by sovereign immunity because it is ancillary to their federal claims, and Plaintiffs' request that the property seized by Defendants be returned is also not barred by sovereign immunity.

### G. Colorado Law Does Not Bar All of Plaintiffs' State Law Claims.

### 3. The CGIA Does Not Bar Plaintiffs' Accounting Claim.

Plaintiffs do not state a freestanding claim for *ultra vires* as suggested by Defendants, Plaintiffs allege that Defendants acted ultra vires. (*See* Doc. 1). So, there is nothing to bar in this respect, and no notice was necessary. *See* Colo. Rev. Stat. § 24-10-118. Further, Plaintiffs assertion that Defendant acted *ultra vires* of their statutory authority coincides with Plaintiffs' federal law claims, (Doc. 1, at ¶¶ 71, 77), and thus no notice was necessary. *See Mucci v. Falcon School District # 49*, 655 P.2d 422, 424 (Colo. App. 1982); *Dearon v. Lewis*, 706 P.2d 1283, 1286 (Colo. App. 1985).

Further, Plaintiffs' claim for an accounting (as explained below in section II.D), is neither a tort nor lies in tort. Instead, it is simply a remedy to ensure accurate calculations of damages, and therefore the CGIA does not apply. Colo. Rev. Stat. § 24-10-106.

### 4. Exhaustion of Administrative Remedies is Not a Prerequisite for Plaintiffs' § 1983 Claims.

The U.S. Supreme Court recently held that exhaustion of state provided administrative remedies is not a prerequisite to a takings suit. *Knick*, 139 S. Ct. at 2178 (2019). Notably, all of the cases cited by Defendants are pre-*Knick*. (Doc. 31, at 31). To the extent Defendants contend that Plaintiffs must exhaust available state procedures before proceeding with their § 1983 claims, that contention is foreclosed by *Knick*.

## II. Plaintiffs Plausibly Alleged Violations of their Constitutional Rights.
### A. Plaintiffs State a Claim for Violation of § 1983 (Counts II-III).

To state a § 1983 claim, Plaintiffs must plausibly allege a violation of a Constitutional right or law and that the deprivation was committed by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs have readily satisfied this

standard for all the reasons stated above in § I.C.

### B. Defendants' Actions and Inaction Caused Plaintiffs' Injuries.

Plaintiffs' allegations sufficiently allege an affirmative link between the constitutional violations and the Defendants' conduct. A § 1983 claim requires an affirmative link between the constitutional violation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Contrary to Defendants' characterization of the caselaw, personal participation is not the only way to sufficiently allege causation. Plaintiffs sufficiently alleged that Defendants violated their rights through personal participation, exercise of control or direction, **or** their failure to supervise. Specifically, Plaintiffs alleged that Gardelli is responsible for ensuring that proper notice is provided. (Doc. 1, at ¶ 13). And as discussed below, Defendants Gardelli and Young in fact sign notices to apparent owners. Thus, Defendants Gardelli and Young have the power to exercise control and direction over the notice procedures, and the failure to send notice is directly traceable to their supervisory responsibility. *See id.* Further, as conceded by Defendants, Defendant Gardelli is responsible for "**oversee[ing]** the day-to-day implementation and administration of RUUPA." (Doc. 31-1, at ¶3) (emphasis added). This level of supervision and control over RUUPA certainly establishes the affirmative link necessary to maintain a § 1983 claim. Defendant Gardelli has direct access to records of information for every single piece of property seized – including Plaintiff Knellinger's and Storey's property. (*Id.*, at ¶¶ 12-17). Thus, Defendant Gardelli has direction and control over the necessary information to provide notice, and at a minimum, the failure to provide constitutionally sufficient notice to Plaintiffs is the

product of her failure to act. Moreover, Defendant Gardelli has testified that she has the capability of reviewing the property belonging to Plaintiffs, including when it was seized, where it was seized from, and the type of property. And Defendant Gardelli's affidavit further demonstrates that Defendants held their positions, with access to all this information, when Plaintiff Knellinger's personal property was seized from holder Verizon Communications in October 2020. (*Id.* at ¶¶ 2-3, 12-13). It is reasonably inferable that these same records identify who the property owner is, including their e-mail address, address, and other identifiable information that would permit notice to be sent – particularly because holders are statutorily required to provide this information to Defendants. Colo. Rev. Stat. § 38-13-401. Additionally, it is reasonably inferable that these same records identify whether notice has been sent to the property owner on file, when the notice was sent, and the type of notice sent.

