## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01379-CNS-STV

DAVID KNELLINGER and ROBERT STOREY, individually and on behalf of all persons similarly situated,

     Plaintiffs,

v.

DAVID YOUNG, in his individual and official capacities as COLORADO STATE TREASURER, COLORADO OFFICE OF TREASURY, and BIANCA GARDELLI, in her individual and official capacities as DIRECTOR OF COLORADO DEPARTMENT OF TREASURY, UNCLAIMED PROPERTY DIVISION,

     Defendants.

---

## REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)

---

The very first paragraph of their *Response* signals that Plaintiffs' claims are on the proverbial ropes by citing to the U.S. Supreme Court's decision *declining* to review the Ninth Circuit's rejection of Takings and Procedural Due Process challenges to the administration of California's unclaimed property laws, and the decisions of two district courts in other circuits that ultimately granted, in part, motions to dismiss filed by other States' unclaimed property administrators. *See* Doc. 33 at p. 1 (citing *Taylor v. Yee*, 136 S. Ct. 929, 930 (2016) (Alito, J., concurring) (denying certiorari review of *Taylor v. Yee*, 780 F.3d 928, 931 (9th Cir. 2015)); *James, et al. v. Hegar Jr., et al.*, No. 5:22-CV-51-DAE, slip op. (W.D. Tex. Sept. 6, 2022); *Salvato v. Harris*, No. 21-12706-FLW, 2020 WL 1224962 (D.N.J. Apr. 26, 2022)). Doing so reveals the complete lack of clearly established precedent in support of their federal question claims. And in a further show of weakness, the record before this Court reflects that Plaintiffs have conceded all of their state law claims for any type of relief, *see* Doc. 39 at p. 3-4, as well as "their claims for violations of the Contracts Clause of Article I, § 10 of the U.S. Constitution and

the right to privacy under the Fourth Amendment." Doc. 33 at p. 15, n.5.[1] The Court should

dismiss the remaining tatters of the Complaint [Doc. 1] for the myriad other jurisdictional and

substantive reasons raised in Defendants' motion to dismiss [Doc. 31].

## ARGUMENT

I. **The Court lacks or should decline to exercise subject matter jurisdiction over Plaintiffs' claims under Rule 12(b)(1).**

A. **Plaintiffs cannot establish standing to maintain any of their claims.**

The *Response* glosses over the fundamental deficiency of the Complaint: Plaintiffs

cannot establish a concrete injury because they failed to allege that they are, in fact, the actual

owners of the unclaimed property identified in the Complaint. *See* Doc. 1 at ¶¶ 8, 10. Absent

having filed administrative claims seeking to collect those properties from Defendants, which are

uncontroverted facts established through Director Gardelli's Declaration, *see* Doc. 31-1 at ¶¶ 14,

17, at most they allege that they might be the owners of the properties. Plaintiffs likewise at most

allege that they "*could be* subject to future wrongful seizure of their property" if Defendants'

allegedly improper conduct is not enjoined. Doc. 33 at p. 8 (emphasis added). But under *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-601 (1992), these conjectural and hypothetical injuries

are insufficient to establish standing, or that it is likely that their alleged injury would be

redressed by a favorable decision. And Plaintiffs' arguments to the contrary in their *Response*

lack merit for several reasons.

*First*, Defendants mounted a factual attack on Plaintiffs' standing here, which the

*Response* wholly failed to rebut through the introduction of actual evidence, as opposed to mere

argument. *See* Doc. 33 at p. 5-6. For example, Knellinger did not provide any declaration, much

---

[1] Based on this concession, Defendants do not address these federal question claims in this *Reply*.

less one swearing that: (1) he ever had an account in his name with "Verizon Communications Inc," which the Complaint identified as the holder of his alleged unclaimed property, Doc. 1 at ¶ 8; (2) he ever submitted an administrative claim to Defendants to collect the unclaimed property he allegedly owns; and (3) Defendants wrongfully denied his administrative claim. Similarly, Storey did not provide any declaration, much less one swearing that: (1) he ever owned an insurance policy with "Lawyers Title Insurance Corporation," which the Complaint identified as the holder of his alleged unclaimed property, Doc. 1 at ¶ 10, or that he has personal knowledge that he is the beneficiary of an insurance policy issued by "Lawyers Title Insurance Corporation"; (2) he ever submitted an administrative claim to Defendants to collect the unclaimed property he allegedly owns; and (3) Defendants wrongfully denied his administrative claim.

*Second*, Plaintiffs' reliance on *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001), is misplaced because that case concerned the government's *facial* challenge to criminal defendants' standing to seek the return of property seized under Fed.R.Crim.P. 41(e). *See* Doc. 33 at p. 5 (citing *id.*). In reversing the trial court's dismissal for lack of standing, the Tenth Circuit in *Rodriguez-Aguirre* expressly "construe[d] the United States Rule 12(b)(1) motion to dismiss for lack of standing to be a facial attack on the complaint, rather than a factual one[.]" *Id.* It therefore accepted the criminal defendants' allegations of material fact as true and construed them in their favor. *Id.* But that legal standard does not apply to Defendants' factual attack here. Rather, this Court may not presume the truthfulness of Plaintiffs' factual allegations in support of standing, and may consider and accept the counter-facts established through Director Gardelli's August 26, 2022 Declaration [Doc. 31-1]. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437

(2001). Simply put, both the facts and law underpinning the standing inquiry in *Rodriguez-Aguirre* are inapposite to those of this case, and therefore its holding does not support Plaintiffs' contention that they have established standing to maintain any of their claims.

*Third*, Plaintiffs misunderstand Defendants' argument that they failed to allege any injury related to non-cash property. *See* Doc. 33 at p. 6-7. Assuming without conceding that Plaintiffs have adequately alleged that they are, in fact, the owners of the properties identified in the Complaint, Director Gardelli's August 26, 2022 Declaration established, as a matter of uncontroverted fact, that those properties consist of only cash, "meaning that it is not tangible property stored in a safe-deposit box, interest bearing property, or the type of property that had to be sold by the Department to obtain a cash-value." Doc. 31-1 at ¶¶ 13, 16. Under *Lujan*, 504 U.S. at 560, and *Warth v. Seldin*, 422 U.S. 490, 502 (1975), Plaintiffs have failed to establish *their*, as opposed to putative class members who are not yet before the Court, standing to challenge Defendants' allegedly improper seizure, sale, or destruction of safe-deposit box contents and securities/investment vehicles, failure to pay dividends or interest on seized property, and sale of certain seized property. *See* Doc. 1 at ¶¶ 33(e), 66(c), 71, and 83. And because the *Response* failed to cite any authority in support their "conclusory assertions" otherwise, *see* Doc. 33 at 6-7, Plaintiffs have conceded that they lack standing to pursue claims based on these categories "by inadequately briefing the issue." *Stender v. Archstone-Smith Operating Tr.*, 910 F.3d 1107, 1117 (10th Cir. 2018) (holding that "conclusory assertions" in briefs "do not adequately present [this Court] with an argument on these claims, so [it should] consider them abandoned"); *Benham*, 885 F.3d at 1276.

