IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-01379-CNS-STV

DAVID KNELLINGER and
ROBERT STOREY, individually and on behalf of all persons similarly situated,

      Plaintiffs,

v.

DAVID YOUNG, in his official capacities as Colorado Treasurer, Colorado Office of
Treasury; and
BIANCA GARDELLI, in her individual and official capacities as Director of Colorado
Department of Treasury, Unclaimed Property Division,

      Defendants.

---

## ORDER

---

      Before the Court is the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants David Young, in his individual and official capacity, as Colorado Treasurer and Bianca Gardelli, in her individual and official capacity, as Director of the Colorado Department of Treasury. ECF No. 60. Plaintiffs David Knellinger and Robert Storey responded opposing Defendants' dismissal motion. ECF No. 66. Also before the Court is Defendants' Objections to Magistrate Judge's Order re Motion to Stay [Doc. 69], ECF No. 73, to which Plaintiffs have filed no response. For the reasons explained below, Defendants' dismissal motion is DENIED IN PART with respect to Plaintiffs' due process claims, and GRANTED IN PART, with respect to Plaintiffs' takings

claims, which are DISMISSED WITHOUT PREJUDICE.[1] Defendants' objections to the Magistrate Judge's order denying Defendants' motion to stay are OVERRULED AS MOOT.

## I.    BACKGROUND

Plaintiffs bring this putative class action under 42 U.S.C. § 1983 against Defendants Young and Gardelli regarding their unclaimed property held in trust by the state of Colorado under the Revised Uniform Unclaimed Property Act, Colorado Revised Statute § 38-13-101, *et. seq.* (RUUPA). Plaintiffs allege that Defendants' seizure of their unclaimed property, without notice, violates Plaintiffs' rights under the Fifth and Fourteenth Amendments. *See generally* ECF No. 1 ¶¶ 1–13.

Defendants previously moved to dismiss Plaintiffs' claims, which the Court did, concluding that Plaintiffs did not have standing to bring their claims. ECF No. 43. at 11–12. Plaintiffs then appealed, arguing that (1) they alleged facts sufficient to state a claim that the state of Colorado took their property for public use without just compensation, and (2) they need not exhaust their administrative remedies in state court prior to filing a takings claim in federal court. *See Knellinger v. Young*, 134 F.4th 1034, 1038 (10th Cir. 2025). The Tenth Circuit agreed and reversed the Court's dismissal decision, holding that (1) Plaintiffs sufficiently "stated a plausible claim for damages and therefore adequately pleaded an injury sufficient to confer standing," and (2) "[p]roperty owners who plausibly allege that Colorado has taken custody of their property under RUUPA, and used it for

---

[1] *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional," dismissal is "without prejudice.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

public purposes, need not file administrative claims with Colorado before they may sue for just compensation." *Id.* The Tenth Circuit also affirmed this Court's finding that Plaintiffs' request for equitable relief stemming from their takings claims was properly dismissed. *Id.*

Following remand, Defendants filed the instant motion to dismiss now before the Court. ECF No. 60. In it, Defendants assert multiple defenses, including that: (1) Eleventh Amendment immunity bars Plaintiffs' claims; (2) Plaintiffs fail to plausibly state a claim that Defendants violated their constitutional rights; and (3) Defendants in their individual capacities are entitled to qualified immunity. *See generally id*. Plaintiffs responded with arguments opposing each of Defendants' purported bases for dismissal. *See generally* ECF No. 66.[2]

The same day the instant dismissal motion was filed, Defendants also moved to stay discovery and all other proceedings pending the Court's ruling on Defendants' immunity arguments. ECF No. 61. The Court referred the motion to stay to Magistrate Judge Scott T. Varholak, ECF No. 62, who subsequently denied Defendants' request,

---

[2] It is proper for the Court to consider Defendants' immunity-related defenses at this stage. "[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court," *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), and a "jurisdictional defect is not subject to waiver or forfeiture and may be raised at any time in the court of first instance and on direct appeal," *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017). *See also Handy v. Cummings*, No. 11-cv-00581-WYD-KMT, 2014 WL 2206391, at *2 (D. Colo. 2014) ("Subject matter jurisdiction is the court's authority to hear a case or claim; thus, it cannot be waived and may be raised at any stage of the proceedings.") (citing *Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir. 1995)). Defendants' remaining arguments, which were asserted in their first motion to dismiss but which this Court and the Tenth Circuit declined to reach, are also properly asserted now. *See, e.g.*, *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1162 (10th Cir. 2007) ("We have consistently held . . . that 'qualified immunity can be raised at any time and a district court may enter . . . judgment on that ground at any point before trial at which it is appropriate.'") (citing *Langley v. Adams County,* 987 F.2d 1473, 1481 n. 3 (10th Cir. 1993)); *cf.* Fed. R. Civ. P. 12(g)(2).

ECF No. 69. Defendants objected and filed a motion requesting that this Court set aside Magistrate Judge Varholak's order. ECF No. 73. Plaintiffs did not file any objections. Defendants' dismissal motion and objection are addressed below.

## II.    LEGAL STANDARD

Defendants move for dismissal under Rule 12(b)(1) and Rule 12(b)(6). Dismissal is proper under Rule 12(b)(1) if a court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). Where the court relies "only on the allegations in Plaintiffs' complaint," it may construe a "Rule 12(b)(1) motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Knellinger*, 134 at 1042 (citing *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997)). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "The question is whether, if the allegations are true, it is plausible and not merely possible that plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "While courts must accept well-pled factual allegations as true, purely conclusory statements are not entitled to this presumption." *WildEarth Guardians v. Extraction Oil & Gas, Inc.*, 457 F. Supp. 3d 936, 945 (D. Colo. 2020) (citation omitted).

## III.    ANALYSIS

### A. RUUPA

The Court assumes the parties' familiarity with RUUPA, Colorado's Revised Uniform Unclaimed Property Act, C.R.S. §§ 38-13-201–220, given the Court and the

Tenth Circuit have previously outlined its purpose and mechanisms. *See Knellinger*, 134 F.4th at 1038–39; *Knellinger*, 2023 WL 120976, at *1. Thus, before turning to Defendants' various dismissal arguments, a brief review of RUUPA suffices.