Regarding Plaintiffs' allegations concerning Defendant Young, Plaintiffs specifically allege that Defendant Young is the individual primarily responsible with handling RUUPA. (Doc. 1, at ¶ 12) ("Defendant Young's '[c]ore responsibility is to reunite citizens with lost or forgotten property.'"). Further, Defendant Gardelli reports directly to Defendant Young. (*Id.* at ¶ 13). Given Defendant Gardelli is responsible for the day-to-day implementation and administration of RUUPA, as outlined above, this supervisory capacity and power to direct and control Defendant Gardelli establishes the affirmative link between Defendant Young and the constitutional violations Plaintiffs complain of. This is not liability based simply on positions of authority: Defendants are the individuals with the responsibility and power to ensure that Plaintiffs' rights under the Constitution are being upheld.  Their duties and positions are so intertwined with the handling of RUUPA that it is reasonably inferable

26

that Defendants are affirmatively linked to the Constitutional violations complained of.

Finally, according to Director Gardelli's affidavit, the Department maintains a website at the internet address, https://colorado.findyourunclaimedproperty.com. (Doc. 31-1, at ¶ 5). Going to this web address, an individual will see examples of the notices the Defendants provide to individuals if they have seized their property; importantly, *the written notice is signed by both Defendants*. (Ex. 2). Because Defendants are the individuals signing the notices provided to owners, the only reasonable inference is that it was the Defendants' omissions and failure to supervise that led directly to Plaintiffs not receiving the required notice. Again, while Defendant Gardelli attests to multiple matters, she does not assert that she or Defendant Young sent or directed notice to be sent (via email or otherwise) to either named Plaintiff. This failure is a direct and proximate cause of the constitutional injuries alleged by Plaintiffs

### C. Plaintiffs' Claims are within the Requisite Statute of Limitations.

Plaintiffs' federal claims are not time-barred. Because 42 U.S.C. § 1983 does not have a limitations period, it is governed by the applicable state statute governing personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985); *Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022). Even assuming the applicable statute of limitations is two years under Colo. Rev. Stat. § 13-80-102(g), the accrual date of the cause of action "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a plaintiffs cause of action under § 1983 "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Herrera*, 32 F.4th at 990 (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998). Dismissal based on the statute of limitations is only appropriate

when the "dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016). Further, the dates on which the statute of limitations accrued must not be in dispute. *Herrera*, 32 F.4th at 991 (quoting *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995). In other words, the complaint itself must admit all of the elements of the statute of limitations affirmative defense. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

Plaintiffs did not know that their property was seized by Defendants until 2022. (Doc. 1 at ¶¶ 7, 9). Thus, the complaint does not admit all of the elements of the statute of limitations affirmative defense. Furthermore, due to Defendants' Constitutionally-inadequate notice, it was impossible for Plaintiffs to know of the seizure any earlier because Defendants do not provide notice *when* the property was considered abandoned by Defendants, that Defendants were going to take custody and control of Plaintiffs property, or that Defendants actually took custody and control of the property. Defendants did not identify the type nor amount of Plaintiffs' property that they seized, further preventing Plaintiffs from discovering their injury. (*Id.* at ¶¶ 8, 10). Moreover, even assuming Plaintiffs did not act diligently in checking the website – which they did – such diligence does not relieve Defendants of their obligations to provide notice and just compensation. At best, Defendants raise factual issues with respect to when Plaintiffs knew or should have known they were injured, and such fact issues are not ripe at this stage. Therefore, Plaintiffs claims are not time-barred by Colorado's statute of limitations, because the cause of action did not accrue until 2022 at the earliest.