*Fourth*, Plaintiffs also misunderstand the contention that, under *Lujan*, 504 U.S. at 560-61, and *City of Los Angeles v. Lyons*, 461 U.S> 95, 102 (1983), they cannot maintain any of their

claims against Defendants to the extent they are premised on the alleged failures of holders—

who are independent third-parties not before this Court—to provide them with advance notice

before reporting and transferring the properties identified in the Complaint to Defendants.  *See*

Doc. 33 at p. 7. In other words, alleging that a holder injured them is insufficient to establish that

Defendants injured them. *See id.*  Plaintiffs reliance on *M.A.K. Investment Group, LLC v. City of*

*Glendale*, 897 F.3d 1303, 1312-13 (10th Cir. 2018) (incorrectly cited as 889 F.3d 1173, 1192

(10th Cir. 2018) in Doc. 33 at p. 7), is misplaced because that case did not involve any injury

allegedly caused by the failures of third-parties who were not before the court. Rather, it

involved the government's attempt to point to the alleged failures of the *plaintiff* to "have been

more diligent" by "tak[ing] steps to safeguard its interests" as an excuse for its own

noncompliance with its constitutional duty to provide adequate notice of its condemnation

action. *Id.* The facts of the alleged injury at-issue *M.A.K.*—which was self-inflicted by the

plaintiff, not by any third party who was not before the court—are inapposite to those of this

case, and therefore its holding does not support Plaintiffs' contention that they have standing to

maintain any claim against the Defendants based on the alleged failures of holders to provide

notice. And absent the ability to rely on *M.A.K.*, the *Response* failed to cite any authority in

support that contention, *see* Doc. 33 at 7, and therefore Plaintiffs have conceded that they lack

standing to pursue any claim based on injuries allegedly caused by holders "by inadequately

briefing the issue." *Benham*, 885 F.3d at 1276; *see also Stender*, 910 F.3d at 1117.

　　　*Fifth*, Plaintiffs cannot establish the type of injury that would support standing to

maintain their Section 1983 claims for prospective relief. The *Response* failed to address any of

the Tenth Circuit and U.S. Supreme Court case law establishing that they cannot maintain claims

for declaratory or injunctive relief unless they show either a "continuing injury," *PeTA, People*

*for the Ethical Treatment of Animals v. Rasmussen*, 298 F. 3d 1198, 1202 (10th Cir. 2002), a "good chance of being likewise injured in the future," *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991), or a credible threat of future harm. *Ward v. Utah*, 321 F.3d 1263, 1267-69 (10th Cir. 2003). Instead, they urge this Court to follow two recent unreported federal district court decisions in other circuits allowing similar types of claims to move forward, neither of which squarely support that Plaintiffs have established standing here. *See* Doc. 33 at p. 8-9. In *Hegar,* which involved a challenge to Texas officials' administration of the State's unclaimed property laws, the district court did not address the question of standing. *See* Doc. 33-1. In *Salvato*, which involved a challenge to New Jersey officials' alleged seizure and sale of stocks under the State's unclaimed property laws, the district court addressed standing in a footnote focused on redressability without discussing or explaining how the plaintiff had alleged any continuing injury. *See* Civil Action No. 21-12706 (FLW), 2022 WL 1224962 at *6 n.5 (D. NJ Apr. 26, 2022). And while the substance of these decisions not only does next to nothing to establish Plaintiffs' standing to maintain their Section 1983 claims for prospective relief, they also have no precedential value to this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).

As discussed above, Plaintiffs cannot allege any actual injury, either retrospective or prospective, because they cannot establish that they do, in fact, own the properties identified in the Complaint. This case is very different from the claims allowed to move forward at the preliminary injunction stage in *Taylor v. Westly*, 488 F.3d 1197, 1199-1200 (9th Cir. 2007) ("*Taylor II*"), which involved allegations that California's unclaimed property laws allowed the

seizure of plaintiffs' shares of stock, their immediate sale, and transfer of the sale proceeds to the State's general fund. *See also Taylor v. Westly*, 402 F.3d 924, 926 (9th Cir. 2005) ("*Taylor I*") (describing plaintiffs' claims); *Taylor II* 488 F.3d 1197, 1200 (9th Cir. 2007) (holding that plaintiffs faced ongoing risk of the permanent deprivation of their property resulting from California's policy of immediately selling stocks after escheat). In contrast, the only basis for ongoing injury that Plaintiffs point to here is that they "currently reside in Colorado and thus could be subject to future, wrongful seizure of their property." Doc. 33 at 8. Under this flawed theory, any person anywhere in the world who might at some point have property deemed abandoned under RUUPA and reported and transferred to Defendants would have standing to seek an prospective relief. This absurd result is not supported by any Tenth Circuit or U.S. Supreme Court case law, and is wholly inconsistent with the decision of those courts that were cited in Defendants' motion to dismiss [Doc. 31] and this *Reply*.

And *sixth*, in a last-ditch effort to establish standing for at least one facet of their Procedural Due Process claims, the *Response* asserts new factual allegations about Defendants' alleged failure to provide email notices to Plaintiffs as they claim is required[2] by RUUPA. *See* Doc. 33 at p. 8 (asserting that, based on statements in Director Gardelli's August 26, 2022 Declaration about her access to the Department's confidential internal records, "it is reasonably inferable that these records include the property owner's . . . email address"); *see id.* at p. 21-22 n.7 (predicting that "Defendants may argue that Plaintiffs have not alleged that Defendants possess a valid email address for the Plaintiffs and have only alleged Plaintiffs' long-standing residence" and arguing that "the most plausible inference arising from Plaintiffs' longstanding

---

[2] RUUPA does require Defendants to "send the notice [required under 38-13-503(1)] to the apparent owner's electronic-mail address," but only "if the administrator has an electronic-mail address that the administrator does not know to be invalid." § 38-13-503(2).

residence in Colorado is that Defendants do have valid email addresses"). At the outset, their prediction that Defendants object to their attempt to amend the Complaint by raising new factual allegations that Defendants either knew or should have known their email addresses in their *Response. See Pennsylvania ex rel. Zimmerman v. PepsiCo, In*c., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). While both Plaintiffs pled that they "never received any notice from the [Department]," Doc. 1 at ¶¶ 7, 9, 42, 46-47, neither pled that the Department has any email addresses for the properties identified in the Complaint. *See* Doc. 1. But even if the Court were to accept and consider these new factual allegations, despite Plaintiffs' obvious lack of foundation based on personal knowledge to assert them because they do not allege that they have access to any of the Department's confidential internal records, the allegations are insufficient to establish an actual injury based on Defendants' failure to provide email notice because, in fact, Defendants do not have any email address in their records for either of the properties identified in the Complaint. *See* Exhibit 10 – October 11, 2022 Declaration of Bianca Gardelli at ¶¶ 7, 9.