RUUPA is the statutory scheme outlining Colorado's procedures for unclaimed property. Under RUUPA, after a statutorily prescribed time, the Colorado's Treasurer shall hold any unclaimed property he receives "in custody for the benefit of the owner." Colo. Rev. Stat. § 38-13-803. In theory, such property "is not owned by the state," *id.*, and it "does not revert to the general fund" automatically, *id.* § 38-13-801. However, money from the unclaimed property trust fund can be reappropriated to the state's general fund, or to specific public uses, such as the Colorado state fair. *See id.* §§ 38-13-801, 38-13-801.5.

### B. Jurisdictional Challenges

Defendants' dismissal motion presents numerous jurisdictional challenges. Specifically, Defendants argue that Plaintiffs' takings and due process claims alleged against Defendants in both their official and individual capacities must be dismissed because Eleventh Amendment immunity and/or qualified immunity applies to each. *See generally* ECF No. 66, 74. In response, Plaintiffs take issue with each of Defendants' immunity defenses, arguing that immunity is inapplicable or otherwise excepted based on Defendants' conduct. *See generally* ECF No. 66.

Before turning to the parties' arguments, however, the Court acknowledges the potential tension between Defendants' asserted immunity defenses and the Tenth Circuit's conclusion that "[Plaintiffs] 'may pursue a suit for compensation' under § 1983[.]" *Knellinger*, 134 F.4th at 1045. Although the Tenth Circuit determined that Plaintiffs

"pleaded facts sufficient to state a plausible claim that Colorado took their property for public use and did not compensate them for it, in violation of the Fifth and Fourteenth Amendments," *id.* at 1042, it did not address the application of any immunity defense. Indeed, the Tenth Circuit's opinion, in which the word "immunity" never appears, was limited in its scope and did not address the issue of any immunity or whether it barred Plaintiffs' claims: "The *only* disagreement is whether Defendants took Plaintiffs' property in the first place." *Id.* (emphasis added). This line, taken from the Tenth Circuit's discussion of the applicable standard of review, bolsters the conclusion that it did not consider immunity as part of its analysis. *See also Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1220 (10th Cir. 2025) ("[A] claim of immunity is conceptually distinct from the merits of the plaintiff's claim." (citation modified)). The Court's own independent review of the Tenth Circuit's docket confirms the same, as the parties' appellate briefing was essentially limited to the Court's standing analysis and did not raise any immunity-related arguments for the Tenth Circuit's consideration. *See* Case No. 23-1018, Dkt. No. 31 at 9;[3] *id.*, Dkt. Nos. 36, 41.

Accordingly, the Court proceeds with its analysis below, first assessing whether any immunity bars Plaintiffs' claims against Defendants in their official capacity, and then turning to Plaintiffs' claims against Defendants in their individual capacity.

---

[3] The "Statement of the Issue" before the Tenth Circuit articulated in Plaintiffs' Brief of Appellants was "[w]hether the district court erred in dismissing Plaintiffs' claims for *lack of standing* at the pleading stage by failing to accept Plaintiffs' allegations as true." Case No. 23-1018, ECF No. 31 at 9 (emphasis added).

1.  *Official Capacity Claims*

    i.  *Takings Claims*

Under the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "[T]o make out a Takings Clause claim, a plaintiff must plead that: (1) something was 'taken' by the government; (2) it was 'property'; (3) it was the plaintiff's property; and (4) it was taken 'for public use, without just compensation.'" *Knellinger*, 134 F.4th at 1043 (citation omitted). A Takings Clause claim brought against a state or state officials may be subject to Eleventh Amendment immunity, which "has been interpreted to bar suits against states and state agencies for money damages in federal court." *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008) (citing *Hans v. Louisiana*, 134 U.S. 1, 20–21 (1890)). In the Tenth Circuit, Fifth Amendment takings claims for monetary damages brought against state officials in their official capacities are "barred by Eleventh Amendment immunity . . . as long as a remedy is available in state court." *Williams*, 928 F.3d at 1213–14.

In certain circumstances, an exception to Eleventh Amendment immunity may apply and permit claims against state officials to proceed. For instance, a state may waive immunity, *see Higganbotham v. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003), or under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), claims against state officials may survive if "a state official [is] sued in his official capacity [and] the plaintiff seeks only prospective, injunctive relief," *Tarrant*, 545 at 911 (citing *Hill v. Kemp,* 478 F.3d 1236, 1255–56 (10th Cir. 2007)). "The fact that prospective relief could have financial consequences does not give rise to immunity, but when the requested relief is akin to a

retrospective damages award, *Ex Parte Young* is inapplicable and the Eleventh Amendment prohibits the federal suit." *Id.* (citing *Edelman v. Jordan,* 415 U.S. 651, 667–69 (1974)). Additionally, "the doctrine of sovereign immunity does not apply if (1) the actions of the officers are beyond their statutory authority; and (2) although acting within the scope of their authority, the powers exercised or the manner in which they are exercised are constitutionally void." *McQueary v. Laird*, 449 F.2d 608, 610 (10th Cir. 1971); *see also Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002) ("A court may regard a government officer's conduct as so 'illegal' as to permit a suit for specific relief against the officer as an individual if (1) the conduct is not within the officer's statutory powers or, (2) those powers, or their exercise in the particular case, are unconstitutional.") (citing *Larson v. Domestic & Foreign Commerce Corp*., 337 U.S. 682, 702 (1949)).

Defendants first argue that Plaintiffs' taking claims against Defendants in their official capacities are barred by the Eleventh Amendment because they are essentially claims against the State itself, and Colorado has not waived Eleventh Amendment immunity. ECF No. 60 at 5–7. In response, Plaintiffs argue that Eleventh Amendment immunity does not apply because (1) the Tenth Circuit's statement that Plaintiffs may pursue a suit for compensation under § 1983 means that their claims must now survive; (2) returning Plaintiffs' property would not operate against the state; and (3) Plaintiffs have alleged that their property was unconstitutionally taken and, as a result, sovereign immunity does not apply. *See* ECF No. 66 at 4–5 (citing *Knellinger*, 134 F.4th at 1045). With respect to Plaintiffs' takings claims against Defendants in their official capacity, the

Court agrees with Defendants that Eleventh Amendment immunity applies. The Court addresses the parties' arguments and explains its thinking below.

*First*, as to Plaintiffs' argument that Eleventh Amendment immunity does not apply in light of Tenth Circuit's statement that Plaintiffs "may 'pursue a suit for compensation,'" *Knellinger*, 134 F.4th at 1045, the Court is not persuaded. As noted above, the Tenth Circuit did not consider this question. Despite this, Plaintiffs contend that their takings claims should survive, Defendants' immunity defenses notwithstanding, given the Tenth Circuit's reliance on "*Knick* for its holding that equitable relief was unavailable *because* Plaintiffs could seek monetary relief in federal court." *Id.* at 6 (citing *Knellinger*, 134 F.4th at 1045) (emphasis in original). But this conclusion does not control or bind the Court's analysis of Defendants' instant immunity arguments for two reasons.