Finally, Defendants do not explain how – even under their own mistaken analysis –

Plaintiff Knellinger's claim could possibly be untimely. Defendant Gardelli attests that Knellinger's property was not seized until October 29, 2020, (Doc. 31-1, at ¶ 13), and this case was filed on June 1, 2022.

### D. Plaintiffs Adequately Pled an Accounting Claim.

Plaintiffs have properly alleged their accounting claim, including that an accounting is necessary in this lawsuit. Therefore, dismissal is improper. An accounting is generally an equitable claim. *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354. However, it is also available to determine and accurately calculate the appropriate amount of damages. *Virdanco*, 820 P.2d at 354; *Patterson v. BP Am. Prod. Co.*, 159 P.3d 634, 642 (Colo. App. 2006) (While an accounting is special remedy, "it may be ordered if the plaintiff is unable to determine how much, if any, money is due him or her from another."), *overruled on other grounds by* 185 P.3d 811 (Colo. 2008) (citing *Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435 (Colo. App. 1983). For example, an accounting was proper when the defendant inadequately maintained their books. *Andrikopoulos*, 670 P.2d at 440. Similarly, an accounting is proper when the defendant has exclusive control of the information required to make the calculation of damages, and the information includes numerous deductions and complex variables. *Patterson*, 159 P.3d at 642; *see also Kirzhner v. Silverstein*, No. 09-CV-02858-CMA-BNB, 2010 WL 2985615, at *12 (D. Colo. July 23) (denying dismissal of accounting claim because the suit involved numerous complex transactions).[8]

---

[8] *But cf* Ex. 1 at 30 (finding similar allegations did not show that the transactions at issue were sufficiently complex to justify an accounting)

Further, despite Defendants assertion to the contrary, "a prior demand for an account that was refused is **not** a prerequisite for an accounting claim.[9]" *Kirzhner v. Silverstein*, No. 09-CV-02858-CMA-BNB, 2010 WL 2985615, at *12 (D. Colo. July 23) (emphasis added). Such a demand is unnecessary when the demand would have been futile or preclusion would be unreasonable. *Id.* (citing *Van Schaack v. Phipps*, 558 P.2d 581, 585-86 (Colo. Ct. App. 1976) (finding that a demand would have been futile); *Patterson v. BP Am. Prod. Co.*, 159 P.3d 634, 642 (finding that precluding the accounting claim simply because it was not requested would be unreasonable)).

A correct calculation of the value of Plaintiffs' property mandates an accounting. Plaintiffs' intangible personal property, which involves interest, dividends, sale costs, taxes, fees, and more. (Doc. 1, at ¶ 83). Plaintiffs have also alleged that Defendants have inadequately maintained their books. (*Id.*, at ¶ 33(c)). This incorrect record retention, coupled with the failure to fix the errors, (*Id.*), necessarily prevents an accurate determination of the value of Plaintiffs' property even if Plaintiffs' obtain these records through discovery. Moreover, all the information required to make an accurate calculation of Plaintiffs' damages is held exclusively by the Defendants. (Doc. 31-1, at ¶¶ 13, 16). Therefore, dismissal is improper because Plaintiffs have sufficiently pled their request for an accounting.

## CONCLUSION

For all the reasons stated herein, Defendants' motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), (Doc. 31), should be denied.

---

[9] Counsel are unable to find a single Colorado case stating that an accounting claim must be tied to a state law claim.

Dated: September 19, 2022

Respectfully submitted,

_/s/ Sean R. Cooper_

Jonathan Greiner
Christopher Ross
**GREINER & ASSOCIATES, PLLC**
401 Austin Highway, Suite 200
San Antonio, Texas 78209
Telephone: (210) 824–6529
Fax: (210) 829–5528
service@greinerattorneys.com

Richard M. Paul III
Sean R. Cooper
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Fax: (816) 984-8101
Rick@PaulLLP.com
Sean@PaulLLP.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2022, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the ECF registrants listed for this matter.

_/s/ Sean R. Cooper_