**B.    The Court should decline to exercise jurisdiction over Plaintiffs' Section 1983 claims for equitable relief under the *Burford* abstention doctrine.**

Plaintiffs misapprehend the case law governing *Burford* abstention, which is available to this Court in the unlikely event that either Plaintiff has standing to maintain one or more of their federal question claims for equitable relief. They argue that "[t]here are no 'proceedings or orders of state administrative agencies' challenged here by Plaintiffs." Doc. 33 at p. 9-10 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*")). But this contention is wrong both legally and factually. Unlike abstention under *Younger v. Harris*, 401 U.S. 37 (1971), which requires there to be an *ongoing* state administrative (or criminal) proceeding at the time the federal court lawsuit is filed, *see*, *e.g.*,

*Columbian Fin. Corp. v. Stork*, 811 F.3d 390, 394-95 (10th Cir. 2016), *Burford* abstention requires no such thing. *See Wildgrass Oil & Gas Comm. v. Colorado*, 447 F. Supp. 3d 1051, 1063 (D. Colo. 2020) (the trial court expressly noted that "Wildgrass did not appeal the [administrative] decision within the statutorily prescribed time frame, [and as a result] may be unable to seek state court review," but still abstained under *Burford* because "[t]he availability and adequacy of state court review cannot be determined by Wildgrass's failure to pursue the remedies available to them."), *aff'd*, 843 F. App'x 120 (10th Cir. 2021). Rather, *Burford* abstention is an option whenever "a federal district court [sitting in equity] faces issues that involve complicated state regulatory schemes," *id.* at 1062 (quoting *Lehman v. City of Louisville*, 967 F.2d 1474, 1478 (10th Cir. 1992) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)), and "timely and adequate state-court review is *available*[.]" *NOPSI*, 491 U.S. at 361 (emphasis added). Both of these prerequisites are present here.

*First*, RUUPA is a comprehensive and complex regulatory scheme for the administration of unclaimed property by the State of Colorado. *See* Doc. 31 at 3-4 (summarizing fifteen parts that comprise RUUPA). It governs myriad types of tangible and intangible unclaimed property ranging from simple cash to highly complex mineral rights royalties, *see* § 38-13-102(24) (defining "property"), and broadly defines an "owner" as "a person that has a legal, beneficial, or equitable interest in property subject to [RUUPA]" inclusive of depositors, trust beneficiaries, creditors, claimants, and others. *See* § 38-13-102(21). The implementation and enforcement of RUUPA requires Defendants and their staff to make endless administrative decisions on a daily basis, including but not limited to: (1) determining whether any unclaimed property is subject to a superior claim of recovery by another State, *see* §§ 38-13-901 & -902; (2) reviewing holders' reports and deciding whether to require an examination of their books and records to determine

liability for unreported reportable property, *see* §§ 38-13-1001 to -1011; (3) participating in administrative and judicial enforcement proceedings involving holders that have been determined liable for unreported reportable property, *see* §§ 38-13-1101 to -1104, §§ 38-13-1201 to -1206; and (4) processing administrative claims to collect unclaimed property. *See* § 38-13-903. The latter requires the receipt and evaluation of "evidence sufficient to establish to the satisfaction of the administrator that the claimant is the owner of the property," § 38-13-904(1), which is a process that may take up to ninety days for each claim. *See* § 38-13-904(2). And before paying an approved administrative claim, Defendants and their staff must determine whether any offset must be applied, such as for: child support; judicial restitution, fines, fees, costs, or surcharges; and state tax delinquencies. *See* §§ 38-13-902.2 to -902.4, & -905(2) – (3).

In an effort to stave off *Burford* abstention, Plaintiffs proclaim that "the state law issues are far from complex and are not particularly difficult," Doc. 33 at p. 12-13, but by seeking the "imposition of a constructive trust over an accounting of any and all transactions unlawfully entered into by Defendants without the appropriate notification to the public," Doc. 1 at ¶ 6, Plaintiffs are asking this Court to take over the administration of the above-listed and other complex processes required by RUUPA for more than "1.6 million" putative class members. *Id.* at ¶ 57. This is because the Court would have to assume Defendants' duty of reuniting all unclaimed property in the constructive trust with its rightful owners, which necessarily would require it to establish and administer a claims process for determining whether *each* putative class member is, in fact, the actual owner of the property. *See* § 38-13-904(1). And it must be noted that Plaintiffs' assertion that RUUPA is simple is belied by the assertion elsewhere in the *Response* that they are entitled to the extraordinary equitable remedy of an accounting because "the information [required to make the calculation of damages] includes numerous deductions

and complex variables." Doc. 33 at 29 (citation omitted). In short, Plaintiffs cannot have it both ways on the question of complexity and this Court need only review RUUPA as a whole to ascertain that it is a complicated regulatory scheme like those at-issue in cases where other federal courts have abstained under *Burford*. *See Wildgrass*, 447 F. Supp. 3d at 1065 (collecting cases).

*Second*, Plaintiffs do not dispute either the availability or adequacy of state court review under RUUPA. *See* Doc. 33 at p. 9-13. Nor could they because the former is expressly provided in § 38-13-906, and the latter is established through the decisions of this and other courts. *See Wildgrass*, 447 F. Supp. 3d at 1062-63 (noting that "the state courts certainly can review the constitutionality of [Colorado Oil and Gas Conservation Commission] decisions" and collecting cases).

Having established that this Court has the option to abstain under *Burford*, there are several reasons why it should exercise its discretion to do so. *First*, RUUPA, specifically, and the administration of unclaimed property by States, generally, "bear[s] on policy problems of substantial public import whose importance transcends the result in the case at bar[.]" *NOPSI*, 491 U.S. at 361. Namely, by enacting RUUPA (and its predecessor UPA), the Colorado General Assembly expressed its policy choice that tangible and intangible property that appears to have been abandoned or unclaimed by its rightful owners after a specified dormancy period should not sit forever on the private books of holders that are closed to the public, but rather should be reported and transferred to Defendants, *see* §§ 38-13-401 to -403 & -603, upon which it "is held in custody for the benefit of the owner and is not owned by the state." § 38-13-803*; see Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 241 (1944) (noting that by taking "long neglected accounts . . . into custody when they have been abandoned so long as to be presumptively

abandoned," state unclaimed property laws "protect the interests of depositors"). And in furtherance of that policy choice, the General Assembly also chose to establish a trust fund in which to hold almost "all money received . . . or otherwise collected" by Defendants under RUUPA, § 38-13-801(1)(a), to require that, but for limited exceptions, "the principal of the trust fund shall not be expended except to pay claims" under RUUPA and "is not subject to appropriation by the general assembly," § 38-13-801(1)(b), and to mandate that the "money in the unclaimed property trust fund does not revert to the general fund at the end of any fiscal year." § 38-13-801(1)(d). As a result, Plaintiffs' claims here affect the unclaimed property of "over 1.6 million people," Doc. 1 at ¶ 57, totaling over $1 billion, *see* Doc. 33 at p. 20 n.6 (citing information contained on the Department's publicly available website), which readily transcends the small sums of property in the trust fund that they allegedly own by an order of magnitude. *See* Doc. 1 at ¶¶ 8 (Knellinger is between $50 and $249), 10 (Storey is under $50). Finally, so important is the administration of unclaimed property from a public policy standpoint that "[a]ll fifty states, and the District of Columbia, have a set of unclaimed property laws (often called escheat laws)." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012).