As an initial matter, the claims in *Knick* are distinguishable from those presented here. *Knick* "involved a suit against a town," and not a state or state officials. *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) (citing *Knick,* 588 U.S. at 2167, 2170). Here, Plaintiffs' claims are brought against Defendants in their official capacities as officers of the state of Colorado. This difference is material because "states enjoy sovereign immunity," while local municipalities do not. *Id.* (citation omitted); *see also Jinks v. Richland County*, 538 U.S. 456, 466 (2003) ("[M[unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit[.]").

In *Williams v. Utah Dep't of Corr.*, decided in the wake of *Knick*, the Tenth Circuit considered whether a takings claim against Utah state officials was barred by the

Eleventh Amendment. 928 F.3d 1209, 1214 (10th Cir. 2019). In concluding that Eleventh

Amendment immunity applied, the Tenth Circuit reasoned that

> *Knick* did not involve Eleventh Amendment immunity, which is the basis of
> our holding in this case. Therefore, we hold that the takings claim against
> the UDOC Defendants must be dismissed based on Eleventh Amendment
> immunity, and we remand this claim to the district court with instructions to
> dismiss it without prejudice.

*Id.* (citation omitted). The Tenth Circuit's approach in *Williams* is consistent with

other appellate courts who have considered this issue; indeed, "[e]very circuit to consider

the question has held that *Knick* did not change states' sovereign immunity from takings

claims for damages in federal court, so long as state courts remain open to those claims."

*Pavlock*, 35 F.4th at 589 (collecting cases); *see also Ladd v. Marchbanks*, 971 F.3d 574,

579 (6th Cir. 2020) ("*Knick* says nothing about sovereign immunity. And as Plaintiffs

concede, the defendant in *Knick* was a municipality, so it had no sovereign immunity to

assert.").

Moreover, even if the takings claims are barred, there are still avenues available

for Plaintiffs to pursue relief. Plaintiffs have the option to either (a) bring a § 1983 claim

against State officials in their *individual* capacities, so long as such claims are not

otherwise barred by immunity,[4] or (b) pursue relief in state court, as they are permitted to

do under Colorado law, *see* C.R.S. § 38-13-906 (a "claimant may commence an action

against the administrator in the district court for the city and county of Denver to establish

---

[4] Although such claims may provide a basis for relief so long as no other jurisdictional bar applies, as
discussed further below, qualified immunity bars Plaintiffs' takings claims against Defendants in
their individual capacities in this instance. However, as noted, this does not leave Plaintiff without an avenue to
pursue relief, as Colorado permits Plaintiffs to bring such claims in state court. *See* C.R.S. § 38-13-906.

a claim that has been denied or deemed denied under section 38-13-904"). And although the Tenth Circuit found improper the imposition of "a de facto requirement that a plaintiff must file an administrative claim with Colorado prior to proceeding in federal court," *Knellinger*, 134 F.4th at 1044, no such requirement is imposed here. That a "property owner has no obligation to seek a remedy through state administrative proceedings or through litigation in state court" *prior to* pursuing a takings claims in federal court, *id.* (citing *Knick*, 588 U.S. at 185), does not mean that their claims may proceed regardless of whether some immunity independently applies.

As the Tenth Circuit recognized in *Williams*, "circuits that have considered whether a claim under the Fifth Amendment Takings Clause is barred by Eleventh Amendment immunity have held that it is barred, *as long as a remedy is available in state court*." 928 F.3d at 1213 (emphasis added) (collecting cases). In *Williams*, the Tenth Circuit dismissed plaintiff's § 1983 takings claim after concluding that Eleventh Amendment immunity applied and plaintiff's takings claim could be brought in Utah state court. *Id.* at 1213–14. There, like here, the consideration was whether plaintiffs were able to pursue relief via an alternative pathway when relief is otherwise unavailable in federal court. It is not a requirement that Plaintiffs exhaust their state court remedies *before* they pursue their federal claims. Accordingly, the Tenth Circuit's statement that Plaintiffs "may pursue a suit for compensation under § 1983," *Knellinger*, 134 F.4th at 1045, does not preclude consideration of Defendants' immunity defenses now.

*Second,* turning to Plaintiff's argument that Eleventh Amendment immunity should not apply because returning Plaintiffs' property would not operate against the state, the

Court notes Plaintiffs' allegations that Defendants engaged in an unconstitutional taking of their property at two distinct times: first, when Plaintiffs' unclaimed property was taken pursuant to RUUPA and held by the State "in custody for the benefit of the owner," *see* C.R.S. § 38-13-803, and second, when their property was transferred from the unclaimed property fund and reappropriated to the State's general fund (or to specific public uses, such as the Colorado state fair), *see id.* §§ 38-13-801, 38-13-801.5. *See* ECF No. 1 ¶¶ 29, 31. As the theory behind each "taking" is distinct, the Court addresses each separately.

Insofar as Plaintiffs pleaded that Defendants took their unclaimed property and transferred it into the state's general fund, the Court acknowledges the Tenth Circuit's determination that Plaintiffs have alleged a "quintessential taking" in violation of Plaintiffs' constitutional rights. *Knellinger*, 134 F.4th at 1043. However, Plaintiffs also argue that by transferring their unclaimed property to the state's general fund, their property was "taken" and "appropriated" by the state, ECF No. 66 at 9–10, such that those funds became state property. The Tenth Circuit's articulation of RUUPA comports with this understanding. *Knellinger*, 134 F.4th at 1043 ("Taking money that is not owned by the state and *transferring it to state ownership, for state use*, is a quintessential taking.") (emphasis added). This is significant because even though there is a "constitutional exception to the doctrine of sovereign immunity" that allows plaintiffs to allege "a claim that the [government's] holding [of plaintiff's property] constitutes an unconstitutional taking of property without just compensation," *Malone v. Bowdoin*, 369 U.S. 643, 648 (1962) (citing *Larson*, 337 U.S. at 697), that exception is not available where, as here, "the relief

requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property," *Painter v. Shalala,* 97 F.3d 1351, 1358 (10th Cir.1996) (quoting *Larson*, 337 U.S. at 691 n.11).[5]

Because ordering Defendants to compensate Plaintiffs for the alleged takings "would require [the Court] to order [Defendants] to take various forms of affirmative action," such as returning property that has been taken for use by the state, the argument that Defendants acted unconstitutionally does not apply to or override Defendants' sovereign immunity defense. *See Painter*, 97 F.3d at 1358–59 (finding the "ultra vires doctrine [] inapplicable for several reasons," including because "the requested relief would require [the court] to go well beyond ordering the Secretary to cease doing something" and instead "would require [the court] to order the Secretary to take various forms of affirmative action and would require an outlay of federal funds").[6]

---

[5] Because the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006), it has fully assessed and considered Plaintiffs' allegations to ensure that subject matter jurisdiction exists. *See also, e.g.*, *V–1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1419–20 (10th Cir. 1997) (a federal court may raise Eleventh Amendment immunity sua sponte).