*Second*, "the exercise of federal review of the question in [this] case . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *NOPSI*, 491 U.S. at 361, including specifically "Colorado's attempt to ensure uniformity in the application of [RUUPA]." *Wildgrass*, 447 F. Supp. 3d at 1064 (citing *NOPSI*, 491 U.S. at 362). Indeed, the first "U" in RUUPA is short for "Uniform" and RUUPA contains an express uniformity clause. *See* § 38-13-1501 ("In applying and construing this uniform act,

consideration must be given to the need to promote uniformity of the law with respect to its subject matter among the states that enact it.").

And *third*, the likelihood that federal court review will "interfere with" or "be disruptive," *NOPSI*, 491 U.S. at 361, is much higher where a plaintiff's "claim appears to involve 'state law in federal law clothing.'" *Wildgrass*, 447 F. Supp. 3d at 1064 (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 721 (4th Cir. 1999)). That is decidedly the case with respect to Plaintiffs' federal question claims here, which largely stem from Defendants' alleged violations of RUUPA.[3] In this regard, they closely resemble the procedural due process claims at-issue in *Wildgrass* for which the Tenth Circuit affirmed the trial court's decision to abstain under *Burford. Id.* at 1063-65, aff'd, 843 F. App'x 120 (10th Cir. 2021).

In contrast, the U.S. Supreme Court has found *Burford* abstention unwarranted where the case did "not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state-law that must be untangled before the federal case can proceed,'" *NOPSI*, 491 U.S. at 361 (quoting *McNeese v. Board Of Education for Community Unit School Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963)), and did not involve "a claim that a state agency has misapplied its lawful authority," or a "State's attempt to ensure uniformity in the treatment of an 'essentially local problem.'" *Id.* at 362 (quoting *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 347 (1951)). But this case involves all three and therefore this

---

[3] Indeed, the Complaint is replete with allegations that Defendants "perpetrated their misuse of the RUUPA," "violate[d] the express provisions of the RUUPA," "disregarded the law and failed to provide adequate notice as required by RUUPA," "unlawfully sell Plaintiffs' property . . . and deposit the proceeds into the General Revenue Fund again in violation of the procedural requirements of the RUUPA," "failed to provide notice and due process of law as required by [RUUPA]," "acted willfully and explicitly violated [RUUPA]," "failed to carry out their statutory obligations to police Holders . . . and require them to notify Plaintiffs before seizures as required by the RUUPA," and "failed to provide the constitutional forms of notice by publication and/or direct mail as required by RUUPA Title 38." Doc. 1 at ¶¶ 2-3, 13, 29, 33(a), 39, 52.

Court should abstain under *Burford*. And notably, the "convoluted history" of two cases cited by the *Response* perfectly illustrate the cautionary tale of many federal courts in another circuit that attempted to adjudicate class action federal question claims that were entangled in a skein of alleged violations of state law by state officials. *See* Doc. 33 at p. 1 (citing *Taylor v. Yee*, 136 S. Ct. 929, 930 (2016) (J. Alito, concurring in certiorari denial) (declining to review *Taylor v. Yee*, 780 F.3d 928 (9th Cir. 2015), which affirmed the trial court's decision to grant California officials' Rule 12(b)(6) motion to dismiss claims challenging their administration of the State's unclaimed property laws, in a case that spanned 27 related proceedings); *see* also Doc. 33 at p. 23 (citing earlier related proceeding of *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006)) (In *Suever v. Connell*, 484 F. App'x 187, 189 (9th Cir. 2012) (unpublished), the Ninth Circuit affirmed the trial court's decision granting California officials' motion for summary judgment on claims challenging their administration of the State's unclaimed property laws, in a case that spanned 13 related proceedings), cert. denied sub nom., *Suever v. Chiang*, 135 S. Ct. 1243 (2013)). This Court should not embark on what is likely to become a similar cautionary tale.

### C. Qualified immunity shields Defendants from Plaintiffs' Section 1983 claims for money damages.

Because Plaintiffs here cannot demonstrate either prong established by *White v. Pauly*, 137 S. Ct. 548, 552 (2017), Defendants are qualifiedly immune from their remaining Takings and Procedural Due Process claims for any type of monetary relief. Specifically, this immunity extends to Plaintiffs' request for restitution from Defendants in their individual capacities, *see* Doc. 1 at ¶¶74, 78, 80, because such relief is the same as a claim for money damages. *See Taylor I*, 402 F.3d at 935 ("Properly viewed, the claim is for return of property held in trust for the owners, not for compensation for property full title to which has passed to the state. …While some may describe "this retroactive award of monetary relief as a form of 'equitable

14

restitution,'" such claims are "in practical effect indistinguishable in many aspects from an award of damages against the State." (footnotes with quotations omitted)).

       1.       **Plaintiffs failed to allege plausible claims that Defendants violated their federal constitutional rights.**

*__Takings Claim__*. The *Response* failed to rebut Defendants arguments that Plaintiffs' Takings claim fails as matter of law to the extent is seeks prospective relief because "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use." *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1016 (1984); *see also Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2176 (2019) (reaffirming same). They have therefore conceded the merit of this argument "by inadequately briefing the issue." *Benham*, 885 F.3d at 1276; *see also Stender*, 910 F.3d at 1117.

In attempting to rebut Defendants' contention that the U.S. Supreme Court's holding in *Texaco, Inc. v. Short*, 454 U.S. 516, 518, n.1, 522, n.11 (1982), completely forecloses their Takings claim, the *Response* argues that it's later decision in *Knick* is controlling. But as explained in detail below, the holding in *Knick* is not at all on-point. In contrast, the holding in *Texaco* is directly on-point because, like this case, it concerned what compensation, if any, is owed to an owner whose property was deemed abandoned by operation of law and transferred to another. And the *Response* failed to address Defendants' citation to the U.S. Supreme Court's decision in *Luckett*, 321 U.S. at 251-252, which rejected a procedural due process challenge to a Kentucky statute that allowed the State to take custody of abandoned bank deposits because there was no deprivation of property. They have therefore conceded the merit of Defendants' argument that a custodial act, like RUUPA, does not effectuate a deprivation of property because the rightful owner may always recover their unclaimed property because it "is not owned by the

state," § 38-13-803, by inadequately briefing the issue. *Benham*, 885 F.3d at 1276; *see also Stender*, 910 F.3d at 1117.