[6] This prohibition arises from a footnote in the Supreme Court's opinion *Larson v. Domestic & Foreign Commerce Corp.*, which provides that "a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign." 337 U.S. at 691 n. 11 (citing *North Carolina v. Temple*, 134 U.S. 22 (1890)). Since then, other courts, including the Tenth Circuit, have found that a suit does not fall within the *ultra vires* exception to Eleventh Amendment immunity where the "requested relief would require . . . order[ing] federal officials to take various forms of affirmative action." *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir. 2001); *see also Saine v. Hospital Authority*, 502 F.2d 1033, 1036 (5th Cir. 1974) (concluding that although "footnote 11 of *Larson* does not bar all actions seeking affirmative action by governmental officials," it bars plaintiffs from seeking injunctions that would *require the government to pay retrospective monetary relief*). The Second Circuit affirmed a district court's determination in *Nat'l R.R. Passenger Corp. v. McDonald*, that *Larson*'s prohibition "precludes claims that a state taking is unconstitutional where that claim is brought *after the taking has been effected*," as it would require "ordering

Equally unavailing is Plaintiffs' argument that the *Ex Parte Young* doctrine saves their takings claims, ECF No. 66 at 6, because that doctrine only applies if Plaintiffs "allege[] an ongoing violation of federal law and . . . seek[] *prospective* relief." *Williams*, 928 F.3d at 1214 (citing *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012)) (emphasis added). The Tenth Circuit has already determined that equitable relief is not available to remedy Plaintiffs' takings claims. *See Knellinger*, 134 F.4th at 1045. And although this Court previously acknowledged that Plaintiffs sought injunctive relief, ECF No. 43 at 8, as a matter of describing the nature of the *remedy* they sought, it also concluded that Plaintiffs' allegations were conjectural, and that "there is no continuing injury" to sustain a claim for declaratory or injunctive relief, *id.* at 11. Reviewing again the nature of the relief sought in connection with Plaintiffs' takings claim, "the sole question for [the Court] becomes whether the relief sought . . . is prospective . . . in its substance." *Hill*, 478 F.3d at 1259.

Considering "whether the relief requested is 'properly' characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief," *id.* (citing *Verizon Maryland v. Public Service Commission of Maryland,* 535 U.S. 635, 645 (2002)), the Court concludes that Plaintiffs seek retrospective relief for a past harm in connection with their takings claim. For example, Plaintiffs request "restitution of the value of Plaintiffs' property," ECF No. 1 at 29; "[t]o the extent that private funds have been

---

affirmative action by either the state or federal government employees in their official capacities[.]" 978 F. Supp. 2d 215, 233 (S.D.N.Y. 2013), *aff'd*, 779 F.3d 97 (2d Cir. 2015) (citations omitted and emphasis in original). Likewise here, because Plaintiffs seek to remedy a taking after it has already been effected, and because their requested relief would require the Court to order "affirmative action by the [state]," *Painter,* 97 F.3d at 1358 (quoting *Larson*, 337 U.S. at 691 n.11), the *ultra vires* exception does not help Plaintiffs overcome the Defendants' sovereign immunity.

converted to public use, restitution of such funds, or damages equal to the value of the private property taken for public use," *id.* at 30; and "[r]estitution and disgorgement of all ill-gotten gains," *id.* at 32. Each of these requests seek compensation for Defendants' alleged past, improper takings. *See Ambriz v. Hancock*, No. 23-50582, 2025 WL 2945681, at *3 (5th Cir. Oct. 17, 2025) ("The residual effects of a prior taking do not constitute an ongoing violation for *Ex parte Young* purposes[.]" (citing *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (unpublished)). Accordingly, Eleventh Amendment immunity applies, and Plaintiffs' claims must be dismissed. *Cf. Hill*, 478 F.3d at 1257 ("claims [that] seek prospective relief, *no damages*, and are directed (at least nominally) against state officials rather than the [s]tate" meet the requirements for *Ex Parte Young*) (emphasis added).

Finally, Plaintiffs' third argument that Defendants acted unconstitutionally by taking possession of Plaintiffs' unclaimed property and holding it in a separate, unclaimed property fund likewise fails, but for a different reason. There is no dispute that, under RUUPA, unclaimed property is first held in custody by the State for the property owner's benefit. *See* ECF No. 60 at 2, 12; ECF No. 66 at 4. While Plaintiffs argue that this supports the conclusion that Plaintiffs' takings claims should survive, the case law they cite suggests otherwise. In *Taylor v. Westly*, the Ninth Circuit considered an unclaimed property statute similar to RUUPA where unclaimed property was held "in trust" by the state of California for the unclaimed property owners. *See* 402 F.3d 924, 931 (9th Cir. 2005). Although the Ninth Circuit determined that plaintiffs' due process claims could proceed, it explicitly declined to "decide on the issue of sovereign immunity in the context

of a takings claim" based on its determination "that plaintiffs' property *has not been taken at all*," but was "merely . . . held in trust for them." *Id.* at 936 (emphasis added). The Ninth Circuit reasoned that "sovereign immunity applies to the state's money. Money that the state holds in custody for the benefit of private individuals is not the state's money, any more than towed cars are the state's cars." *Id.* at 932. The same is true here. And that determination leads to two distinct conclusions: first, that sovereign immunity does not bar Plaintiffs' claims because any relief "would not operate against the State," as Plaintiffs argue, ECF No. 66 at 4, and second, because Plaintiffs' unclaimed property held in trust "is not owned by the state," C.R.S. § 38-13-803, that "property has not been taken at all," *Taylor*, 402 F.3d at 936, and thus, cannot support a takings claim.[7]

Accordingly, consistent with the above analysis, Plaintiffs' takings claims alleged against Defendants in their official capacities are dismissed.