> **_Due Process Claim_.** Plaintiffs' attempt to overcome the Tenth Circuit's holdings in *Rocky Mountain Materials & Asphalt, Inc. v. Bd. of Cnty. Comm'rs of El Paso Cnty.*, 972 F.2d 309, 311 (10th Cir. 1992), and *Miller v. Campbell Cty.*, 945 F.2d 348, 352 (10th Cir. 1991), which Defendants argue foreclose their ability to maintain Due Process claims in addition to their Takings claim because they are co-extensive, is unavailing because they hang their hat on the fact that "Plaintiffs are directly challenging the lack of pre-seizure notice," which was not at-issue in those cases. Doc. 33 at 18. But doing so ignores the fact that, as a matter of law, both RUUPA and its predecessor UPA, expressly require holders to give owners advance notice that their property is going to be reported and transferred to Defendants if they fail to take action within a specified time. *See* § 38-13-501 (between 60 and 180 days beforehand under RUUPA); § 38-13-110(5) (within 120 days beforehand under UPA; *see* Doc. 31-3). Thus, the holdings in *Rocky Mountain Materials* and *Miller* foreclose their ability to maintain Due Process claims here.

> The *Response* also wholly failed to address Defendants arguments that U.S. Supreme Court precedent establishes that published legislative enactments, like RUUPA and UPA, constitute adequate notice for purposes of the procedural due process clause of the Fourteenth Amendment. *See Texaco*, 454 U.S. at 531-32 ("Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply. … It is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." (footnote omitted)); *Luckett*, 321 U.S. at 243 (holding that "[the

statute itself is notice" and "[a]ll persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes." (citations omitted)). *See* Doc. 33 at p. 17-23 (failing to address these aspects of the holdings in *Texaco* and *Luckett* at all). They have therefore conceded the merit of Defendants' arguments that property owners are presumed to know the law affecting their property and, by enacting RUUPA and UPA, the Colorado General Assembly put Plaintiffs on notice, by inadequately briefing the issue. *Benham*, 885 F.3d at 1276; *see also Stender*, 910 F.3d at 1117.

Finally, Plaintiffs attempt to overcome Defendant's argument that the U.S. Supreme Court's decision in *Luckett*, 321 U.S. at 243, established that a statute, like RUUPA and UPA, providing for notice to unclaimed property owners via publicly available postings, coupled with the state's action in taking custody of unclaimed property, constitute adequate notice for purposes of due process, is unavailing because it again hangs their hat on the contention that "was based heavily on the fact that notice preceded the State's taking of property." Doc. 33 at p. 19. But doing so ignores the fact that, as a matter of law, both RUUPA and its predecessor UPA, expressly require holders to give owners advance notice that their property is going to be reported and transferred to Defendants if they fail to take action within a specified time. *See* § 38-13-501 (between 60 and 180 days beforehand under RUUPA); § 38-13-110(5) (within 120 days beforehand under UPA; *see* Doc. 31-3). Thus, the holding in *Luckett* forecloses their Due Process claims here.

**2.    Plaintiffs cannot point to any clearly established law in support of their constitutional claims.**

To demonstrate a violation of clearly established due process rights, Plaintiffs rely on a lengthy quote from a late-1700's United States Supreme Court case, *Vanhorne's Lessee v.*

*Dorrance,* 2 U.S. 304, 310 (1795), describing a citizen's long recognized right of acquiring and possessing property.  Plaintiffs also cite to authorities recognizing the right to adequate notice "reasonably calculated to reach the intended recipient."  *Jones v. Flowers,* 547 U.S. 220, 226 (2006) (citing *Dusenbery v. US.,* 534 U.S. 161, 168 (2002).  These general statements of law will not satisfy Plaintiffs' burden to overcome the second prong of the qualified immunity standard.

A clearly established due process right may not be defined "'at a high level of generality,'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).  While Plaintiffs are not required to identify a case "*directly* on point," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted) (emphasis added), to support their due process claim, case law that merely states "a general proposition of applicable law" will not make a right "clearly established" for purposes of qualified immunity. *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018). A right is clearly established only if existing precedent places "the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

Apart from general statements of the law, Plaintiffs do not cite to any controlling authorities creating a right to elevated forms of notification above and beyond what is available on the Department's website.  Moreover, there is no clearly established due process right that *guarantees* state government will reunite Plaintiffs with their unclaimed property as Plaintiffs' due process seems to suggest.  Their due process claim attacking the notice provided by the Department, in reality, assert an unqualified right to be reunited with their property without taking any initiative of their own.

Plaintiffs ask this Court "whether the Defendants' conduct—listing property on a website—is by itself notice that satisfies the requirements of the Due Process Clause."  (Pla.

Resp., p. 12). Plaintiffs imply that a more robust form of notice is required when the government comes into possession of unclaimed property.  But they have not and cannot supply this Court with binding authority confirming that the *constitution* requires something more.  But in fact, Defendants need not "exert 'heroic efforts' or ensure actual notice" here. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (quoting *Dusenbery v. United States,* 534 U.S. 161, 170-21 (2002). In short, Plaintiffs' general statements of the law could not have guided Defendants in the exercise of their discretionary authority to provide additional notice under . Therefore, each Defendant is entitled to qualified immunity.

The information listed on the Department's publicly available website satisfies due process, and, other jurisdictions agree: *Conyers v. City of Chicago,* 10 F.4th 704, 712 (department website coupled with receipt provided at the time of arrest, provided adequate notice to arrestees of procedure for reclaiming seized property); *Al-Aqeel v. Paulson,* 568 F.Supp.2d 64, 71 (2008) (plaintiff adequately put on notice of his designation as a Specially Designated Global Terrorist by press release posted on Treasury Department website); *DeHoyos v. Bloomfield Public Sch.Dist.,* No. 12-00173-LH/CG, 2013 WL 12330141 (D. N.M.), *15 (Board policies posted on district website was sufficient notice that Plaintiff's conduct put her at risk of employee discipline); *Wilson v. Long,* No. 3:14-cv-01492, 2019 WL 8810351 (M.D. Tenn.) *7 (court found communication of appeal rights in several locations on state Medicaid's website was sufficient notice).

These authorities implicitly recognize that notice made via a publicly available website, is a "customary and well-known practice," that is the equivalent of a modern-day posting of written notice on the courthouse door. *See Luckett,* 321 U.S. at 244. Plaintiffs' statement that publishing notification via "website" after the property has already come into the Department's

custody by operation of state law, is "already too late" is puzzling. They certainly cannot allege that at the point of publication, the property is already beyond the reach of the owner and it is "too late" for the owner to reclaim it. Plaintiffs also cannot credibly argue that in 2022, posting information on a government website is a "relatively new practice" compared to the century-old practices discussed in *Texaco.* Their opinion as to the effectiveness of this method of notification is purely subjective opinion and will not support their due process claims. There is no clearly established law that concludes that the timing of notice via posting on the Department website—after it has come into the Department's custody—deprives Plaintiffs of access to their property in violation of the Due Process Clause. It is Plaintiffs' burden to find such law and cite it in their *Response*, which they failed to do.