---

[7] The Ninth Circuit reiterated its position from *Taylor*, 402 F.3d 924, in a recent opinion, *Garza v. Woods*, stating: "In *Taylor I*, we held that where unclaimed property is 'held in trust' by the state, the property 'has not been taken at all.' Plaintiffs allege that the Department holds their unclaimed property in custody for their benefit. Therefore, per *Taylor I*, Plaintiffs have failed to state a takings claim." 150 F.4th 1118, 1127 (9th Cir. 2025), (citing 402 F.3d at 936). Although the court in *Garza* stated that the Tenth Circuit's *Knellinger* decision "reach[ed] the opposite conclusion," respectfully, this Court does not agree and does not read those decisions as incongruous. The Tenth Circuit's conclusion in *Knellinger* that Plaintiffs pleaded a "quintessential taking" was based on Plaintiffs' allegations that "Defendants reappropriated money from the unclaimed property trust fund to pay public expenses." *Knellinger*, 134 F.4th at 1043 (discussing Plaintiffs' allegations that "Defendants took money from a trust fund that 'is not owned by the state' and moved it into Colorado's coffers. Taking money that is not owned by the state and transferring it to state ownership, for state use, is a quintessential taking.") (citing Colo. Rev. Stat. § 38-13-803). By contrast, the *Taylor* and *Garza* decisions are focused on whether plaintiffs could plead a takings claim at an earlier point in time: when their property was taken by the state and held in trust. *See Taylor*, 402 F.3d at 936; *Garza*, 150 F.4th at 1127. This is a question that the Tenth Circuit explicitly declined to address. *See Knellinger*, 134 F.4th at 1043 n.3 ("Plaintiffs allege that Defendants took their property even earlier, when Colorado seized and took custody of the abandoned property. This presents the question of whether a state may avoid a Takings Clause claim by defining ownership such that a citizen remains the de jure 'owner,' even if the state takes de facto ownership. . . . *At this stage, we need not reach that question*; we need only decide whether Plaintiffs had a cognizable Takings Clause claim by the time they filed suit.") (emphasis added).

ii.  *Due Process Claims*

Like Plaintiffs' taking claims, Defendants argue that Plaintiffs' due process claims against Defendants in their official capacities should be dismissed because they are barred by the Eleventh Amendment. ECF No. 60 at 7–8. In response, Plaintiffs argue that they have pleaded sufficient facts to establish that Defendants acted *ultra vires* and without constitutional authority to violate Plaintiffs' due process rights. ECF No. 66 at 4.

While it is a close call, "[a]ssuming that the plaintiffs' allegations are true, as [the Court] must," plaintiffs' official capacity due process claims survive because they have sufficiently alleged that Defendants "failed to give 'notice reasonably calculated, under all the circumstances, to apprise interested parties' of the fact that their property was being taken and sold." *Taylor*, 402 F.3d at 934 (citing *Mullane,* 339 U.S. at 314); *see also Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 836 (10th Cir. 2025) ("[A]mbiguity of the current law and the high burden that must be met by a defendant who moves to dismiss at the pleading stage" supports a determination that "the plaintiff has the right, and justice will best be served by allowing her claims to continue at this pleading stage against the potentially liable parties.") (Ebel, J., concurring). Even though "[a] simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority," *id.* at 933 (citations omitted), Plaintiffs' pleading goes beyond that. Plaintiffs allege that Defendants' actions exceeded the scope of their constitutional obligations and statutory authority with respect to RUUPA's notice provisions. For example, Plaintiffs plead that although "Defendants were responsible for ensuring reasonable notice to the public in the form of direct email and publication notices to known

property owners" under RUUPA, ECF No. 1 ¶ 33(b), "Plaintiffs [] never received mail notice, at their current addresses . . . before" their property was taken, even though "Plaintiffs' identities and locations were known, or should have been known, by Defendants through reasonable due diligence." *Id.* ¶¶ 39–40, 42.

Additionally, in connection with their claims arising from Defendants' alleged procedural due process violations, Plaintiffs appear to be seeking, *e.g.*, a "permanent injunction restraining Defendants from engaging in . . . [f]ailing to provide notice and due process pursuant to, and in the form required by" statute, ECF No. 1 at 30, and a declaration that Defendants "[f]ailed to provide notice and due process" under the relevant statutes, *id.* at 29. Although Plaintiffs may seek such relief in connection with their remaining claims, monetary damages are not available. *See Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689 (1982) ("If the action is allowed to proceed against the officer only because he acted without proper authority, the judgment may not compel the State to use its funds to compensate the plaintiff for the injury.").

Accordingly, because "[Colorado] did not and could not authorize its officer[s] to take people's property without notice and in the absence of any connection to the State of [Colorado]," *Taylor*, 402 F.3d at 934, to the extent Plaintiffs allege that Defendants acted "outside of the scope of [their] statutory authority," *id.* at 935, Eleventh Amendment immunity does not bar Plaintiffs' due process claims alleged against Defendants in their official capacities.[8]

---

[8] To the extent the Court commented on the application of Eleventh Amendment immunity its order on Defendants' first motion to dismiss, it was referring only to Plaintiffs' due process claims against Defendants in their official capacity and to the extent Plaintiffs allege that Defendants acted *ultra vires* in failing to meet RUUPA's notice provisions. *See* ECF No. 43 at 8.

## 2.  *Individual Capacity Claims*

Having dispensed with the jurisdictional arguments over Plaintiffs' official capacity claims, the Court turns to Defendants' argument that Plaintiffs' claims against Defendants in their individual capacities are barred because both Eleventh Amendment immunity and qualified immunity apply. *See* ECF No. 60 at 8–9, 15. Plaintiffs disagree on both counts. *See* ECF No. 66 at 6–7, 14–15. Below, the Court considers the application of each, beginning with qualified immunity.