Plaintiffs have not identified any clearly established authority supporting a federal statutory or constitutional right to additional notice via certified mail or email of unclaimed property in the custody of a State. And even assuming without conceding that the notice provided to Plaintiffs here failed to comply with state law, as set forth in RUUPA, such a failure is insufficient to establish that the notice was constitutionally deficient. *See Rector v. City & County of Denver,* 348 F.3d 935, 947–48 (10th Cir.2003) (allegation that a municipal ordinance violates state law, "[e]ven if true," does not automatically "amount to a violation of federal due process protections").

Likewise, Plaintiffs cannot overcome the qualified immunity hurdle because they point to no U.S. Supreme Court, Tenth Circuit, or clearly established weight of authority from other circuits concluding that Defendants' conduct in managing Colorado's unclaimed property trust fund, as alleged by the Complaint, violates the Takings Clause. Again, Plaintiffs rely on general statements of federal law concerning the right to acquire and own property, as recited in *Knick v.*

*Twp. of Scott,* 139 S. Ct. 2162, 2170 (2019), to support their right to compensation under the Takings Clause. But this is not enough. *See Wilson v. Layne,* 526 U.S. 603, 615 (1999). And *Knick* is inapposite because it did not define the contours of a citizen's constitutional interests in property deemed abandoned by operation of state law. Rather, *Knick* was limited to holding that a property owner has an actionable Fifth Amendment takings claim at the point in time when the government takes his property without paying for it, thus disposing of any requirement to exhaust remedies available under state law. *Knick,* 139 S. Ct. at 2168.

Plaintiffs' attempt to distinguish *Texaco,* 454 U.S. 516, which recognized a State's power to treat an interest in property as "lapsed" and "abandoned" after a certain period of time without an owner having come forward to file of a statement of claim, is unavailing. *Id.,* at 526-29. The *Texaco* opinion held that following abandonment, as defined by the state law, the former owner may not maintain a takings claim for compensation. *Id.,* at 530. The fact that the *Texaco* owners were challenging the transfer of property rights to another private property owner (the surface owner of the land), as opposed to a state seizure of property, is immaterial to whether the U.S. Supreme Court's holding in *Texaco* forecloses their Takings claim.[4]  Regardless of whether the party who may ultimately benefit is public or private, the facts of this case and *Texaco* both

---

[4] Plaintiffs' assertions that "Defendants do not deny that they took Plaintiffs' private property without providing advanced notice," or "that Defendants seized their property for public use and have not provide Plaintiffs with just compensation in return for that property," or "that they failed to provide email notice to Plaintiffs or otherwise address how this failure is not actionable," *see* Doc. 33 at p. 3, 16, 21, lack merit. Indeed, Defendants' motion to dismiss did deny each of those assertions to the extent that it was based on "legal conclusions" and/or "mere conclusory statements," as opposed to the handful of "well-pleaded allegations" that were set forth in the Complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (holding that only the latter must be accepted by courts and the defendant as true on a Rule 12(b)(6) motion). *See* Doc. 31 at p. 16-25. And in the above Rule 12(b)(1) arguments about why Plaintiffs lack standing, Defendants also affirmatively deny the new jurisdictional facts about their alleged failure to provide Plaintiffs with email notice that were improperly raised for the first time in the *Response*. *See* Doc. 33 at p. 8, 21-22 n.7.

21

concern changes to the status of the owner's property interest brought about by operation of state law. Here, the property that has been deemed abandoned must be reported and transferred from the hands of a private holder to Defendants to be held in custody for the benefit of the owner. *See* § 38-13-803. Plaintiffs have not cited any subsequent authority undermining or limiting the directly on-point holding in *Texaco,* which clearly established that a State owes no compensation for an owner's property interest that is deemed abandoned and lapsed under its unclaimed property law because such laws do not constitute a takings under the Fifth Amendment. *Id.* at 530.

Finally, Plaintiffs' citation to *Salvato* and *Hegar Jr.* as support for their Takings claim, *see* Doc. 33 at p. 17, is unavailing because the decisions of other federal district courts, whether in this or other circuits, does not clearly establish law for purposes of qualified immunity. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)). As a result, such decisions do not determine whether a constitutional right is clearly established for purposes of qualified immunity. *See, e.g., Kalka v. Hawk*, 215 F.3d 90, 100 (C.A.D.C. 2000) (Tatel, J., concurring in part and concurring in judgment) (collecting cases).

### D.   Plaintiffs concede that Eleventh Amendment sovereign immunity bars their state law claims for any type of relief.

In their *Response,* Plaintiffs muddle the type of Eleventh Amendment sovereign immunity that applies here—namely, the type that bars *all* of their state law claims against Defendants for *any* type of relief from being maintained in this federal forum, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)—with the type that bars a plaintiff from maintaining a federal question claim against a state official in his or her official capacity

when there is no alleged ongoing violation of federal law and the plaintiff instead improperly seeks retrospective declaratory or injunctive relief related to past harms. *See* Doc. 33 at 22-23 (arguing that Plaintiffs meet the *Ex Parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity for their federal question claims that seek prospective declaratory and injunctive relief). But Defendants' motion to dismiss did not assert the latter variant of sovereign immunity and therefore Plaintiffs' reliance on the *Ex Parte Young* exception, and the related portions of holdings in *Hutto v. Finney*, 437 U.S. 678, 690 (1978), *Edelman v. Jordan*, 415 U.S. 65, 667 (1974), *Cressman v. Thompson*, 719 F. 3d 1139, 1146 n.8 (10th Cir. 2013), and *James v. Hegar*, No. 5:22-CV-51-DAE, slip op. at *16-17 (W.D. Tex. Sept. 6, 2022) (*see* Doc. 33-1), is misplaced because they are all factually and legally inapposite.

The *Response* also failed to expressly rebut Defendants' argument that, under *Pennhurst*, the Eleventh Amendment bars all of their state law claims for any type of relief from being maintained here, which means that Plaintiffs have conceded the validity of this argument. *See Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018) (concluding that litigant waived argument "by inadequately briefing the issue"). And notably, they have expressly conceded that all of their state law claims are barred elsewhere in the record before this Court. *See* Doc. 39 at 3-4 ("Plaintiffs' have conceded their state law claims and are only proceeding on their federal law claims.").