Government officials sued in their personal capacity are generally shielded from liability for civil damages under the doctrine of qualified immunity if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015) (qualified immunity only applies in "suits against officials sued in their personal capacities"). "A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). "To overcome this presumption, the plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Id.* (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the

right must be as the plaintiff maintains." *Id*. Although "[d]istrict courts may grant a motion to dismiss based on qualified immunity, . . . '[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment,'" *id*. (citing *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)), because the Court must "analyze[] 'the defendant's conduct *as alleged in the complaint,*'" *id*. (citing *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)) (emphasis in original). It is a plaintiff's obligation to identify cases that satisfy his burden to demonstrate that the asserted law is clearly established. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

     i.    *Takings Claims*

Defendants contend that qualified immunity bars Plaintiffs' takings claims against Defendants in their individual capacities because Defendants' alleged conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." ECF No. 60 at 15 (citing *Harlow,* 457 U.S. at 818). Defendants further argue that Plaintiffs "cannot maintain [] claims against Defendants in their individual capacities because only the State can take private property."[9] *Id.* at 14–15 (citing *Gerlach v. Rokita*, 95 F.4th 493, 501 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1044 (2025)); *Hinkle Family Fun Ctr., LLC v. Grisham*, 586 F. Supp. 3d 1118, 1130 (D.N.M. 2022), *aff'd*, 22-

---

[9] Plaintiffs argue that Defendants waived this argument by failing to raise it in their initial motion to dismiss. *See* ECF No. 66 at 13 n.9. The Court disagrees, *see* ECF No. 31 at 18–19, and finds that Defendants may properly raise this argument now. Moreover, "once an argument is before [the Court], it is our job to get the relevant case law right, [and] we must use our 'full knowledge of [our] own and other relevant precedents'" to do so. *Quintana v. Dodge*, No. 23-1113, 2024 WL 1048959, at *4 n.4 (10th Cir. Mar. 11, 2024) (citations omitted).

2028, 2022 WL 17972138 (10th Cir. Dec. 28, 2022) (unpublished)). Plaintiffs disagree and argue that because they have plausibly alleged a "quintessential taking" under the Fifth and Fourteenth Amendments, Defendants are not entitled to qualified immunity. ECF No. 66 at 15 (citing *Knellinger*, 134 F.4th at 1043).

In support, Plaintiffs point to *Loretto v. Telepromper Manhattan CTV*. *See* ECF No. 66 at 15 (citing 458 U.S. 419, 434–35 (1982)). However, even though *Loretto* discusses clearly established property rights in the context of a Fifth Amendment taking claim, that case concerns the government's "permanent *physical* occupation" of *real property*. *Id.* (emphasis added); *see also id.* ("[W]hen the 'character of the governmental action,' is a permanent physical occupation of property, our cases uniformly have found a taking . . . The historical rule that a permanent physical occupation of another's property is a taking has more than tradition to commend it" and "is perhaps the most serious form of invasion of an owner's property interests.") (citation omitted). This sort of "broad general proposition" about real property rights does not address the "specific context of [this] case," an inquiry into which is necessary to address "[t]he dispositive question [of] 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)) (emphasis added). And as Defendants note, Plaintiffs fail to identify any other cases to establish that the facts pleaded in Plaintiffs' complaint violate a clearly established right.

Moreover, courts in this circuit and elsewhere have acknowledged that it is an open question whether a takings claim can be brought "against Defendants in their individual capacity" given that "takings actions sound against governmental entities rather than

individual state employees in their individual capacities." *See Hinkle*, 586 F. Supp. 3d at 1130 (citing *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002)); *see also O'Connor v. Eubanks*, 83 F.4th 1018, 1022 (6th Cir. 2023) (determining that "individual liability for takings claims is not 'clearly established'" and dismissing individual defendants "being sued in their individual capacities for takings claims [because] they are entitled to qualified immunity") (citing *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 468 (6th Cir. 2023)); *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (determining that an individual cannot "commit, and be liable in damages for, a 'taking' under the fifth amendment"); *Gerlach*, 95 F.4th at 501 (acknowledging that the Seventh Circuit need "not resolve whether an individual can be held liable for a Fifth Amendment takings violation" because plaintiff's takings claim was dismissed on other grounds).

In considering the district court's opinion in *Hinkle* on appeal, the Tenth Circuit did not directly address whether takings claims can be brought against state officials in their individual capacity, but nonetheless "affirm[ed] the district court's decision that it would be futile . . . to add a takings claim on the ground that Defendants would be protected from that claim by qualified immunity." *Hinkle Fam. Fun Ctr., LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *4 (10th Cir. Dec. 28, 2022).[10] At bottom, because takings claims involve *governmental* appropriation of "private property for itself or a third party . . . [t]he *government* must pay for what it takes." *Cedar Point Nursery v. Hassid*, 594 U.S.

---

[10] Although "'[a]n unpublished opinion . . . provides little support for the notion that the law is clearly established on [a] point,' . . . [it] can be quite relevant in showing that the law was *not* clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (citing *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007)).

139, 148 (2021) (emphasis added). Thus, although it is clearly established that a *governmental* taking is constitutional violation, whether a state actor, *as an individual*, can appropriate property under the Takings clause, is a distinct question that remains unanswered. That such an open, unanswered question exists undermines the conclusion that this right is clearly established.[11]

Accordingly, because qualified immunity bars Plaintiffs' taking claims against Defendants in their individual capacities, those claims must be dismissed.

i.  *Due Process Claims*

Defendants likewise argue that Plaintiffs' due process claims alleged against Defendants in their individual capacity should be dismissed because they are also barred by sovereign immunity and qualified immunity, as Plaintiffs cannot identify a clearly established right that Defendants violated by following RUUPPA's notice procedure for unclaimed property. ECF No. 60 at 15–16. Defendants argue that "no federal court has held that a state official violates a federally secured right by enforcing self-executing provisions of valid state statutes that have never been declared unconstitutional," including where a state official is alleged to have exercised their discretionary authority by, *e.g.*, "limiting notice of the existence of the unclaimed property to a listing on a state agency's publicly available website." *Id.* As noted in their response, Plaintiffs pleaded due process violations based both on the Defendants' actions in accordance with RUUPA,

---

[11] Defendants assert qualified immunity to the extent there is no clearly established law to support Plaintiffs' claim. *See, e.g.*, ECF No. 60 at 15–16. This argument is sufficient to support the Court's conclusion. *See Markley v. U.S. Bank Nat'l Ass'n*, 142 F.4th 732, 742 (10th Cir. 2025) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." (citing *United States v. Perez*, 127 F.4th 146, 166 (10th Cir. 2025)).

and also as a result of Defendants' failure to follow RUUPA's notice requirements. *See* ECF No. 66 at 11 (citing ECF No. 1 ¶¶ 7-10, 16, 27–28). Plaintiffs argue that because they have pleaded that RUUPA's notice provisions are unconstitutional, and that Defendants acted *ultra vires* of the authority granted to them under RUUPA, no immunity should apply to bar Plaintiffs' claims. *See id.*; *see also id.* at 4–5.