Finally, in a last-ditch effort to save their purported "claim" for an accounting, *see* Doc. 1 at ¶¶ 81-84 (setting forth "COUNT IV: ACCOUNTING"), Plaintiffs contend that it is not barred by Eleventh Amendment "sovereign immunity because it is ancillary to their federal claims[.]" Doc. 33 at 22-23. But this contention lacks merit for three reasons. *First*, the *Response* elsewhere rightly conceded that "an accounting . . . is neither a tort nor lies in tort; it is simply a remedy to

ensure accurate calculations of damages[.]" Doc. 33 at 24; *see also* Doc. 31 at p. 35 (same argument advanced by Defendants).

*Second*, Plaintiffs wrongly muddle the law governing their requested remedy of an accounting, with the law governing their other requested remedy of restitution of their alleged unclaimed property that is held in trust by Defendants. *See* Doc. 33 at p. 22-23 (quoting *Suever v. Connell*, 439 F.3d 1142, 1143 (9th Cir. 2006) (citation omitted); citing *Hegar*, No. 5:22-CV-51-DAE, slip op. at *17-19 (W.D. Tex. Sept. 6, 2022) (*see* Doc. 33-1).  But Plaintiffs' reliance on *Suever* is misplaced because nowhere in that decision did the Ninth Circuit hold that federal statutory or constitutional law creates an affirmative duty on the part of officials who administer a State's unclaimed property laws to keep accurate books and records of how much property is being held in trust for actual owners, such that the class plaintiffs could maintain a stand-alone federal question claim for an accounting. *See* 439 F.3d 1142. Moreover, the Ninth Circuit's decision expressly held that the "other types of relief" requested by the class plaintiffs "are clearly barred by the Eleventh Amendment, for example, where the relief is premised solely on the State's compliance with state law." *Id.* at 1148 (citing *Pennhurst*, 465 U.S at 105-06).

And *third*, the only claim set forth in the Complaint that rests on a legal duty on the part of Defendants to keep accurate books and records of how much unclaimed property is being held in trust for actual owners is Plaintiffs' breach of fiduciary claim, which is a state law claim, not a federal question claim. *See* Doc. 1 at ¶¶ 85-90 ("COUNT V: BREACH OF FIDUCIARY DUTY"). Indeed, all of the cases cited by Plaintiffs in support of their contention that they adequately pled an accounting claim (or, as they concede, may seek the equitable remedy of an accounting)

involved solely state law claims.[5] As a result, Plaintiffs' request for the "extraordinary equitable remedy" of an accounting is tied solely to their breach of fiduciary duty claim, *Estate of Bogue v. Adams*, 405 F.Supp.3d 929, 943 (D. Colo 2019) (citation omitted), which is a state law claim that is squarely barred by Eleventh Amendment sovereign immunity. *Pennhurst*, 465 U.S. at 106.

### E.   Plaintiffs' state law claims for damages are barred under Colorado law.

#### 1.   Plaintiffs concede their claim for breach of fiduciary duty, seeking monetary relief, is barred by the Colorado Governmental Immunity Act.

Plaintiffs' response to Defendants' assertion of immunity pursuant to the Colorado Governmental Immunity Act ("CGIA"), § 24-10-101, *et. seq.* (2022)*, does not address Defendants' argument that their breach of fiduciary duty claim is a claim that could lie in tort, and therefore is barred by the CGIA. Therefore, this argument is conceded. *See Haynes ex rel. Unger v. Transamerica Corp.*, 2018 WL 6046430, at *10, 2018 U.S. Dist. LEXIS 196321, at *27-28 (D. Colo. Nov. 19, 2018); *Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (citing *Velazquez–Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 278-79 (1st Cir. 2014) (holding that employment-retaliation claim waived where the plaintiff failed to address the employer's argument against the claim). And notably, Plaintiffs expressly conceded all of their state law claims elsewhere in the record before this Court. *See* Doc. 39 at p. 3-4,

---

[5] *See* Doc. 33 at p. 29 (citing *Virdanco, Inc. v. MTS Int'l*, 820 P.2d 352, 354 (Colo. App. 1991) ("We conclude that Virdanco's primary purpose was to recover relief in the form of compensatory damages for defendants' tortious breach of their fiduciary duties."); *Patterson v. BP America Production Co.*, 159 P.3d 634, 641-42 (Colo. App. 2006) (breach of contract and fraudulent concealment claims), overruled on other grounds by *BP American Production Co. v. Patterson*, 185 P.3d 811 (Colo. 2008); *Andrikopoulos v. Broadmoor Mgmt. Co.*, 670 P.2d 435, 439 (Colo. App. 1983) (breach of contract claims); *Kirzhner v. Silverstein*, No. 09-CV-02858-CMA-BNB, 2010 WL 2985615, at *3, 12, 1 (D. Colo. July 23, 2010) (requesting an accounting remedy for claims of breaches of contract, express agreement of good faith and fair dealing, and implied covenant of good faith and fair dealing, as well as claim of fraudulent conveyance, all of which were maintained "on the basis of diversity jurisdiction").

which is inclusive of their claim for breach of fiduciary duty, and any "freestanding" claim for alleged *ultra vires* conduct that violates a duty of care and seeks money damages.[6]

### 2. Plaintiffs concede that their state law claims are barred by failure to exhaust administrative remedies.

Defendants argue in their motion that Plaintiffs' claims under state law are barred for failure to exhaust administrative remedies. In response, Plaintiffs argue that exhaustion is not required for Section 1983 claims. But nowhere in their motion to dismiss did Defendants seek dismissal of Plaintiffs' Section1983 claims for failure to exhaust. *See* Doc. 31. Because Defendants do not dispute that they failed to exhaust the administrative claims process afforded by RUUPA before filing their civil claims under Colorado state law, those claims must be dismissed for lack of jurisdiction. Put another way, Plaintiffs have waived any argument that their state law claims are barred by failure to exhaust administrative remedies "by inadequately briefing the issue." *Benham*, 885 F.3d at 1276; *see also Stender*, 910 F.3d at 1117.

### II. Counts II, III, and IV should be dismissed under Rule 12(b)(6) for failure to state a plausible claim as a matter of law.

#### A. Plaintiffs' Section 1983 claims fail as a matter of law.

The *Response* contains conclusory assertions about how each Defendant personally participated in the alleged misconduct giving rise to their Section 1983 claims. *See* Doc. 33 at p. 25. But the Complaint did not allege any specific facts demonstrating that the alleged failure to provide Plaintiffs with adequate notice is actually "traceable" directly to either Defendant. Rather, it specifically alleged that "some of the unconstitutional conduct described above may

---

[6] Defendants have not argued, as suggested by Plaintiffs, that their claims based on alleged *ultra vires* conduct are ones arising out of tortious conduct violating a duty of care.

have originated in an earlier administration[.]" Doc. 1 at ¶ 35. And its reliance on the July 2019

Performance Audit Report issued by the Colorado State Auditor to carry-the-water for Plaintiffs'

burden to plead direct, personal participation is misplaced because page 12 of that report

expressly stated that "[a]udit work was performed from January 2018 through July 2019," which

predates the July 1, 2020 effective date of RUUPA. *See* Doc. at ¶¶ 12, 16, 26, 29-31, 33(a),

33(c), 33(e), 34, 36, 38, 42, 57 (all citing the "2019 Performance Audit"). Put another way, *none*

of the 2019 Performance Audit Report's findings concerned the Defendants' administration of

RUUPA because RUUPA was not yet in effect. And Director Gardelli's "direct access" to

records for each piece of property in the Department's custody is not enough to allege personal

involvement in any alleged constitutional violation. Regardless of the inferences Plaintiffs make

about what the records might contain with respect to whether notice has been sent, when it was

sent, and the type, these inferences will not implicate Defendants in any misconduct that

deprived Plaintiffs of their property.