With respect to the allegations that Defendants violated Plaintiffs' due process rights by acting in accordance with the RUUPA's notice requirements, the Court does not agree and is unpersuaded by Plaintiffs' invocation of *Fuentes v. Shevin*, 407 U.S. 67 (1972). *See* ECF No. 66 at 8. *Fuentes* concerned state "[p]rejudgment replevin statutes" that were "most commonly used by creditors to seize goods allegedly wrongfully detained—not wrongfully taken—by debtors," *Fuentes*, 407 U.S. at 79, and the specific issue the Court considered was "[w]hether procedural due process *in the context of these cases* requires an opportunity for a hearing before the State authorizes its agents to seize property in the possession of a person upon the application of another," *id.* at 80 (emphasis added). In answering that question, *Fuentes* determined that "[i]f the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Id.* at 81. However, *Fuentes* arose in a very different context than the one presented here. And while Plaintiffs are not required to identify a case "directly on point," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted), case law that merely states "a general proposition of applicable law" does not demonstrate the existence of "clearly established" right sufficient to defeat a qualified immunity defense, *Grissom*, 902 F.3d at 1168. A right is clearly established only if existing

precedent places "the statutory or constitutional question beyond debate." *Kisela*, 548 U.S. at 104 (citation omitted).

In contrast, Defendants cite to *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), and argue that it supports concluding that Defendants' execution of RUUPPA in accordance with its statutory requirements does not constitute a due process violation. *See* ECF No. 74 at 11. *Texaco* concerned Indiana's Mineral Lapse Act, which provided that "[a]ny interest in coal, oil and gas, and other minerals, shall, if unused for a period of 20 years, be extinguished, unless a statement of claim is filed," *Texaco*, 454 U.S. at 518 n.3 (citing Ind. Code § 32–5–11–1 (1976)), and required the Supreme Court to consider whether "the absence of specific notice prior to the lapse of a mineral right renders ineffective the self-executing feature of the Indiana statute" and violated the property owners' due process rights, *id.* at 536. In determining that it did not, the Court distinguished the type of prejudgment replevin order at issue in *Fuentes* and the property abandonment statute at issue in *Texaco.* The Court noted that *Fuentes* concerned a "property interest [that] was taken only after a specific determination that the deprivation was proper," *id.* at 537, and thus "required specific notice and an opportunity to be heard" prior to the taking, *id.* at 536 (citing *Fuentes*, 407 U.S. at 92). In contrast, the Court determined that the Mineral Lapse Act at-issue in *Texaco* contained "no procedural defect" because "Indiana ha[d] enacted a rule of law uniformly affecting all citizens that establishes the circumstances in which a property interest will lapse through the inaction of its owner." *Id.* at 537.

To the extent Plaintiffs' procedural due process claims take issue with RUUPA's statutory notice procedures, this case is far more like *Texaco* than *Fuentes*. Like in

*Texaco*, Defendants here acted in accordance with RUUPA[12]—which applies to all property owners in Colorado and does not single out Plaintiffs specifically—and provided Plaintiffs with general notice via statute regarding the time after which their property would be deemed abandoned, *see* C.R.S. §§ 38-13-201–220. And, after their property was deemed abandoned, Plaintiffs could search for their unclaimed property on a website maintained by the Colorado Office of the Treasury (COT). *See* ECF No. 1 ¶¶ 7, 9.[13] The Court thus agrees with Defendants that Plaintiffs cannot maintain a due process claim based on Defendants' compliance with RUUPA's notice provisions because such actions do not establish the violation of a clearly established due process right. Here, as in another recent case considering Michigan's unclaimed property statute, "the Due Process Clause was satisfied because Plaintiff[s] received at least the same degree of pre-deprivation notice and process as the mineral-rights holders did in *Texaco. As in Texaco,*

---

[12] Plaintiffs argue that they pleaded that "Defendants failed to provide the post-deprivation notice mandated by RUUPA, *ultra vires* of Defendants authority." ECF No. 66 at 11 (citing ECF No. 1 ¶ 16). But paragraph 16 of Plaintiffs' complaint concerns the results of a 2019 performance audit of the Colorado Department of Treasury and does not explain how that study demonstrates that Defendants violated *Plaintiffs'* due process rights, particularly since Plaintiffs also allege that RUUPA was revised following the 2019 audit, *see, e.g.,* ECF No. 1 ¶17, and Plaintiffs did not review the COT's unclaimed property website until 2022, *id.* ¶¶ 7, 9. Thus, even reading the complaint in a way that draws all inferences in Plaintiffs' favor, such allegations are insufficient.

[13] *Anderson Nat. Bank v. Luckett*, 321 U.S. 233 (1944) further supports the conclusion that Defendants' actions in accordance with RUUPA do not violate Plaintiffs' due process rights. In *Luckett*, the Supreme Court determined that a Kentucky statute requiring "every bank or trust company in the state . . . to turn over to the state, deposits which have remained inactive and unclaimed for specified periods," *id.* at 236, did not violate plaintiffs' due process rights where "the statute provides for notice to the depositors by requiring the sheriff to post on the court house door or bulletin board a copy of the bank's report of deposits presumed abandoned," *id.* at 243. The *Luckett* Court reasoned that by publicly posting the presumptively abandoned records, "in conjunction with the notice provided by the statute itself and by the taking of possession of the bank balances by the state, is sufficient notice to the depositors to satisfy all requirements of due process." *Id.* at 243. RUUPA provides for similar due process safeguards, albeit tailored for modern day, as individuals can search for their name on the COT's website for unclaimed property. *See* C.R.S. § 38-13-503.

due process only required that Plaintiff[s] have notice of the statute itself, which was imputed to [them] upon the statute's passage." *O'Connor v. Eubanks*, No. 21-12837, 2025 WL 3651906, at *4 (E.D. Mich. Dec. 3, 2025) (citing *Texaco*, 454 U.S. at 532)).