  The requirement to plead personal participation cannot be satisfied by merely reciting

Defendants' titles and duties as described in the RUPPA statute. *Will v. Michigan Dep't of State

Police,* 491 U.S. 58, 71 (1989). Similarly, allegations about Defendants' general responsibilities

to supervise the administration of the unclaimed property trust fund, as prescribed by RUUPA

and its predecessor UPA, are insufficient to state a claim against either Defendant in his or her

individual capacity.  If they were sufficient, then state officials and employees who were not

personally involved in alleged misconduct could be held liable under a vicarious liability

theory—which simply is not permitted under Section 1983. *Pembaur v. City of Cincinnati,* 475

U.S. 469, 479 (1986). Only allegations of personal participation in misconduct will trigger

Section 1983 liability for a state official or employee in their individual capacities. Plaintiffs

have not alleged any direct, personal misconduct by either Defendant, and therefore their Section 1983 claims for money damages must be dismissed. *See Ashcroft v. Iqbal,* 556 U.S. at 678.

**B. Plaintiffs' allegations demonstrate that any Section 1983 claims based on property listed on the website before June 1, 2020 are untimely.**

Plaintiffs agree that the standard for determining when a cause of action under Section 1983 accrues is "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Doc. 33 at 27 (quoting *Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022)). The date on which Plaintiff first availed themselves of the actual notice about the unclaimed property that they allegedly own by accessing the Department's publicly available website is thus not determinative of when their claims accrued. Rather, the Complaint alleges that Plaintiffs were able to obtain actual notice of their potential unclaimed property through the website hosted by the Defendants, which clearly lists that unclaimed property is being held in the name of individuals who share their same names. *See* Doc. 1, ¶¶ 7-10. And the Complaint does not allege that at any time between June 1, 2020 and June 1, 2022 that Defendants failed to provide actual notice through the Department's publicly available website. *See* Doc. 1. Nor could it as a matter of law because the requirement that Defendants provide actual notice via the Department's publicly available website has been in continuous effect under RUUPA since July 1, 2020, *see* § 38-13-503(3) ("the administrator shall maintain a website or database accessible by the public and electronically searchable that contains the names reported to the administrator of all apparent owners for whom property is being held by the administrator"), and was in continuous effect under UPA between at least August 4, 2004 through June 30, 2020. *See* Doc. 31-4 (§ 38-13-111(1) of UPA required that "[t]he administrator shall maintain an electronic, alphabetical list of the owners of unclaimed property and shall make such list available to the public on the world wide web"). Thus, the Complaint admits the elements necessary to establish

that any claim by either of the class representative Plaintiffs or any putative class member for property held in the unclaimed property trust fund that was listed on the Department's publicly available website as of May 31, 2020 is barred by the 2-year statute of limitations.

### C.  Plaintiffs cannot state a claim for an accounting.

The *Response* concedes that, under Colorado law, an accounting is "an extraordinary equitable remedy that may be ordered if the plaintiff is unable to determine how much, if any, money is due him or her from another." *Estate of Bogue*, 405 F.Supp.3d at 943 (citing *Andrikopoulos*, 670 P.2d at 440)); *see* Doc. 33 at p. 24. And it is a remedy necessarily tied to a finding that a plaintiff is owed damages under another substantive claim. *See Patterson*, 159 P.3d at 642 (allowing an accounting as ancillary to a breach of contract claim). Plaintiffs must plead and prove that they made a demand for accounting in connection with one of their state law claims and that Defendants refused to comply, unless "a demand would have been futile or preclusion of the accounting claim would be unreasonable." *Kirzhner*, No. 09-CV-02858-CMA-BNB, 2010 WL 2985615, at *12 (citing *Van Schaack v. Phipps*, 558 P.2d 581 (Colo. App. 1976); *Patterson*, 159 P.3d at 642).

Plaintiffs' allegations do not establish that demand would have been futile or that preclusion of an accounting claim would be unreasonable. The Complaint alleges only that Plaintiffs' alleged properties were listed on the Department's publicly available website in unspecified amounts, but ignores that the very same website disclosed the ranges of the properties held by Defendants in the trust fund. *See* Doc. 1 at ¶¶ 8 (Knellinger is between $50 and $249), 10 (Storey is under $50). These ranges suggest that the exact amount of the properties is known to Defendants. The Complaint also does not allege that submitting an administrative claim to determine and potentially recover the exact amount of unclaimed property that each believes he owns would have been futile. And there is no basis to find that precluding an

accounting would be unreasonable. By their own allegations, the amounts allegedly owed to Plaintiffs are clearly identifiable and easily determined. *See* Doc. 1 at ¶¶ 7-10. As discussed above and in Defendants' motion to dismiss [Doc. 31], Plaintiffs do not assert any valid claims for other forms of property that might require more complicated analysis, such as investments, dividends, and interest payments. Thus, Plaintiffs cannot maintain a claim for the equitable remedy of an accounting.

## CONCLUSION

For the reasons stated above and in the motion to dismiss [Doc. 31], the Complaint [Doc. 1] should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under 12(b)(6).

DATED: October 11, 2022.

PHILIP J. WEISER
Attorney General

*s/ LeeAnn Morrill*
LEEANN MORRILL, Reg. No. 38742*
First Assistant Attorney General
Public Officials Unit / State Services Section
AMY C. COLONY, Reg. No. 36124
JENNIFER H. HUNT, Reg No. 29964
Senior Assistant Attorneys General
Tort Litigation Unit / Civil Litigation Section
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: leeann.morrill@coag.gov
        amy.colony@coag.gov
        jennifer.hunt@coag.gov
*Attorneys for Defendants David Young
and Bianca Gardelli*
*Counsel of Record

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing motion complies with Sections I.D and III.A. of the Honorable Judge Charlotte N. Sweeney's Practice Standards for Civil Cases.

<u>*s/ LeeAnn Morrill*</u>
LeeAnn Morrill

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a copy of this **REPLY IN SUPPORT OF MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)** to be served upon all counsel of record for the parties to Civil Action No. 1:22-cv-01379-CNS-STV by e-filing with the CM/ECF system maintained by the Court on October 11, 2022.

<u>*s/ LeeAnn Morrill*</u>
LeeAnn Morrill