However, with respect to Plaintiffs' allegations that Defendants acted *ultra vires* by acting (or failing to act) and provide notice as RUUPA requires, Plaintiffs' due process claims survive. For example, where Plaintiffs allege that Defendants "wrongfully commingl[ed] the Unclaimed Property Funds and secondary interest with the State's General Revenue Fund without reasonable notice (1) prior to taking citizens' property, and (2) after taking possession of citizen's property," ECF No. 1 ¶ 31 (citations omitted), or "knowingly disregarded [their] duties" to "ensur[e] reasonable notice to the public in the form of direct email and publication notices to known property owners," *id.* ¶¶ 33(a),[14] Plaintiffs have alleged a violation of their due process rights, and sovereign immunity does not apply. *See, e.g.*, *Taylor*, 402 F.3d at 934 (determining that "sovereign immunity is unavailable" where plaintiffs alleged that a state employee's actions in "taking their property," "if true, would clearly put the Controller's actions beyond her statutory authority" and thus "failed to give 'notice reasonably calculated, under all the circumstances, to apprise interested parties' of the fact that their property was being taken and sold") (citations omitted). Similarly, where Plaintiffs allege that Defendants failed to provide Plaintiffs with notice *as required by* RUUPA prior to taking their property, Plaintiffs have

---

[14] *See also, e.g.*, ECF No. 1 ¶ 33(b) (alleging that Defendants "disregarded" their duties to provide "direct email and publication notices to known property owners" under RUUPA), *id.* ¶¶ 39–40, 42 (alleging that "Plaintiffs [] never received mail notice, at their current addresses . . . before," or after their property was taken even though "Plaintiffs' identities and locations were known, or should have been known, by Defendants through reasonable due diligence").

pleaded the violation of a clearly established constitutional right such that qualified immunity does not apply. *See, e.g.*, *Mullane*, 339 U.S. at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Accordingly, consistent with the above analysis, Plaintiffs' due process claims against Defendants in their individual capacity based on their actions that followed RUUPA's notice provisions as written are barred by qualified immunity. However, Plaintiffs' claim that Defendants acted *ultra vires* and failed to provide notice to property owners as required by RUUPA survive.

### C.  Failure to State a Claim

In addition to their immunity defenses, Defendants also allege that Plaintiffs' claims fail because (1) RUUPA provides adequate notice to owners of unclaimed property, ECF No. 60 at 11–13, and (2) Plaintiffs failed to allege facts demonstrating Defendants' personal participation in any alleged misconduct, *id.* at 13–15. Regarding Defendants' first argument, the Court agrees that Plaintiffs have failed to plead a violation of their due process rights where Defendants followed the notice procedures prescribed in RUUPA as a matter of qualified immunity, as discussed above, so it need not address the

arguments attendant to such claim's plausibility.[15] However, to the extent Defendants did not follow RUUPA's notice procedures, Plaintiffs' due process claims remain.

With respect to their second argument, Defendants contend that the complaint fails to allege facts that Defendants specifically caused Plaintiffs' alleged injuries. ECF No. 60 at 13. In response, Plaintiffs allege that they need not plead Defendants' personal participation in the alleged misconduct and that Defendants can be liable under § 1983 by alleging that an "affirmative link" exists between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." ECF No. 66 at 13 (citing *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). The Court finds Plaintiffs' position persuasive.

Plaintiffs' allegations make clear that Defendants are responsible for ensuring that RUUPA is properly implemented and administered. Specifically, Plaintiffs allege that Defendant Young, as Colorado State Treasurer, is the "'State's Cash Management Officer' responsible for oversight of the state treasury, including custodial responsibilities for assets with the treasury," and assets held in the Department of the Treasury's Unclaimed Property Division. ECF No. 1 ¶ 12. Plaintiffs further allege that Defendant Young "is [the] custodian and administrator of over $1 billion in unclaimed property funds, currently held in trust by [the Colorado Office of Treasury]" and that, among other obligations, he is responsible for "reunit[ing] citizens with lost or forgotten property." *Id.* (citing C.R.S. § 38-13-803). With respect to Defendant Gardelli, Director of Colorado

---

[15] *See, e.g., Liu v. Salt Lake Cmty. Coll.*, No. 2:21-cv-00608-CMR, 2025 WL 384615, at *8 (D. Utah Feb. 3, 2025); *Watkins v. Session*, No. 19-60810-CIV, 2022 WL 16745386, at *9 n.12 (S.D. Fla. Nov. 7, 2022), *aff'd*, No. 22-14070, 2023 WL 8469704 (11th Cir. Dec. 7, 2023) (Because "Defendants are entitled to qualified immunity, we needn't reach the merits of these claims." (citation modified)).

Department of Treasury, Unclaimed Property Division, Plaintiffs allege that she "reports to defendant Young and is responsible for . . . ensuring that proper notice is provided to 'abandoned' or 'unclaimed' property 'Owners' regarding the seizure and sale of 'abandoned' or 'unclaimed' property. *Id.* ¶ 13 (citing C.R.S. §§ 38-13-101, 38-13-102, 38-13-307, 38-13-604, 38-13-701, 38-13-702, 38-13-801, 38-13-1201).

These allegations are sufficient to establish an "affirmative link" between Plaintiffs' alleged due process deprivation and Defendants' "exercise of control or direction, or [] failure to supervise." *Butler*, 992 F.2d at 1055. Unlike in *Butler*, Plaintiffs do not allege only a single incident in which Defendants failed to provide notice in accordance with RUUPA—they allege a systemic failure of a system for which Defendants bear responsibility. Although Plaintiffs will ultimately be required carry the burden of "establish[ing] the personal participation of each defendant" in order to establish § 1983 liability at trial, *Evans v. Fogarty*, 241 F. App'x 542, 551 (10th Cir. 2007), the Court is satisfied that Plaintiffs have, for now, alleged facts sufficient to create an affirmative link between Defendants' responsibilities and the alleged procedural due process violations that survive Defendants' instant dismissal motion.

### D. Defendants' Objections to Magistrate Judge's Order Denying a Motion to Stay

On the same day the instant dismissal motion was filed, Defendants objected to Magistrate Judge Varholak's order denying Defendants' motion to stay discovery until a ruling was issued on the immunity defenses raises in Defendants' dismissal motion. ECF No. 73. Because the Court has now ruled on Defendants' dismissal motion and addressed those immunity arguments, Defendants' objections are overruled as moot.

## IV.     CONCLUSION

Consistent with the above analyses, Defendants' motion to dismiss, ECF No. 60, is DENIED IN PART with respect to Plaintiffs' due process claims, and GRANTED IN PART, with respect to Plaintiffs' takings claims, which are DISMISSED WITHOUT PREJUDICE because Eleventh Amendment immunity bars Plaintiffs' takings claims against Defendants in their official capacities, and qualified immunity bars Plaintiffs' takings claims against Defendants in their individual capacities. Additionally, because the Court has ruled on Defendants' dismissal motion, Defendants' pending objections to the Magistrate Judge's order denying Defendants' request to stay discovery, ECF No. 73, are OVERRULED AS MOOT.

DATED this 13th day of February 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge